IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 14-4628

---

UNITED STATES OF AMERICA,
Appellee

v.

THOMAS DAVID STEINER,
Appellant

---

Appeal from a judgment entered
in the United States District Court for the Western
District of Pennsylvania at No. 2-11-cr-00089-001

---

BRIEF FOR APPELLANT

---

1500 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222
(412) 644-6565

LISA B. FREELAND
Federal Public Defender

Renee Pietropaolo
Assistant Federal Public Defender
Counsel of Record

Attorneys for Appellant
Thomas David Steiner

# TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................v

STATEMENT OF JURISDICTION...........................................................1

STATEMENT OF THE ISSUES...............................................................2

CONCISE STATEMENT OF THE CASE .................................................4

STATEMENT OF RELATED CASES AND PROCEEDINGS...............20

ARGUMENT:

I.    The district court erred by admitting evidence Thomas Steiner was "on the run" and arrested on a warrant issued for failing to appear at a preliminary hearing on unrelated criminal charges as either intrinsic evidence or under Rule 404(b) when this evidence (A) did not directly prove the charged crime of being a felon-in-possession of a shotgun that had already been seized or of ammunition seized two days later, and (B) did not "complete the story" because it was not "what led officers to Mr. Steiner to begin with.".....21

      A.    Evidence an arrest warrant was issued because Mr. Steiner failed to appear at a preliminary hearing on unrelated criminal charge, is not intrinsic because it does not "directly prove" the charged felon-in-possession offense and is not an act performed contemporaneously with the charged crime that facilitates its commission..............................................23

      B.    The district court committed reversible error by admitting under Rule 404(b) evidence Mr. Steiner was arrested for failing to appear at a preliminary hearing and was "on the run" from those criminal charges

i

where (1) that evidence did not "complete the story" of the charged crime of possession by a felon of a shotgun that had already been seized and ammunition seized two days later, and (2) the court failed to balance the purported probative value against the danger for unfair prejudice under Rule 403 and or limit the purpose for which the jury could consider this evidence ...................................................................... 26

II.   Where Mr. Steiner was charged in a single count with separate violations of the felon-in-possession statute, the court committed reversible error by refusing to instruct jurors they must unanimously agree as to *which* ammunition he possessed and by instead affirmatively instructing jurors they need *not* agree, thereby depriving Mr. Steiner of his Sixth Amendment and due process rights to a unanimous verdict .................................................................................. 40

1.   Introduction ...................................................... 40

2.   Possession of ammunition that was acquired at different times or separately stored constitutes separate violations of 18 U.S.C. § 922(g) ............ 41

3.   The evidence and trial theories establish the ammunition was for different weapons, was brought into the residence at different times and for different purposes, and was stored in different locations. The indictment therefore charged distinct violations of § 922(g) in a single count and was duplicitous ........................................... 44

4.   When multiple offenses are charged in a single count, the defendant is entitled to an instruction requiring jury unanimity on which offense of the two or more alleged, he committed ...................... 46

5.    The district court refused to instruct jurors they must unanimously agree as to *which* violation of the statute, of the multiple violations charged in count two, Mr. Steiner committed and instead affirmatively instructed jurors they need *not* unanimously agree to convict ............................ 48

6.    A unanimous verdict is required ........................ 50

7.    The district court's instruction denied Mr. Steiner his Sixth Amendment and due process rights to a unanimous verdict and requires reversal .......... 52

8.    This Court holds that when an indictment bundles several acts, any of which could constitute a violation of the statute, a trial court commits reversible error by failing to instruct jurors they must unanimously agree as to which act the defendant committed to convict .............. 58

9.    The district court's ruling ................................... 62

III.    The pre-indictment delay of over three years caused substantial actual prejudice to Mr. Steiner's due process right to a fair trial, and the district court erred by applying an incorrect legal standard and by refusing to dismiss this case for pre-indictment delay ................................ 71

CONCLUSION ...................................................................... 77

CERTIFICATE OF MEMBERSHIP IN BAR .............................. 78

CERTIFICATE OF COMPLIANCE .................................... 78

CERTIFICATE OF IDENTICAL TEXT ............................ 78

iii

CERTIFICATE OF VIRUS CHECK .................................................... 78

CERTIFICATE OF SERVICE ........................................................79

# TABLE OF AUTHORITIES

**Cases:**

*Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2181(1972) ............................ 73

*Government of Virgin Islands v. Davis,* 561 F.3d 159 (3d Cir.2009) ..... 39

*Government of Virgin Islands v. Toto*, 529 F.2d 278 (3d Cir.1976) ....... 37

*Howell v. Barker*, 904 F.2d 889 (4th Cir.1990) ...................................... 72

*In re Winship*, 397 U.S. 358, 90 S.Ct. 1068 (1970) ................................ 51

*Richardson v. United States*, 526 U.S. 813,
    199 S.Ct. 1707 (1999) ................................................................ 61,67,68

*United States v. Alameth*, 341 F.3d 167 (2d Cir.2003) .......................... 72

*United States v. Bass,* 54 F.3d Cir. 125 (3d Cir.1995) ............................. 3

*United States v. Beros*, 833 F.2d 455 (3d Cir.1987) ..... 50,52,58,59,60,61

*United States v. Bowie*, 232 F.3d 923 (D.C.Cir.2000) ........................... 25

*United States v. Brown*, 765 F.3d 278 (3d Cir.2014) ........................ 29,39

*United States v. Butch*, 256 F.3d 171 (3d Cir. 2001) ............................. 30

*United States v. Caldwell,* 760 F.3d 267 (3d Cir.2014) ........ 2,28-31,37,39

*United States v. Colonna*, 360 F.3d 1169 (10th Cir.2004) ..................... 72

*United States v. Correa-Ventura*, 6 F.3d 1070 (5th Cir.1993) ............... 51

*United States v. Cross*, 308 F.3d 308 (3d Cir. 2002) .............................. 24

v

*United States v. Crouch*, 84 F.3d 1497 (5th Cir.1996) ........................... 72

*United States v. Dasker*, 537 F.2d 40 (3d Cir.1976).............................. 31

*United States v. Davis*, 726 F.3d 434 (3d Cir.2013) .................... 36,37,39

*United States v. DeJohn,* 368 F.3d 533 (6th Cir. 2004) ........................ 68

*United States v. Diaz*, 592 F.3d 467 (3d Cir. 2010) ............................... 64

*United States v. Echeverri*, 854 F.2d 638 (3d Cir.1988) .................. 30,51

*United States v. Edmonds*, 80 F.3d 810 (3d Cir.1996) ..................... 50,62

*United States v. Foxman*, 87 F.3d 1220 (11th Cir.1996)....................... 72

*United States v. Frankenberry*, 696 F.2d 239 (3d Cir.1982) ................ 41

*United States v. Gann*, 732 F.2d 714 (9th Cir.1984).............................. 43

*United States v. Garth,* 188 F.3d 99 (3d Cir.1999)................................ 58

*United States v. Green*, 617 F.3d 233 (3d Cir.2010) ..... 24,25,26,29,31,32

*United States v. Haas*, 184 Fed.Appx. 230 (3d Cir.2006)...................... 26

*United States v. Hagler*, 700 F.3d 1091 (7th Cir.2012)......................... 71

*United States v. Dameon Harrison*, Case No. 2:14-cr-00249-1............. 42

*United States v. Holley*, 942 F.2d 916 (5th Cir. 1991) ...................... 69,70

*United States v. Hutc*hing, 75 F.3d 1453 (10th Cir.1996) .................... 43

*United States v. Ismali*, 828 G.2d 153 (3d Cir.1987).............................. 71

*United States v. Jenkins*, 90 F.3d 814 (3d Cir.1996) ............................ 58

*United States v. Keen*, 104 F.3d 1111 (9th Cir.1996) ............................ 43

*United States v. Kennedy*, 682 F.3d 244 (3d Cir. 2012) .................... 42,43

*United States v. Korey,* 472 F.3d 89 (3d Cir.2007) .................................. 3

*United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044 (1977) .......... 71,73

*United States v. Marino*, 682 F.2d 449 (3d Cir.1982) ............................ 42

*United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455 (1971) ............. 71,73

*United States v. Melvin*, 27 F.3d 703 (1st Cir.1993) .............................. 37

*United States v. Newell*, 658 F.3d 1 (1st Cir.2011) ........... 48,61,62,69,70

*United States v. O'Leary*, 739 F.2d 135 (3d Cir.1985) ...................... 29,31

*United States v. Pietrantonio*, 637 F.3d 865 (8th Cir.2011) ............. 46,48

*United States v. Reynolds*, 710 F.3d 498 (3d Cir. 2013) ........................ 37

*United States v. Ross*, 123 F.3d1181 (9th Cir.1997) .............................. 72

*United States v. Russell*, 134 F.3d 171 (3d Cir.1998) ................. 50,52,62

*United States v. Ryan*, 828 F.3d 1010 (3d Cir.1987)
  *abrogated on other grounds by United States v. Wells,*
  519 U.S. 482, 117 S.Ct. 921 (1997) ................................................ 52,58

*United States v. Sampson*, 980 F.2d 883 (3d Cir.1992) ................... 28,36

*United States v. Simmons*, 679 F.2d 1042 (3d Cir. 1982) ...................... 31

*United States v. Smith*, 725 F.3d 340 (3d Cir.2013) .................... 36,37,39

*United States v. Soto*, 780 F.3d 689 (6th Cir.2015) ............................... 65

*United States v. Soto-Beniquez*, 356 F.3d 1 (1st Cir.2003) ................... 72

*United States v. Starks*, 515 F.2d 112 (3d Cir.1975) ............................. 47

*United States v. Starks*, 472 F.3d 466 (7th Cir. 2006) ......................... 48

*United States v. Talbert*, 501 F.3d 449 (5th Cir.2007) ......................... 67

*United States v. Tann*, 577 F.3d 533 (3d Cir. 2009) ........................ 41,42

*United States v. Theodorpoulos*, 866 F.2d 587 (3d Cir.1989),
   *overruled on other grounds by United States v. Price*,
   76 F.3d 526 (3d Cir.1996) ................................................................. 64

*United States v. Trammell*, 133 F.3d 1343 (10th Cir.1998) .................. 48

*United States v. Verrecchia*,196 F.3d 294 (1st Cir.1999) ............. 43,66,67

*United States v. Waller,* 654 F.3d 430 (3d Cir. 2011) ............................. 3

*United States v. Wells,* 519 U.S. 482, 117 S.Ct. 921 (1997) .................. 59

*United States v. Wise*, 515 F.3d 207 (3d Cir.2008) ...................... 63,64,65

*United States v. Yielding*, 657 F.3d 688 (8th Cir.2011) ......................... 48

**Statutes**:

18 U.S.C. § 922(g) ............................................................................. passim

18 U.S.C. § 922(g)(1) ................................................... 4,41,43,67,68

18 U.S.C. § 924(c) ......................................................... 63,64,65,66

18 U.S.C. § 924(c)(1) ................................................................ 64

18 U.S.C. § 924(e) ..................................................................... 4

18 U.S.C. § 1291 ........................................................................ 1

18 U.S.C. § 3231 ........................................................................ 1

18 U.S.C. § 3742(a) .................................................................... 1

**Rules:**
Fed.R.Evid., Rule 403 ................................ 22,23,27,29,30,32,36

Fed.R.Evid., Rule 404 .................................................. 23,27,30

Fed.R.Evid., Rule 404(b) ............................................... passim

Fed.R.Evid., Rule 404(b)(2) .................................................. 28

**Other Authorities:**
U.S. Const. amend. V ............................................................. 71

U.S. Const. amend. VI ................................ 2,40,41,50,62,69,70

## STATEMENT OF JURISDICTION

This is an appeal from a judgment entered in the United States District Court for the Western District of Pennsylvania at 2:11-cr-00089-001.

Subject matter jurisdiction was conferred upon the district court by 18 U.S.C. §3231. Appellate jurisdiction is conferred upon this Court by 18 U.S.C. §1291 and §3742(a).

The district court imposed sentence November 13th and judgment was entered November 17, 2014. App.11-16. Mr. Steiner filed a timely notice of appeal December 1, 2014. App.17.

## STATEMENT OF THE ISSUES

I.  Did the district court err by admitting evidence Thomas Steiner was "on the run" and arrested on a warrant issued for failing to appear at a preliminary hearing on unrelated criminal charges as either intrinsic evidence or under Rule 404(b) when this evidence (A) did not directly prove the charged crime of being a felon-in-possession of a shotgun that had already been seized or of ammunition found two days later, and (B) did not "complete the story."

**Preservation and ruling**

The defense objected, app.116-19, and the court ruled at app.118-19.

**Standard of review**

This Court reviews evidentiary rulings for abuse of discretion, but exercises plenary review over whether evidence falls within the scope of Rule 404(b). *United States v. Caldwell*, 760 F.3d 267 (3d Cir.2014).

II.  Where Mr. Steiner was charged in a single count with separate violations of the felon-in-possession statute, did the court commit reversible error by refusing to instruct jurors they must unanimously agree as to *which* ammunition he possessed and by instead affirmatively instructing jurors they need *not* agree, thereby depriving Mr. Steiner of his Sixth Amendment and due process rights to a unanimous verdict?

**Preservation and ruling**

The government proposed jurors be instructed they need not unanimously agree on the exact item possessed to convict. App.94. Mr. Steiner objected and requested a unanimity instruction. App.96-97,125, 337,336,339,342-43.  The court ruled at app.339-42.

2

## Standard of Review

This Court exercises plenary review over challenges to the legal standards expressed in jury instructions. *United States v.* Waller, 654 F.3d 430 (3d Cir.2011); *United States v. Korey*, 472 F.3d 89 (3d Cir.2007).

III. **Where the pre-indictment delay of over three years caused substantial actual prejudice to Mr. Steiner's due process right to a fair trial, did the district court err by applying an incorrect legal standard and by refusing to dismiss this case for pre-indictment delay?**

## Preservation and ruling

Mr. Steiner moved to dismiss for pre-indictment delay at app.49-70,83-93. The court ruled at app.2-3.

## Standard of Review

This Court exercises plenary review over constitutional due process challenges. *United States v.  Bass*, 54 F.3d 125 (3d Cir.1995).

# CONCISE STATEMENT OF THE CASE

## Procedural History

On April 14, 2011, Thomas Steiner was charged at count one with possession of a firearm by a convicted felon on or about August 27, 2007, 18 U.S.C. §§922(g)(1), 924(e). App.39-40. A superseding indictment was filed November 29, 2011, adding a second §922(g) count based on pieces of ammunition for different weapons found scattered in the "downstairs area" of a house owned by Mr. Steiner. App.43-46.

Mr. Steiner filed a motion to dismiss arguing that the over three year pre-indictment delay caused substantial actual prejudice to his due process right to a fair trial. App.49-58. The court relied on Third Circuit precedent to deny that motion. App.2-3.

Mr. Steiner proceeded to a jury trial February 26, 2014 at which the court admitted, over objection, certain other acts evidence as "intrinsic" evidence or under Fed.R.Evid., Rule 404(b). App.115-19.

On February 28, the jury found Mr. Steiner *not guilty* of possessing the firearm but guilty of possessing unspecified ammunition found in the residence.

4

Following extensive litigation, the court determined Mr. Steiner was *not* an Armed Career Criminal and sentenced him within the 70 to 87 month Guidelines range to 87 months' incarceration, three years' supervised release, and a $100 special assessment. App.11-16.

Mr. Steiner filed a timely notice of appeal. App.17.

## Factual History

## Introduction

The charges against Thomas Steiner originated when long-term, informant Timmy Stants contacted his state police "handler" and claimed Thomas Steiner was staying on his property, was "on the run" from law enforcement, possessed a sawed-off shotgun that he referred to as a "cop killer," and said he would use it to avoid being arrested on outstanding criminal charges. Stants told his handler the shotgun would be found in his own camper and the missing pieces of that shotgun would be found in Thomas Steiner's residence. App.157,203,226. Based on that information, police obtained a warrant, searched the camper, and discovered a sawed-off shotgun and 12-gauge Federal ammunition. Police also searched Mr. Steiner's residence and

found the shotgun's missing barrel and stock segments and various pieces of ammunition, including Federal ammunition, sprinkled in the "downstairs area." The government did not connect Mr. Steiner to the weapon or ammunition through fingerprint or DNA testing. App.275,521.

The jury rejected Stants' testimony and found Mr. Steiner *not guilty* of possessing the shotgun and ammunition found in the camper but guilty of possessing unspecified ammunition found scattered in the residence.

**After being arrested for his involvement in a sophisticated crime organization, Tim Stants begins a campaign of cooperation with law enforcement, setting up at least one-hundred cases to reduce his own sentencing exposure.**

In 2005, Timothy Stants was the target of a sophisticated investigation resulting in his arrest for and conviction of 19 counts of burglary plus counts of corrupt organizations, conspiracy to engage in corrupt organizations, and conspiracy to commit burglary, theft and receiving stolen property. App.410-11,516-17. When he was initially incarcerated on those charges and before he began to cooperate, Stants "tried to concoct an alibi defense." App.405. Within two to three weeks

6

of his arrest, he began to cooperate with law enforcement to reduce his own sentencing exposure and was immediately released on bond. App.413-14.

Trooper Baumgard estimated Stants was cooperating with him "every couple of days." App.410,202,238. Between 2005 and 2007, Stants did controlled buys and assisted in burglary and theft investigations. App.228. He also worked with the Attorney General's Office. *Id.*

Stants' cooperation was "extensive," extending to too many cases to number. App.228. He estimated "maybe fifty, maybe a hundred…. It was a lot…." App.407.

When he ultimately was sentenced in 2010, Stants received probation *with no jail time*. App.408, 410-11,415.

**Timmy Stants targets Thomas Steiner.**

Sometime before August 20, 2007, Timothy Stants contacted his handler, Trooper Baumgard and told him that Thomas Steiner was staying on his property. Baumgard instructed Stants to "get this guy off your property, it sounds like he's bad news." App.229,457.

On August 20, 2007, Stants told Baumgard Mr. Steiner had a sawed-off shotgun in a camper-trailer on Stants' property and expressed a willingness to use it against law enforcement to avoid being arrested. App.203,229,232,257-59,420. According to Tim Stants, Tom Steiner was "on the run" from police and did not plan to appear for an upcoming preliminary hearing. App.232,421. During that conversation, Stants also told Trooper Baumgard he would find the barrel and stock of that shotgun at the Meadow Avenue residence. App.244.

Mr. Baumgard verified only that Mr. Steiner was a felon. App.204.

Trooper Baumgard did not confirm that Mr. Steiner was staying *in* the camper. Although Mr. Baumgard drove by the property several times, he saw Mr. Steiner only once walking outside. App.204,206,250,256. *See* App.577 (camper and Ford motor home were parked proximate to each other, behind the house trailer and opposite from the garage). *But see* App.491 (prosecutor incorrectly tells jurors Trooper Baumgard "actually saw Mr. Steiner at that camper.").

Trooper Baumgard did not corroborate, and could not have corroborated, Stants' claim that Thomas Steiner was then "on the run."

8

He verified only that Steiner had a preliminary hearing scheduled for the *following* week on August 27, 2007. App.204. Mr. Steiner later testified, without contradiction, that after those charges were filed, he was released on recognizance: "I was given an ROR bond. I was not on the run from law enforcement." Case 2:11-cr-00089, Document 168, pages 29-30; App.445. Baumgard did not testify that Steiner was ineligible to remain on bond after the hearing and while awaiting trial.

Based on Stants' information, Mr. Baumgard obtained a warrant to search the camper. App.207.

### Search of the camper and arrest.

On the morning on August 27, 2007, before executing the warrant, Trooper Baumgard paid Stants $100 to assist in Mr. Steiner's arrest. App.224,233. To ensure Mr. Steiner was not on the property when the warrant was executed, Trooper Baumgard instructed Stants to drive Steiner to a gas station, where a team of officers would be waiting. App.207,234. Baumgard conducted the search at about 3:00 p.m., just after Stants drove Mr. Steiner away. App.208,235.

The inside of the camper was not "in good shape." App.210.
Trooper Baumgard did not recall seeing any food or drink. App.222. On
a bench inside the camper and covered with handkerchiefs was a
sawed-off shotgun loaded with six rounds of "Federal" 12-gauge
ammunition. App.209-10,216.

On a stove, was a wallet, a coffee container, cigarettes, and coffee
pot. App.211. Inside the wallet were four blank checks from a National
City account belonging to Mr. Steiner that had been closed in January
or February 2007. App.220,447. Also inside was various paperwork
belonging to Thomas Steiner. App.220-22,446-47. A spent shotgun shell
was lying near a burner and another shell was elsewhere. App.212.

Only after seizing the firearm did Trooper Baumgard instruct
officers to arrest Mr. Steiner. App.209,235. Mr. Steiner was approached
while seated as a passenger in Mr. Stants' vehicle, and was arrested
without incident. App.272. He did not have a firearm or ammunition at
his arrest. App.297.

**Search of the Meadow Avenue Residence**

Based on Stants' information, police also obtained a warrant to search the Meadow Avenue residence. App.226.

The basement was unkempt and in "deplorable" condition. App.279,320,417. The mailbox, listing both Greta and Thomas Steiner's names, was "stuffed with mail." App.279,292. Mail addressed to both was found in the basement. App.293. The checkbook from the closed National City account was also there. App.290.

In the basement, on the bar, police found the shotgun stock. App.280,286,363. The barrel was visible in the ceiling above the bar because a ceiling tile had been removed. App.287. A hacksaw and pipe wrenches were on the floor. App.226,288,293-94. The expert could not connect the hacksaw to the barrel. App.363.

An *empty* box of 12-gauge Federal shotgun ammunition was on the pool table. App.283-84571. Police found one *single* 12-gauge Federal shotgun shell "of a type" that would be found in that box in a pocket of the pool table along with potato chip crumbs. App.283,285-86. Four Winchester 12-gauge shotgun shells were found in the "downstairs

11

area," in a bowl, on top of which was a document with Mr. Steiner's name. App.193,284,286-87,572.

In addition to the five 12-gauge shotgun shells, police found a box of 20 rounds of Winchester .32 caliber ammunition and 17 rounds of .38 Special ammunition in the "downstairs area." App.193,285.

## The Trial

Thomas Steiner testified that he neither owned nor possessed the shotgun and ammunition. App.441,452. He acknowledged the wallet was his but denied staying in the camper. App.442,446,458. The camper had no running water and no lock. It was open to anyone. App.401,444.

Located on the Lucas Pipeline Road property were two motor homes, a double-wide mobile home, where Stants lived, a garage, a camper-trailer, and a Ford motor home. App.231-32,319,400,443-44. In August 2007, Mr. Steiner was staying in the Ford motor home that was situated behind Stants' home. App.442-44. He was working on Mark Williams' motor home and the Ford. App.445,318.

Notably, in the application for search warrant, Trooper Baumgard recited that Tim Stants permitted Steiner to temporarily reside in a *motor home* situated in the backyard of his property. App.231. However, he also referred to it as a "camper trailer." *Id.* Even the prosecutor repeatedly identified the place Mr. Steiner was staying as "a mobile home." App.71. *See also* Case 2:11-cr-00089, Document 58, page 2.

Although Officer Motte wrote in his report that Steiner admitted changing his clothes several times in the camper, he did not write that report contemporaneously with his interview but only *after* the shotgun was recovered from the camper. Officer Motte conceded Mr. Steiner could have said he changed in the trailer. App.300-01,452-55.

Significantly, Trooper Baumgard did not take any other photos showing the interior of the camper. App.235. Nor did he search any other structures on the property. App.239. A cell phone and burgundy gym bag were also found in the camper but neither were tied to Mr. Steiner. App.212, 236 (burgundy bag not seized).

Mr. Steiner denied being "on the run," and was on recognizance bond. App.445; Document 168, p.29-30. He believed Timothy Stants was

driving him to the preliminary hearing on August 27, 2007. App.445-46.
*When asked if Mr. Steiner had requested him to drive to the*
*preliminary hearing, Stants said only that he "can't remember."*
App.421. Steiner was arrested at a gas station situated between the
Lucas Pipeline property and the magistrate's office, traveling in the
direction of the magistrate's. App.519-20,578.

The government's theory was that Thomas Steiner actually or
constructively possessed the shotgun and ammunition. App.160-61.
Timmy Stants and Mark Williams both claimed to see Steiner holding
the shotgun. As to constructive possession, the government argued the
shotgun was found in Stants' camper, where Stants said Mr. Steiner
was staying and where Mr. Steiner's wallet was found. The remaining
parts of the shotgun and various ammunition were found at Steiner's
Meadow Avenue residence. App.502-504.

However, the government introduced evidence Steiner sold or
abandoned the house before August 29, 2007. According to Stants, Mr.
Steiner was trying to sell the house and had in effect abandoned that
property: "[H]e couldn't go back to his house because he had the

14

criminal charge." App.417-18. Stants and Mark Williams testified Mr. Steiner sold the house before the August 29th search and before the Creek Hills camping trip and that Mrs. Williams notarized the paperwork. App.312,422.

The defense theory was that Thomas Steiner was set up by Timothy Stants, a long-time police informant who had motive and opportunity to stage both crime scenes. App.510-11.

As to motive, Stants was facing serious sentencing exposure and began cooperating with law enforcement immediately after his own arrest. App.402-03,406,410-11,516-17. Stants' "motive" and "modus operandi" was to implicate as many others as he could to help his own case. App.516.

As to opportunity, Stants owned the camper where he told police the sawed-off shotgun would be located. App.229. The camper had no lock. App.401,444. When asked if he found Thomas Steiner's wallet and put documents in it and left it in the camper, Timothy Stants could only say, "*not that I recall*." App.401.

Stants also admitted touring the Meadow Avenue house in Steiner's absence. App.422.

Referring to the .32 and .38 caliber ammunition the defense asked, "where does that come from," where is the gun that would fit that ammunition, why would Thomas Steiner leave "a bunch of odds and ends of different ammo lying around?" App.526. It stressed the absence of fingerprint evidence connecting Mr. Steiner to not just the gun, barrel, and stock, but also to the ammunition and ammunition box. App.525.

Greta Steiner, Mr. Steiner's ex-wife never saw ammunition in the basement. App.380. When she moved into the residence in 1999 she brought boxes of items belonging to her deceased former husband, an avid collector. Some of those boxes contained ammunition. App.379-80,438. Greta maintained that those boxes were stored in the garage and that Thomas Steiner would not have known about the ammunition.

App.380-81.[1] There was no conflicting evidence offered about how old non-matching pieces of ammunition came to be in the residence.

Although the prosecution called Stants reliable, it declined to call him as a witness. App.203,206. And, although the prosecution called him reliable, Stants was incarcerated for violating the conditions of his probation. App.225,208. Finally, although Trooper Baumgard averred Tim Stants had never provided false information, he explained that Stants assisted law enforcement by participating in controlled buys or making recorded calls. The trooper did not cite another instance where Stants provided first-hand exclusive information about witnessing a crime, secured corroboration via his life-long friend, and facilitated arrest of the suspect. App.238-39,507-08.

Mr. Stants repeatedly denied receiving any benefit for what he did to Mr. Steiner. App.415,423 ("To this day I never received anything from anybody for this."). Trooper Baumgard paid Stants $100 for setting up the arrest. App.224. He was sure Stants' assistance against

---

[1] Despite objection, the government was permitted to cross examine Greta Steiner about a 1999 misdemeanor conviction for hindering apprehension. App.439-40.

17

Mr. Steiner was mentioned: "He was doing a lot of different things back then, so I'm sure it got mentioned to the prosecutor who was handling the cases; but solely based off of this, he didn't get any credit... towards his sentence...." App.224-25. In addition, immediately after facilitating Mr. Steiner's arrest, Stants' home detention was lifted so he could take a week-long trip to the Poconos. App.414-15. Stants refused to admit the Poconos trip though the court's order explicitly identified that as the purpose for lifting the bond conditions. App.414-15.

The defense sought to confront Mr. Stants' with recorded jail telephone calls where Stants discusses "disposing of a gun,... his drug distribution, and... suborning perjury or attempting to do so...." App.241. *See* App.402-03 (where Stants' denies possessing guns but is forced to admit burglarizing a gun store and involvement with a shotgun). When asked if he had guns in his garage, he responded only, "not that I recall." App.404. He conceded it was "possible" his brother removed and disposed of a gun before the garage was searched by police. App.404-05.

The only person to corroborate Stants' testimony that Mr. Steiner held the shotgun, was willing to use it against law enforcement, and stayed in the camper, was Mark Williams. App.313-14. Mark and Tim are life-long friends and neighbors who also do business together. App.324,406.

Mark Williams says he knew Thomas Steiner from going to look at the Meadow Avenue house in August 2007; "that's the only way." App.307. At that time, he did *not* see ammunition in the house. App.321. Williams' nevertheless admitted Mr. Steiner was working on his motor home, which was parked in Stants' driveway. App.318.

Williams next saw Steiner when he and a friend of Timmy's had his wife notarize paperwork for the sale of the Meadow Avenue residence. App.312. That very weekend, Steiner went to the Creek Hills camp ground. App.312. It was during this trip that Williams claims to have seen Steiner fire the sawed-off shotgun into an abandoned car. App.313-14. Mark admitted smoking pot during that camping trip. App.317.

Mr. Williams did not disclose this information until March 2011, "over three and a half years" after the event. App.247,513. He also admitted telling "police that [he] had testified to seeing Tom Steiner shoot the gun so that [his] wife and…daughter would not have to come in and testify?" App.323-24. On redirect, Mr. Williams was permitted to say that his wife and daughter are "afraid" of Steiner. App.325.

**The jury finds Thomas Steiner not guilty of possessing the shotgun.**

The jury found Thomas Steiner not guilty of possessing the shotgun and ammunition found in the camper. It convicted on the ammunition count.

This appeal follows.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Counsel knows of no related cases or proceedings.

# ARGUMENT

I.  **The district court erred by admitting evidence Thomas Steiner was "on the run" and arrested on a warrant issued for failing to appear at a preliminary hearing on unrelated criminal charges as either intrinsic evidence or under Rule 404(b) when this evidence (A) did not directly prove the charged crime of being a felon-in-possession of a shotgun that had already been seized or of ammunition seized two days later, and (B) did not "complete the story."**

Introduction

In a trial for unlawful possession of a gun found August 27, 2007 in the informant's camper and ammunition found August 29, 2007 in his own residence, the government offered as "intrinsic" evidence of the charged crime, evidence Thomas Steiner had a warrant out for his arrest for failing to appear for a preliminary hearing on unrelated criminal charges on August 27, 2007 and testimony "he was on the run from law enforcement at the time, hiding out in this trailer" intending to "evade the warrant and not appear" at the preliminary hearing because "[t]hat's what led officers to him. That's what led officers to his trailer in the first place." App.115. "So in that sense it does complete the story. It is background of what led law enforcement to Mr. Steiner to

21

begin with in this case." App.116. The prosecutor repeatedly stressed,

this evidence is intrinsic, not Rule 404(b) evidence. App. 101,103,116.

To the extent the court admitted this evidence as intrinsic

evidence that completes the story of the crime and explains the

background, this was error. [2] This Court has explicitly rejected a

"completes the story" formulation of intrinsic evidence.

---

[2] The court did not make clear the basis for admission. The government repeatedly asserted this was not Rule 404(b) evidence but intrinsic evidence. App.104,116. It gave pre-trial notice only "out of an abundance of caution." App.103. The parties and court contemplated that if the evidence were admitted under Rule 404(b), a limiting instruction would be given. App.112,115. There was no limiting instruction and no Rule 403 balancing.

The government alternatively argued the evidence was admissible as "probative of motive and intent…." App.116. According to the prosecutor, "the reason he was hiding out in the trailer with a sawed-off shotgun was… to evade the warrant and not appear for his preliminary hearing and to not be found by law enforcement." App.116-17. The district court rejected that argument. Mr. Steiner was arrested not in the camper, from which the shotgun had already been seized, but in a car miles away. He did not resist arrest or possess or brandish any firearm but was cooperative. There was no evidence he was "on the run" or attempting to evade the just-issued warrant. App.115-17. To the contrary, Mr. Steiner later testified without contradiction that he had been released on recognizance bond. Case 2:11-cr-00089, Document 168, pages 29-30.

To the extent the court admitted this evidence under Rule 404(b), without subjecting it to the requirements of Rule 404, without conducting any Rule 403 balancing, and without limiting the purpose for which the jury could consider it, this, too, was error. Although this Court has "occasionally" admitted other acts evidence to "complete the story" or to provide necessary background under, and within the framework of, Rule 404(b), it has generally limited those occasions to conspiracy cases. Regardless, the government's assertion that the outstanding arrest warrant for failing to appear is what led "law enforcement to Mr. Steiner to begin with" and "what led officers to his trailer in the first place," is a misstatement of fact. The just issued warrant for failing to appear did *not* explain why the police targeted Mr. Steiner for investigation or why they planned on the 26th to arrest him on the 27th.

The court's improper admission of this evidence violated Mr. Steiner's right to a fair trial; the judgment must be reversed and the case remanded.

## A. Evidence an arrest warrant was issued because Mr. Steiner failed to appear at a preliminary hearing on unrelated criminal

charge, is not intrinsic because it does not "directly prove" the charged felon-in-possession offense and is not an act performed contemporaneously with the charged crime that facilitates its commission.

This Court repeatedly has criticized the distinction between extrinsic evidence, which must be analyzed under Fed.R.Evid. Rule 404(b), and intrinsic evidence, which is exempt from Rule 404(b). *See e.g., United States v. Green*, 617 F.3d 233, 245 (3d Cir.2010); *United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002). Nevertheless, in *Green*, it attempted for the first time to provide a definition for "intrinsic evidence." *Green*, 617 F.3d at 245.

The Court began by explaining the term "intrinsic evidence" derives from the common law "*res gestae*" principle. *Green*, 617 F.3d at 245. Judge Smith initially quoted commentators criticizing the use of the term "res gestae" to admit evidence as "an empty phrase [which encouraged] looseness of thinking and uncertainty of decision," and a "'mind-numbing and elastic term' which 'pretends much but means little.'" *Id.*, 243-44.

After observing that many courts define "intrinsic" evidence as evidence that is "inextricably intertwined" with the charged offense,

24

this Court rejected that test as "vague, overbroad, and prone to abuse" and as a test that threatens to eviscerate Rule 404(b)'s prohibitions on "bad act" evidence. *Green*, 617 F.3d at 245-48.

Instead, this Court applies a restrictive definition of intrinsic evidence, narrowly applying it to (1) evidence that "directly proves" the charged offense, and (2) evidence of an uncharged act performed contemporaneously with the charged crime if it facilitates the commission of the charged crime. *Green*, 617 F.3d at 249 *citing United States v. Bowie*, 232 F.3d 923 (D.C.Cir.2000) (suggesting an uncharged act performed contemporaneously with the charged crime that facilitates the charged crime covers situations where the seller of contraband must necessarily be shown to have possessed it).

In *Green*, the district court erroneously admitted as "intrinsic evidence," evidence the defendant threatened to blow up an undercover officer in retaliation for his earlier arrest and discussed purchasing dynamite, blasting caps, and cocaine. *Id.*, 237. Applying its restrictive definition, this Court ruled Green's threat was *not* intrinsic evidence: (1) It did not directly prove that Green attempted to possess cocaine

25

with intent to distribute, and (2) it did not in any meaningful way facilitate his attempt to procure cocaine, the only crime with which he was charged. *Green*, 617 F.3d at 249.

Evidence a warrant had just issued for Mr. Steiner's failure to appear that very day, at most hours earlier, for a preliminary hearing on pending criminal charges, and that he was "on the run" from those criminal charges, does not "directly prove" Mr. Steiner was in constructive possession of a sawed-off shotgun previously seized from Tim Stants' camper or ammunition seized two days later in the downstairs area of the Meadow Avenue residence. "To hold otherwise would be to strip the words 'directly prove' of all meaning." *United States v. Haas*, 184 Fed.Appx. 230, 234 (3d Cir.2006).

Nor is the arrest on an outstanding warrant for failing to appear at a preliminary hearing a contemporaneous act that facilitates his constructive possession of the shotgun already seized from the camper or ammunition found two days later in the residence.

B. **The district court committed reversible error by admitting under Rule 404(b) evidence Mr. Steiner was arrested for failing to appear at a preliminary hearing and was "on the run" from those criminal charges where (1) that evidence did not**

26

**"complete the story" of the charged crime of possession by a felon of a shotgun that had already been seized and ammunition seized two days later, and (2) the court failed to balance the purported probative value against the danger for unfair prejudice under Rule 403 and or limit the purpose for which the jury could consider this evidence.**

Although this Court has "occasionally" admitted other acts evidence under Rule 404(b) to "complete the story" or to provide background, it has generally limited its use of that reasoning to conspiracy cases. Assuming *arguendo* other acts evidence may be admitted to "complete the story" when conspiracy is not charged, the court erred by admitting it here because it did *not* complete the story of the charged felon-in-possession offense. The prosecutor's representation to the court that the outstanding arrest warrant is "what led officers to his trailer in the first place" and what led "law enforcement to Mr. Steiner to begin with" was a misstatement of fact. The warrant for failing to appear on unrelated pending criminal charges was "not related to anything else in the case." App.117. Instead, its connection to the felon-in-possession case was manufactured. Additionally, the district court erred by admitting the evidence without subjecting it to the requirements of Rules 404 or 403 and without limitation.

27

### 1. Rule 404(b) is a rule of general exclusion.

In an opinion issued just months after Mr. Steiner's trial, this Court announced "Rule 404(b) is a rule of general *exclusion*, and carries with it '*no presumption of admissibility*.'"  *Caldwell*, 760 F.3d at 276 (emphasis added).  "The Rule reflects the revered…policy that… an accused is tried for *what* he did, not *who* he is.  And in recognition that prior offense evidence is generally more prejudicial than probative, Rule 404(b) directs that evidence of prior bad acts be excluded – *unless* the proponent can demonstrate that the evidence is admissible for a non-propensity purpose." *Id.*, 275, 276. This Court repeatedly has cautioned, "[c]haracter evidence is not rejected because it is irrelevant. On the contrary, 'it is said to weigh too much with the jury and to so overpersuade them as to prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge.'" *United States v. Sampson*, 980 F.2d 883, 886 (3d Cir.1992).

Before evidence is admissible under Fed.R.Evid., Rule 404(b)(2), (1) the proponent must identify a proper non-propensity purpose under Rule 404(b) that is "at issue" in the case, (2) the evidence must be

28

relevant to that purpose, (3) its probative value must not be outweighed by the danger of unfair prejudice under Rule 403, and (4) it must be accompanied by a limiting instruction if requested. *Caldwell*, 760 F.3d at 277; *United States v. Brown*, 765 F.3d 278, 291 (3d Cir.2014).

### 2. Evidence Mr. Steiner failed to appear hours earlier at a preliminary hearing on unrelated criminal charges did not complete the story of the charged crime of being a felon-in-possession.

This Court in *Green* explained that supplying necessary background information to the jury or "allowing the jury to understand the circumstances surrounding the charged crime - completing the story - is a proper, non-propensity purpose under Rule 404(b)." *United States v. Green*, 617 F.3d at 247, 250. But it stresses that such evidence is only admissible "within the framework" of Rule 404(b). *Id.*

First, although *Green* cites *United States v. O'Leary*, 739 F.2d 135, 136 (3d Cir.1985), as support for the proposition that "completing the story" is a proper Rule 404(b) purpose, this Court has criticized *O'Leary*: "While courts have *occasionally* admitted prior crimes evidence as 'background information,'...this label is uninformative at best and, at worst, can be an unacceptable substitute for the analysis required by

29

Rule 404(b)." *United States v. Echeverri*, 854 F.2d 638, 644 & n.5 (3d Cir.1988). The analysis required by Rules 404 and 403 "can and should be conducted with more specificity than is ordinarily reflected in a terse reference to 'background information.'" *Id.* A "terse" reference to background was all that was provided here. App.117. *See Caldwell*, 760 F.3d at 290 ("reiterate[ing] the importance of a methodical approach… and a carefully reasoned ruling by the trial judge.").

Heeding its own caution against too broad an application of the "background information concept," this Court's "occasional" admission of other acts evidence as background has generally been restricted to cases where the defendant is charged with conspiracy and the other acts evidence is necessary to explain the relationship among actors in the conspiracy or the contours of the conspiracy, that is, the evidence is necessary to enable the jury to determine whether the charged conspiracy existed or whether the defendant was culpable in the conspiracy. *See, e.g., United States v. Butch*, 256 F.3d 171 (3d Cir. 2001) (admitting prior acts "to show an ongoing relationship between [the defendant and a co-conspirator], and to help the jury understand

30

the co-conspirator's role in the scheme"). Indeed, every case cited by *Green* as supporting its "completing the story" theory of admissibility, was a conspiracy case. *Green,* 617 F.3d at 247, *citing O'Leary*, 739 F.2d 135; *United States v. Simmons*, 679 F.2d 1042 (3d Cir. 1982); *United States v. Dasker*, 537 F.2d 40, 58 (3d Cir.1976).

Although *Green* was not a conspiracy case, its particular fact pattern and the context in which the issue was addressed cautions against an expansive reading of that case. Notably, *Green* predates *Caldwell's* recognition of Rule 404(b) as a rule of exclusion.

Green's arrest on drug charges was facilitated by undercover officer, A.G. *Id.*, 617 F.3d at 235. The government introduced evidence Green threatened to blow up A.G. in retaliation for that arrest and discussed with Stahl in a series of recorded conversations purchasing dynamite, blasting caps, and cocaine from Stahl's boyfriend. The defense was to attack Stahl's credibility and motive for cooperating. *Id.*, 238. The prosecution argued Stahl agreed to cooperate because her brothers were in law enforcement, and an officer's life was in danger. *Id.*, 235 n.1, 237.

31

After finding the district court erred by admitting evidence of Green's threat as intrinsic, this Court affirmed on alternative grounds. First, the Court stressed that the district court in *Green*, unlike the court in this case, conducted a Rule 403 balancing *and* provided a limiting instruction. Second, the Court found the evidence served two non-propensity purposes. Although this Court focused on motive, it also determined that the evidence provided necessary background information that completed the story because it explained why Green was under investigation, why Stahl agreed to act as an informant, why talk of dynamite "permeated" the taped conversations, and the many references to A.G. in those conversations. *Id.*, 250. As defense counsel noted, the circumstances of Green "are far different" from those presented here. App.117.

As set forth, the government averred evidence Mr. Steiner had a warrant out for his arrest for having just failed to appear for a preliminary hearing and testimony "he was on the run" intending to "evade the warrant and not appear" was admissible as background because "that's what led officers to his trailer" and "to Mr. Steiner to

32

begin with in this case." App.115,116. The court relied on the government's misrepresentation to admit the evidence as "background." "I think it does explain why the police are there and why they were… arresting him." App.117-18.

The just-issued warrant was *not* "what led law enforcement to Mr. Steiner to begin with" and *not* "what led officers to his trailer in the first place." To the contrary, officers were led to Mr. Steiner and the camper when, on August 20, 2007, long-time informant Timmy Stants reported that Steiner had in the camper a sawed-off shotgun, which he was prohibited from possessing. App.204,207,229,267,490. Baumgard thus had probable cause to obtain a warrant to search the camper and *did* obtain a warrant by August 27, 2007. App.207.

Trooper Baumgard, with Timmy Stants, concocted a plan to ensure that Mr. Steiner would not be present on the property when he executed the search warrant of the camper: Baumgard instructed Stants to drive Steiner to a gas station miles away where he would have a team of officers waiting to arrest him. App.207-08,234.

At about 3:00 p.m. on August 27th, once Stants drove Steiner away, Baumgard executed the search warrant and recovered the shotgun, *before* Steiner was arrested. App.208,235. By that point, Baumgard had determined Mr. Steiner was a prohibited person. Thus, police had probable cause to arrest him for unlawful possession.

*After* seizing the shotgun, Trooper Baumgard instructed the waiting team to arrest Mr. Steiner - - ostensibly on a just issued warrant based on his failure to appear, at most hours earlier, at the preliminary hearing. App.207-08. Baumgard had another officer verify that Steiner had failed to appear and obtained an arrest warrant on August 27, 2007. App.208.

Evidence of Mr. Steiner's failure to appear for the preliminary hearing on unrelated criminal charges is not necessary background and does not complete the story of his purported constructive possession of a shotgun that had already been seized from the camper. Any connection between the two events is manufactured.

Trooper Motte testified that he was assigned to assist with the August 27th arrest of Mr. Steiner on August 26, 2007, the day *before* the

34

scheduled preliminary hearing, *before* any failure to appear, and *before* any arrest warrant was issued. Case 2:11-cr-00089, Document 77, p.21. Baumgard also met with Mr. Stants to plan the arrest the morning of August 27th, *before* the preliminary hearing and before the arrest warrant was issued. App.233-34.

Steiner was arrested without incident and cooperated. *Id.*, 19. He did not possess firearms or ammunition. App.297. He was taken into custody for questioning. Notably, that questioning concerned the charges of possessing the shotgun in the camper. Document 77, p.20. There was no evidence Mr. Steiner was ever charged in connection with failing to appear at the preliminary hearing.

Evidence Mr. Steiner was arrested for failing to appear (at most hours earlier) at the preliminary hearing and evidence he was "on the run" from those unrelated criminal charges was not necessary background and does nothing to clarify the jury's understanding of the circumstances of the investigation for possession of the shotgun already seized from the camper. And it is plainly irrelevant as background or to complete the story of Mr. Steiner's constructive possession of

35

ammunition found two days later in the downstairs area of a house he owned, which ammunition may have been brought into the house as long ago as 1999. His failure to appear on August 27th is not what led officers to him or to the camper and does not explain why they planned on August 26th to arrest him at the gas station on August 27th.

### 3. The district court failed to balance the purported probative value of the evidence for background against the danger of unfair prejudice and also failed to limit the purpose for which the evidence could be used.

When, as here, a trial court fails to perform the Rule 403 balancing or when its balancing is not apparent from the record, *this Court has no way to review its exercise of discretion and reverses. See, e.g., United States v. Smith*, 725 F.3d 340, 345, 348 (3d Cir.2013); *United States v. Davis*, 726 F.3d 434 (3d Cir.2013); *Sampson*, 980 F.2d at 889.

The court also failed to limit the purpose for which the evidence could be used. Regardless, no instruction can eliminate the infirmity caused by the admission of prior acts that are not admissible under Rule 404(b). *Davis*, 726 F.3d at 445; *Smith*, 725 F.3d at 348 n.5.

36

4. **The introduction of improper 404(b) evidence was not harmless where any finding of guilt was entirely dependent on witness credibility.**

 The test for harmless error is whether it is highly probable that the error did not contribute to the judgment.  And the high probability standard is met only when the court possesses "a sure conviction that the error did not prejudice the defendant." *Caldwell*, 760 F.3d at 285. The Government bears the burden of showing harmlessness and cannot meet it here. *United States v. Reynolds*, 710 F.3d 498 (3d Cir. 2013).

 "'The exclusion of other crimes evidence is not simply a "technicality"…; it reflects and gives meaning to a central precept of our system of criminal justice, the presumption of innocence.'" *United States v. Melvin*, 27 F.3d 703, 708 (1st Cir.1993); *Gov't of Virgin Islands v. Toto*, 529 F.2d 278, 283 (3d Cir.1976) (prosecution's evidence of other crimes undermines presumption of innocence).

 This prosecution was entirely dependent on witness credibility. Thomas Steiner denied possessing the shotgun and ammunition; Tim Stants, a biased government informant, accused him of possessing the shotgun and ammunition. The government did not connect Mr. Steiner

37

to the weapon or ammunition through fingerprint or DNA testing.
App.275,521. The evidence was far from overwhelming. In fact, the jury
acquitted Mr. Steiner of possessing the shotgun but found him guilty of
possessing ammunition.

Reference to Mr. Steiner's unrelated addition criminal charges, his
attempts to evade those criminal charges by failing to appear at the
preliminary hearing, and an arrest by a "team" of officers for failing to
appear, served only to illustrate his propensity for violence and crime
and his character as a dangerous criminal. The prosecutor invited
jurors to draw that inference by repeatedly referring to testimony from
Stants and Mark Williams that Steiner called the shotgun "a cop killer"
and that he would not go easy. App.496,504. The refusal to appear
suggests to the jury that Steiner is guilty of those charges and that
those charges are either so serious that they will result in a long jail
sentence or so heinous that any jail-time will be unacceptable.

In a case entirely dependent on witness credibility where the jury
acquits of the more serious act of possessing a sawed-off shotgun,
evidence that Mr. Steiner was facing unrelated criminal charges serious

38

enough that he was attempting to evade those charges by failing to appear at the preliminary hearing, could not have been inconsequential to the verdict; a new trial is required. *See Government of Virgin Islands v. Davis*, 561 F.3d 159 (3d Cir.2009) (evidence is not overwhelming where government's case depends on credibility of eyewitnesses); *Caldwell*, 760 F.3d at 287; *Brown*, 765 F.3d at 295 (erroneous admission of 404(b) evidence was not harmless even though there was "no doubt" the government "presented a substantial case").

Because this Court cannot have "sure conviction" this improper 404(b) evidence did not influence the jury, it should vacate the judgment and remand for a new trial. *See Caldwell, supra; Davis*, 726 F.3d 434; *Smith*, 725 F.3d 340.

39

II.    **Where Mr. Steiner was charged in a single count with separate violations of the felon-in-possession statute, the court committed reversible error by refusing to instruct jurors they must unanimously agree as to *which* ammunition he possessed and by instead affirmatively instructing jurors they need *not* agree, thereby depriving Mr. Steiner of his Sixth Amendment and due process rights to a unanimous verdict.**

### 1. Introduction

The indictment charges in a single count separate violations of the felon-in-possession statute based on ammunition found in the "downstairs area" of the Meadow Avenue residence that was for different firearms, separately acquired, and separately stored. This Court, construing the §922(g) statute, holds that simultaneous possession of multiple firearms or ammunition is a single offense, *unless*, as is this case here, the weapons were separately stored or acquired. To cure this duplicity, the district court should have instructed jurors, as requested by Mr. Steiner, that to convict, they had to unanimously agree as to which piece of ammunition he possessed. Instead, the court erroneously instructed jurors they did *not* need to agree and could convict if, for example, "ten jurors determined that he possessed one piece of ammunition in the bedroom, one juror

40

determined that he possessed one piece of ammunition found in the

basement, and one juror determined that he possessed them all."

App.487-88. The instruction violated Mr. Steiner's Sixth Amendment

and due process rights to a unanimous jury verdict and requires

reversal.

### 2. Possession of ammunition that was acquired at different times or separately stored constitutes separate violations of 18 U.S.C. §922(g).

Under 18 U.S.C. §922(g)(1), a person who has been convicted of a

crime punishable by imprisonment for a term exceeding one year is

prohibited from possessing "in or affecting commerce, any firearm or

ammunition…." This Court, construing §922(g), holds that "the

allowable unit of prosecution under §922(g) is the incident of possession,

regardless of whether a defendant possessed more than one firearm, or

possessed a firearm and ammunition." *United States v. Tann*, 577 F.3d

533, 536-537 & n.5 (3d Cir. 2009) (collecting cases); *United States v.

Frankenberry*, 696 F.2d 239, 245 (3d Cir.1982). Thus, the "simultaneous

possession" of various firearms or ammunition by a convicted felon

constitutes a single offense *unless there is evidence the weapons*

41

*were separately stored or acquired at different times. Tann*, 577

F.3d at 536-537 (seizure of ammunition from the defendant's person

upon his arrest in his bathroom and seizure of a handgun in the

bathroom was a seizure "at the same time in the same location" and

supported one §922(g) conviction); *United States v. Marino*, 682 F.2d

449 (3d Cir.1982). Courts narrowly construe the concept of

"simultaneous possession." *United States v. Kennedy*, 682 F.3d 244, 256

(3d Cir. 2012) (rejecting as "marked expansion of *Tann*" the idea that

"same location" means "same street address"; holding separate

indictments were proper for guns that were "'within eyeshot of one

another' and were 'seized by the *same* group of officers in the *same*

operation at the *same* time at the *same* street address."). The U.S.

Attorney for the Western District of Pennsylvania in fact separately

charges §922(g) even when a firearm and matching ammunition are

found *within* the same room. *See, e.g., United States v. Dameon

Harrison*, Case 2:14-cr-00249-1, Documents 1 & 10 (charging at Count 1

possession of a rifle found inside a bedroom closet and at count 2

possession of ammunition matching the rifle that was found atop a
dresser on the opposite end of that bedroom).

Thus, multiple charges are warranted if the evidence shows the
firearms or ammunition were acquired on different occasions or stored
at different sites. *Kennedy*, 682 F.3d at 256, *citing United States v.
Verrecchia*,196 F.3d 294, 296, 298 (1st Cir.1999) (focusing on the
transaction and holding it was appropriate to bring two charges under
§922(g)(1), one for possession of guns in defendant's truck and a second
for possession of guns in defendant's adjacent barn, even though
immediately before the police seizure the defendant had retrieved from
the barn the two guns found in the truck); *United States v. Keen*, 104
F.3d 1111 (9th Cir.1996); *United States v. Hutching*, 75 F.3d 1453, 1460
(10th Cir.1996) (simultaneous possession of multiple firearms
separately stored in scattered locations, one in a bedroom, another in a
car parked in his garage, and another in a truck, permitted possession
of each firearm to constitute a separate offense); *United States v. Gann*,
732 F.2d 714 (9th Cir.1984) (holding multiple charges were permissible
where rifle and ammunition for several different weapons were

separately received and stored; the rifle was a gift stored in a closet, and the ammunition was left over from a hunting trip and stored in a dresser drawer).

### 3. The evidence and trial theories establish the ammunition was for different weapons, was brought into the residence at different times and for different purposes, and was stored in different locations. The indictment therefore charged distinct violations of §922(g) in a single count and was duplicitous.

Count one of the indictment charged possession of a sawed-off shotgun and 12-gauge Federal ammunition that was found during an August 27, 2009 search of Tim Stants' camper.

Count two charged possession of pieces of ammunition for different weapons that was found in the "downstairs area" of the Meadow Avenue house during an August 29, 2007 search: Thomas Steiner "did knowing possess in and affecting interstate commerce, 12 gauge Winchester ammunition, .32 caliber Winchester ammunition, .38 Special caliber Winchester ammunition, and 12 gauge Federal ammunition." App.45-46.

During the Meadow Avenue search, police located the shotgun's missing barrel and stock segments along with a hacksaw. An *empty* box

of 12-gauge Federal shotgun ammunition was on the pool table. App.283-84,571. Police found one *single* 12-gauge Federal shotgun shell "of a type" that would be found in that box in a pocket of the pool table along with potato chip crumbs. App.283,285-86,573. Four Winchester 12-gauge shotgun shells were found in the "downstairs area," in a bowl, on top of which was a document with Mr. Steiner's name. App.193,284,286-87,572.

In addition to the five 12-gauge shotgun shells, police found a box of 20 rounds of Winchester .32 caliber ammunition and 17 rounds of .38 Special ammunition in the "downstairs area." App.193,285. This ammunition does "not work in the shotgun." App.195.

No photographs were introduced depicting where the .32 and .38 caliber ammunition was found. Officers did not testify that either was in plain view. There was no testimony Mr. Steiner had a weapon that used the .32 or .38 caliber ammunition.

The only explanation for the presence of old, non-matching ammunition in the house came from Greta Steiner, Thomas Steiner's ex-wife. When Greta Steiner moved into the Meadow Avenue residence

in 1999 she brought boxes of materials belonging to her deceased former husband, an avid collector. App.379-80,438. She maintained that those boxes, some of which contained ammunition, were stored in the garage and that Thomas Steiner was unaware of the ammunition. App.380-81. There was no conflicting evidence offered about how and when those old, loose, and non-matching pieces of ammunition came to be in the residence.

Based on the facts and theories developed at trial,[3] the indictment charges in a single count (count two) distinct violations of §922(g), one for possession of 12 gauge shells that fit the shotgun recovered from the camper and were found in the basement near the shotgun's barrel and stock, and a second for possession of .32 and .38-caliber ammunition that was unconnected to the shotgun transaction, found in the "downstairs area," and stored in the garage by Greta Steiner in 1999.

### 4. When multiple offenses are charged in a single count, the defendant is entitled to an instruction requiring jury

---

[3] It was not until the evidence came in at trial that it was clear the indictment charged separate transactions in a single count. Thus, the indictment was rendered duplicitous by the evidence presented at trial. *United States v. Pietrantonio*, 637 F.3d 865, 871 (8th Cir.2011).

unanimity on which offense, of the two or more alleged, he committed.

Duplicity is the joining in a single count of two or more distinct and separate offenses. *United States v. Starks*, 515 F.2d 112, 116 (3d Cir.1975). The prohibition against duplicitous indictments arises primarily out of a concern that the jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of any particular offense. *Id.* A general verdict of guilty does not disclose whether the jury was unanimous with respect to any of the offenses and can prejudice the defendant at sentencing and in obtaining appellate review. *Id.* [4]

_____

[4] The general verdict prejudices Mr. Steiner's ability to challenge the erroneous joint possession instruction on appeal. The evidence and theories refuted any joint possession theory of liability. The court overruled the defense objection to a joint possession instruction, saying there was a question about whether Greta Steiner was living on the premises and suggesting perhaps both Steiner and Stants had an interest in the shotgun. App.333-34.

This was legal and factual error. There was no evidence or argument from any source that Stants and Steiner jointly possessed the shotgun found in the camper. As to Greta Steiner, the evidence showed she moved out in December 2006 when the couple separated and that she did not own the property. The government argued she "was out of the picture" in August 2007. App.499-500. The defense agreed Greta did

The Sixth Amendment right to a unanimous jury verdict, imperiled with a duplicitous indictment, may be cured by a limiting instruction requiring the jury to unanimously find the defendant guilty of at least one distinct act. *See, e.g., United States v. Newell*, 658 F.3d 1 (1st Cir.2011); *United States v. Yielding*, 657 F.3d 688 (8th Cir.2011); *United States v. Pietrantonio*, 637 F.3d 865 (8th Cir. 2011); *United States v. Starks*, 472 F.3d 466 (7th Cir. 2006); *United States v. Trammell*, 133 F.3d 1343 (10th Cir.1998).

> **5. The district court refused to instruct the jury it must unanimously agree as to *which* violation of the statute, of the multiple violations charged in count two, Mr. Steiner committed and instead affirmatively instructed the jury that it need *not* unanimously agree on *which* ammunition Mr. Steiner possessed to convict.**

The prosecutor requested jurors be instructed that although the defendant was charged with possessing ammunition in different varieties or from different locations, it need not unanimously agree on

---

not reside on the premises though she returned periodically to remove her possessions. App.333,379. The court erred by providing a joint possession instruction where the evidence and theories did not support it.

48

which ammunition he possessed to convict. App.94-95. Mr. Steiner

objected and requested that the jury be instructed it must agree as to

which ammunition Mr. Steiner possessed, adding that the indictment

was confusing. App.96-97, 337 (defense adding "the jury is not getting

that").

The court affirmatively instructed the jury that unanimity was

*not* required with respect to the firearm or ammunition:

> Although all jurors must agree with respect to Count 1 that
> the Defendant possessed a firearm or ammunition and with
> respect to Count 2 that the Defendant possessed different
> ammunition, you need not all agree on the exact item possessed.
> For example, if a Defendant was charged with possessing one
> piece of ammunition found in the bedroom, one piece of
> ammunition found in the living room, and one piece of
> ammunition found in the basement, you must all unanimously
> agree that the Defendant possessed at least one piece of
> ammunition in order to convict. You do not have to agree on which
> one or if he possessed more than one.
>
> Therefore, it would be sufficient if ten jurors determined that
> he possessed one piece of ammunition in the bedroom, one juror
> determined that he possessed one piece of ammunition found in
> the basement, and one juror determined that he possessed them
> all. In other words, if the Defendant is alleged to have been in
> possession of ammunition of different varieties or from different
> locations, you must all find that as to the ammunition charged in
> each count he possessed at least some ammunition as charged in
> that count in order to convict, but… need not all agree with

49

respect to a count on exactly which ammunition was actually possessed as charged in that count.

App.487-88, 342. This instruction violated Mr. Steiner's constitutional right to a unanimous verdict and is reversible error.

### 6. A unanimous verdict is required.

A defendant in a criminal trial has a constitutional right to a unanimous jury verdict. *United States v. Russell*, 134 F.3d 171, 177 (3d Cir.1998); *United States v. Edmonds*, 80 F.3d 810, 815 (3d Cir.1996). The purpose of a specific unanimity instruction is to ensure jurors are "in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged." *United States v. Beros,* 833 F.2d 455, 460 (3d Cir.1987). "[J]ust as the sixth amendment requires jury unanimity in federal criminal cases on each delineated offense that it finds a defendant culpable, it must also require unanimity regarding the specific act or acts which constitutes that offense." *Id.*, 461 (internal citation omitted). "Absent such certainty, the unanimity requirement would provide too little protection in too many instances." *Id.*

"The unanimity rule is a corollary to the reasonable-doubt standard, both conceived as a means of guaranteeing that each of the jurors 'reach [ ] a subjective state of certitude' with respect to a criminal defendant's culpability before rendering a conviction. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068 (1970)." *United States v. Correa-Ventura*, 6 F.3d 1070, 1076-77 (5th Cir.1993). The requirement of unanimity gives "substance to the reasonable-doubt standard; if a verdict is less than unanimous, the dissention tends to show that a reasonable doubt exists...." *Id.*, 1077.

This Court repeatedly has held that while in most cases a general unanimity instruction is sufficient, "[t]his general rule does not apply" and "the trial court must give an augmented unanimity instruction" where the facts are complex, where the allegations in a single count are either contradictory or only marginally related to one another, or where other factors create the potential that the jury will be confused. *United States v. Echeverri*, 854 F.2d 638, 643 (3d Cir.1988); *United States v. Russell*, 134 F.3d 171, 176 (3d Cir.1998); *Beros*, 833 F.2d at 460. This Court "adhere[s] to the simpler, and constitutionally more correct rule:

When it appears… there is a genuine possibility of jury confusion or

that a conviction may occur as the result of different jurors concluding

that the defendant committed different acts, the general unanimity

instruction does not suffice." *Beros*, 833 F.2d at 461. "[I]n any case

where a count will be submitted to the jury on alternative theories,

prudence counsels the trial court to give an augmented unanimity

instruction if the defendant requests such a charge." *United States v.*

*Ryan*, 828 F.3d 1010, 1020 (3d Cir.1987).

### 7. The district court's instruction denied Mr. Steiner his Sixth Amendment and due process rights to a unanimous verdict and requires reversal.

As set forth, Count two charged possession of various pieces of

ammunition in the "downstairs area" of the Meadow Avenue house that

fit different weapons, was acquired at different times and for different

purposes, and was separately stored.

The defense theory was that Thomas Steiner was framed by

Timmy Stants, a police informant with motive and opportunity to have

staged both crime scenes. App.166. Stants was facing a potential

maximum amounting to a lifetime in prison for his role in a

52

sophisticated crime organization and immediately upon his arrest began cooperating with law enforcement to reduce his sentencing exposure. App.166-67,410-11,516-17, 166-67. His cooperation was "extensive," extending to too many cases to number. App.228.

As part of this campaign of cooperation, Stants initiated the criminal investigation against Thomas Steiner: Stants told police Steiner was staying in his camper, he saw Steiner with a sawed-off shotgun Steiner referred to as a "cop killer," Steiner boasted he would use the shotgun to avoid being arrested on outstanding charges, and police would find the shotgun in the camper. Stants also told police they would find the other pieces of the shotgun in Steiner's own residence. The only other person to put the shotgun in Steiner's hands was Mark Williams, Stants lifelong friend, neighbor, and business associate, and he did not make this claim until 3-1/2 years later. App.513.

As to opportunity to have staged both crime scenes, Stants owned the camper as well as the property on which the camper was parked. Additionally, Stants admitted actually accessing the Meadow Avenue

53

residence at least twice and in Steiner's absence. App.307,321,416-17,382 (there was no lock on side entrance to house).

The prosecution's theories for possession of those various pieces of ammunition differed as did the strength of its proof.

With respect to the shotgun ammunition, the prosecutor repeatedly emphasized that the Federal ammunition found in the residence is the same ammunition found in the shotgun and in the camper and that the other 12 gauge ammunition can be used in the shotgun. App.193,494 (identifying in residence "[a]nother 12-gauge Federal ammunition, *just like the ones in the camper*"). The prosecutor stressed, "What's notable is during the search of… Meadow Avenue,… a box of High-power Federal ammunition [was found]…. You'll note that the Federal ammunition found in the camper with Mr. Steiner's other personal items and the shotgun was 12-gauge High-power ammunition." App.494-95.

The prosecution also presented substantial testimony establishing that the barrel and stock found in the residence matched the shotgun found in the camper and that the hacksaw and pipe wrenches found in

54

the residence could have been used to cut the shotgun. *See* app.493. It urged the jury to find Steiner possessed the shotgun in the camper and therefore also possessed the matching ammunition found at Meadow Avenue, where the sawed-off portions of that shotgun were found. *See, e.g.*, App.498-99.

With respect to the .32 and .38 caliber ammunition, the prosecutor simply said this "was found within Mr. Steiner's control in his home…." App.494.

However, the government introduced evidence Steiner sold or abandoned the house before the August 29, 2007 search. Stants testified Mr. Steiner was trying to sell the house and leaving town and had in effect abandoned that property: "[H]e couldn't go back to his house because he had the criminal charge." App.417-18. There was testimony from both Stants and Mark Williams that Mr. Steiner sold the house before the August 29th search and that Mrs. Williams notarized the paperwork for that sale. App.312,422.

In addition, Greta Steiner suggested the old, loose, .32 and .38 caliber ammunition came from boxes she stored in the garage back in

55

1999, and testified Mr. Steiner did not know about that ammunition. App.379-81,438. There was no conflicting evidence offered about how that old non-matching ammunition came to be in the residence.

The defense argued Tim Stants staged the scene: "[L]et's sprinkle a bowl with mail and shotgun shells." App.526. Referring to the .32 and .38 caliber ammunition he asked, "where does that come from," where is the gun that would fit that ammunition, why would Thomas Steiner leave "a bunch of odds and ends of different ammo lying around?" App.526. It stressed the absence of fingerprint evidence connecting Mr. Steiner to not just the gun, barrel, and stock, but also to the ammunition and ammunition box. App.525.

Significantly, *the jury found Mr. Steiner not guilty of possessing the sawed-off shotgun and 12 gauge Federal ammunition found in that camper.* Jurors necessarily found aspects of Tim Stants' and Mark Williams' testimony *not* credible, suggesting juror appreciation of the theory that Stants' staged the crime scenes. Yet the jury found Mr. Steiner guilty of possessing undifferentiated ammunition found in the "downstairs area" of the Meadow Avenue residence.

56

The court's instruction authorized a non-unanimous verdict:

- Four jurors could have believed that Stants planted the shotgun and shotgun shells but not the other ammunition and that Steiner constructively possessed that other ammunition because he owned the house where that ammunition was found.

- Four jurors could have believed Stants' testimony and found Steiner possessed the shotgun and shotgun shells, but that he did not possess the other ammunition found in the downstairs area.  Specifically, those four could have found Steiner did not have intent to exercise dominion and control based on testimony that Steiner abandoned or sold the house, or testimony that Steiner did not know about that other ammunition. [5]

- Four jurors could have believed Stants testimony and found Steiner possessed the shotgun and *all* the ammunition.

---

[5] Constructive possession occurs when a person not in actual possession, "knowingly has both the power and the intention" "to exercise dominion or control over a thing, either directly or through another person or persons." *United States v. Garth*, 188 F.3d 99, 112 (3d Cir.1999). "Dominion and control are not established, however, by 'mere proximity to the [item], or mere presence on the property where it is located or mere association with the person who does control the [item].' " *United States v. Jenkins*, 90 F.3d 814, 818 (3d Cir.1996).

The instruction thereby allowed the jury to convict at count two without a unanimous jury finding that Mr. Steiner committed any violation of the statute. This is reversible error.

> **8. This Court holds that when an indictment bundles several acts, any of which could constitute a violation of the statute, a trial court commits reversible error by failing to instruct jurors they must unanimously agree as to which act the defendant committed to convict.**

In *Beros*, this Court held that when a count alleges several distinct acts, any of which could support a conviction, jurors must be instructed to unanimously agree upon the specific act committed to convict. *Id.*, 833 F.3d at 458. *Accord United States v. Ryan*, 828 F.2d 1010 (3d Cir.1987) (where indictment charged defendant with making false statements and identified three distinct false statements, the district court committed reversible error by refusing to instruct the jury it must unanimously agree as to which statement formed the basis for the conviction), *abrogated on other grounds by United States v. Wells*, 519 U.S. 482, 117 S.Ct. 921 (1997).

The defendant in *Beros* was charged in one count with embezzling monies by (1) using a Council credit card to pay for airfare to Florida for

58

himself and his wife, (2) staying in a hotel suite rather than a standard room, and (3) remaining in Florida for personal reasons after Council business was concluded. *Id.*, 833 F.2d at 461. Any one of these acts could support a conviction under the statute. *Id.*, 458-460, 462. Absent an instruction that the jury must unanimously agree upon the particular act or acts to convict, four jurors could have found improper use of the credit card act was criminal, four others that occupying the suite was the criminal act, and the final four that remaining in Florida after the conference was the criminal act.  The jury would unanimously conclude there was a violation of the law but there would be no unanimity as to the predicate criminal act. *Beros*, 833 F.2d at 462.

The government "cannot rely on a composite theory of guilt, producing twelve jurors who unanimously thought the defendant was guilty but who were not unanimous in their assessment of which act supported the verdict. Conviction by a jury that was not unanimous as to the defendant's specific illegal action is no more justifiable than is a conviction by a jury that is not unanimous on the specific count." Id., 462.

Because, as here, there was "a significant possibility that" the failure to provide a specific unanimity instruction may have resulted in a non-unanimous verdict in violation of the Sixth Amendment, this Court in *Beros* reversed. *Id.*, 833 F.2d at 463 ("[W]e are not free to hypothesize whether the jury indeed agreed to and was clear on the transaction or theory by which it found the defendant guilty…"). "In conditions where jurors disagree among themselves as to just which offenses the evidence supports, the defendant may nevertheless wind up convicted because the jurors agree that the evidence showed that he had committed *an* offense, even if it was ambiguous as to which one." *Newell*, 658 F.3d at 27. The Supreme Court in *Richardson* warned that the lack of a unanimity instruction permits jurors to avoid discussion of the discrete criminal acts of possession charged, thus potentially covering-up "wide disagreement among the jurors about just what the defendant did, or did not, do" and allowing them to simply conclude "where there is smoke, there must be fire." *See Richardson v. United*

*States*, 526 U.S. 813, 819, 199 S.Ct. 1707 (1999).[6] *See Beros*, 833 F.2d at 460 (general unanimity instruction is inadequate where there is a potential for jury confusion). Further, by aggregating multiple violations in a single indictment, the prosecution may bundle together offense that are strongly supported by the evidence with ones that are moderately or weakly supported. *Newell*, 658 F.3d at 27.

The Sixth Amendment precludes the court from affirming on the ground that the jury *would* have found the defendant guilty beyond a reasonable doubt had it been properly instructed. Similarly, the court cannot affirm a non-unanimous verdict simply because the evidence is so overwhelming that the jury surely would have been unanimous had

---

[6] In this regard, it should be noted that the court sent the jury to eat lunch and to begin deliberations on Friday at 2:45 p.m., advising that they could only deliberate until 4:30 p.m. App.548. The court explained, "So if your deliberations are not finished by that time, I'll call you back into the courtroom …. There is a storm that's expected over the weekend. We don't know that it's going to be like, so make sure you check with that number about the weather, about whether the building is going to be closed. … [I]f… we're open as a court on Monday, we'll expect you to be here in time to start your deliberations around 9:30. Okay? So just so that you have that in mind for your timing." *Id*. The jury came back with a verdict by the end of the court day.

it been properly instructed. *Edmonds*, 80 F.3d at 824; *Russell*, 134 F.3d at 177,181.

Again, the prosecution's case was far from overwhelming and was completely dependent on the biased testimony of Tim Stants. The jury found Stants incredible when it found Mr. Steiner not guilty of possessing the shotgun despite Stants' testimony that he saw Mr. Steiner holding the shotgun in the camper. Because there is a significant possibility the instruction resulted in a non-unanimous verdict in violation of the Sixth Amendment and due process, the judgment must be reversed and the case remanded for a new trial.

### 9. The district court's ruling.

The district court determined that the issue was controlled by *United States v. Wise*, 515 F.3d 207 (3d Cir.2008). *Wise* addressed the issue of jury unanimity where the charge was possession of a firearm in furtherance of a drug trafficking crime. App.341. Because this Court in *Wise* held that the type of firearm is not an element of 18 U.S.C. § 924(c), the district court predicted it would also hold that the type of firearm is not an element of §922(g). App.341-42. And because the type

of firearm is not an element, the district court continued, the jury did not need to unanimously agree on which firearm (or ammunition) was possessed, and an instruction to the effect is appropriate. App.339-42.

*Wise* is inapposite. Defendant Wise was arrested in a bedroom of a house where drug dealing was occurring, and a loaded pistol was on the mattress. *Id.*, 211. The co-defendant was found in another room with a different gun. *Id.* A witness testified each possessed and displayed the firearms during drug dealing. *Id.*, 212. Significantly, the co-defendants in *Wise* were charged both as principals and aiders and abettors.

For the first time on appeal, the defendant in *Wise* argued that the district court erred in failing to instruct the jury it must unanimously agree on the specific firearm he possessed. *Id.*, 515 F.3d at 214.This Court held that a unanimity instruction is not required in *every* case and that failure to give one in *that* case was not plain error. *Id.*

Courts have concluded that the unit of prosecution in § 924(c) cases is the underlying drug trafficking offense. Thus, a defendant who uses multiple firearms in relation to a single drug trafficking crime may

63

be charged with only one violation of 18 U.S.C. § 924(c), and a specific

unanimity instruction would not normally be required as to any one of

the multiple firearms. *See, e.g., United States v. Diaz*, 592 F.3d 467,

471 (3d Cir. 2010) (holding "a defendant who uses multiple firearms in

relation to a single drug-trafficking crime may be charged with only one

violation of § 924(c)(1)). [7]

Moreover, because the co-defendants were charged both as

principals *and* aiders and abettors, further specificity was not required.

A defendant can be liable for possession in furtherance as an aider and

abettor whether he possesses or uses any of the firearms alleged in an

indictment if he has foreknowledge his confederate will commit the

---

[7] *Wise* contemplates that a specific unanimity instruction is required
when there is a tangible risk of jury confusion. *Wise*, 515 F.3d at 215,
citing *United States v. Theodorpoulos*, 866 F.2d 587, 597 (3d Cir.1989),
*overruled on other grounds by United States v. Price*, 76 F.3d 526 (3d
Cir.1996). In *Theodorpoulos*, the defendant was likewise charged with
possession of a firearm in furtherance of a drug crime. The indictment
listed four firearms. Under the facts of that case, only *one* of those
firearms could have legally supported the conviction under § 924(c).
This Court determined the district court properly instructed jurors they
must unanimously agree on which weapon the defendant possessed to
convict. *Id.*, 587.

offense with a firearm. *See, e.g., United States v. Soto*, 780 F.3d 689 (6th Cir.2015) (affirming conviction under aider and abettor liability where defendant did not own, possess, or use the firearms listed in the indictment and was in a different city at the time his co-defendants brandished their guns). In light of the unit of prosecution in a § 924(c) prosecution, the theory of liability, and the evidence presented, further specificity about the weapons was not required to sustain the conviction. *Id.*, 515 F.3d at 215.

Unlike a § 924(c) prosecution, and as already explained, multiple firearms or pieces of ammunition acquired at different times or stored at different locations, support separate charges under §922(g).

The remaining cases relied upon by the district court further support Mr. Steiner's position. For example, the First Circuit in *Verrecchia* focused on the appropriate unit of prosecution for the §922(g) offense to resolve a request for a jury unanimity instruction. *United States v. Verrecchia*, 196 F.3d 294, 297 (1st Cir.1999). For the first time on appeal, *Verrecchia* argued the district court erred in failing to instruct the jurors they had to agree unanimously on at least one

65

particular weapon that he possessed out of the two listed in Count One and out of the twenty-one listed in Count Two. *Id.*, 296-97. In particular, he argued that each count was duplicitous and that a specific unanimity instruction was required to cure that error. *Id.*

Unlike count two of Mr. Steiner's indictment, the indictments in *Verrecchia* were not duplicitous; the government could not have properly charged defendant with twenty-three separate crimes for the twenty-three different guns he allegedly possessed. Instead, the indictment correctly grouped the firearms into counts based on the place of possession: the guns Verrecchia had in his truck during the sting operation were charged together under Count One, and those he possessed in the crate in the barn were charged together under Count Two. Each count charged only one offense, despite the references in each to multiple firearms. Because neither count was duplicitous, Verrecchia was not entitled to a specific unanimity instruction.[8]

---

[8] Similarly, the Fifth Circuit's holding in *United States v. Talbert*, 501 F.3d 449 (5th Cir.2007), that the jury need not unanimously agree as to which of two firearms the defendant possessed, was predicated on its determination that the defendant *simultaneously* possessed multiple

It was only after rejecting the duplicity-based argument that the *Verrecchia* court addressed an alternative argument that even if the simultaneous possession of multiple firearms constitutes only one violation of §922(g), the court still plainly erred in failing to instruct jurors that they had to unanimously agree on at least one firearm to convict. *Id.*, 196 F.3d at 298. Relying on *Richardson*, the First Circuit held that "possession of a particular firearm [is not] an element of a §922(g)(1) violation *when simultaneous possession of multiple firearms is alleged." Id.*, 196 F.3d at 299 (emphasis added). The failure to give a specific unanimity request was therefore not plain error. *Id.*, 299-301.[9]

---

weapons and therefore was properly charged with only one count under §922(g)(1).

[9] The Sixth Circuit in *United States v. DeJohn*, 368 F.3d 533 (6th Cir. 2004), following that reasoning, declined to "to announce as a rule… that the specific firearm possessed by a felon is a statutory element of 18 U.S.C. §922(g)(1) such that the jury must be given a unanimity instruction each time multiple firearms comprise a single §922(g)(1) charge, regardless of the facts of the case." *Id.*, 542. But the Court explained its fact-specific rule that no unanimity instruction is required where multiple firearms charged in a single count were discovered as part of the *same transaction* remained intact. It also stressed it was not altering its prior case law, requiring a specific unanimity instruction when the particular factual circumstances create "a genuine risk that the jury is confused or that a conviction may occur as the result of

Mr. Steiner does not start from that baseline proposition; the indictment at count two does *not* charge "simultaneous possession of multiple firearms," but multiple violations of §922 in a single indictment. *Richardson* is thus inapposite.

The district court's focus on elements thus misses the mark. The argument is not that the specific firearm possessed is an element of §922(g) such that a specific unanimity instruction is required every time multiple firearms are charged in a single count. Rather, the argument is that the indictment bundles in a single count multiple distinct violations of the §922(g) statute, each of which supports a separate violation of that statute. *See United States v. Holley*, 942 F.2d 916, 927 (5th Cir. 1991) (explaining "*This differs... from the situation where a single count as submitted to the jury embraces two or more separate offenses, though each be a violation of the same statute.*"). "[I]t does not follow from the fact that unanimity is not required with respect to alternative means of committing *one and the same* criminal act that

---

different jurors concluding that a defendant committed different acts." *Id.*

68

unanimity is not required with respect to multiple instances of the same *type* of criminal act. *Newell*, 658 F.3d at 20-21.

In *Holley,* the indictment charging perjury alleged multiple separate materially false statements, and each separate statement was a sufficient basis for violation of the perjury statute. The court held a specific unanimity instruction was required. *Id.*, 942 F.2d at 928-29. In *Newell*, an indictment charging embezzlement bundled in a single count several transactions, each of which would make out an independent violation of the statute. Again, the court required a specific unanimity instruction. *Newell*, 658 F.3d at 20-21.

Here, too, the indictment bundled into a single count discrete violations of the felon-in-possession statute based on ammunition for different weapons separately stored and acquired. A specific unanimity instruction was required to cure that duplicity. Absent a specific unanimity instruction, it is unclear which, if any, violation commanded the jury's unanimous assent. *Newell*, 658 F.3d 1. More importantly, the instruction given *authorized* a conviction on less than a unanimous

69

verdict in violation of Mr. Steiner's Sixth Amendment and due process rights. Reversal is required.

III.   **The pre-indictment delay of over three years caused substantial actual prejudice to Mr. Steiner's due process right to a fair trial, and the district court erred by applying an incorrect legal standard and by refusing to dismiss this case for pre-indictment delay.**

Mr. Steiner acknowledges binding Third Circuit precedent but presents the following issue for possible *en banc* or Supreme Court review: Does a claim that a pre-indictment delay violated a criminal defendant's right to due process require the defendant to prove that the government intentionally delayed the prosecution to gain a tactical advantage?

Oppressive pre-indictment delay within the applicable limitations period is protected by the Fifth Amendment Due Process Clause. *United States v. Ismali*, 828 G.2d 153, 167 (3d Cir.1987), citing *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455 (1971) and *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044 (1977).

The Fourth, Seventh and Ninth Circuits apply a balancing test that weighs the actual prejudice demonstrated by a defendant against the government's reason for the delay. *See United States v. Hagler*, 700 F.3d 1091 (7th Cir.2012) (once the defendant meets his burden of

71

demonstrating that the delay caused actual prejudice, the burden shifts

to the government to demonstrate that the purpose of the delay was not

to gain a tactical advantage over the defendant or for some other

impermissible reason.); *United States v. Ross*, 123 F.3d1181 (9th

Cir.1997); *Howell v. Barker*, 904 F.2d 889, 895 (4th Cir.1990) (granting

relief after balancing actual prejudice from 27-month delay against

government's "negligence" in failing to initiate prosecution).

The Third Circuit, along with the majority of Circuits, requires a

defendant in addition to establishing prejudice to also prove the

government intentionally delayed bringing the indictment to gain some

advantage over the defendant. *Ismali*, 828 F.3d at 167-68. *See United*

*States v. Colonna,* 360 F.3d 1169 (10th Cir.2004); *United States v. Soto-*

*Beniquez*, 356 F.3d 1 (1st Cir.2003); *United States v. Alameth*, 341 F.3d

167 (2d Cir.2003); *United States v. Foxman*, 87 F.3d 1220 (11th

Cir.1996); *United States v. Crouch*, 84 F.3d 1497 (5th Cir.1996).

Mr. Steiner argues that Supreme Court precedent does not create

a bright-line test requiring defendants to show the government delayed

to gain tactical advantage but instead requires courts to determine on a

case-by-case basis whether requiring a trial after a pre-indictment delay violates "fundamental conceptions of justice" and "the community's sense of fair play and decency." App.49-58, citing *Lovasco*, 431 U.S. at 788-90. *See also Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2181 (1972) (in a similar context, the Court rejected a bright line test for evaluating speedy trial claims and instead implemented a balancing test that takes into consideration the actions of the prosecution and the defendant). He raises the instant challenge to this Court's test for pre-indictment delay claims, a test that imposes a nearly unattainable burden on defendants and makes the due process protection identified in *Marion* almost illusory, to present it for potential *en banc* review or to preserve it for potential Supreme Court review.

Here, Mr. Steiner was substantially prejudiced by the lengthy pre-indictment delay, and the government offered no countervailing reason for the delay. The government simply asserted, "things get very busy, people have many cases to handle, and "[p]rosecutorial inattention or even negligence" is not bad faith. App.75,90.

Acting on an informant's tip, police seized a shotgun from a camper owned by Tim Stants on August 27, and ammunition from a residence owned by Mr. Steiner on August 29, 2007. Mr. Steiner was arrested August 27, 2007 and interrogated and made statements the prosecution introduced as evidence against him at trial. App.50.

At an October 4, 2007 hearing, the prosecutor opposing bond reduction presented Trooper Mott who explained he was ready to seek indictment and hoped to file federal charges within 30 days: "I currently have federal charges of felon being in possession" of a sawed-off shotgun. App.51. When explicitly asked when the federal charges would filed, Trooper Mott responded that he hoped the case would be presented to a grand jury "within the next 30 days." App.51-52.

An indictment was not filed until April 14, 2011, three and one-half years later. The indictment was found 1326 days, or 3 years, 7 months, and 18 days after the evidence was seized and Mr. Steiner arrested. The superseding indictment added the ammunition seized from the residence and was filed November 29, 2011, 4 years, 3 months, 2 days after arrest.

During that more than 3 year delay, Mr. Steiner lost witnesses, evidence, and investigative leads. App. 70. Dawn Breckenridge sold the shotgun to Timothy Stants, and John Butcher witnessed that sale. Both died in May, 2010 during the pre-indictment delay. Investigators did not interview those witnesses when given this information by Steiner. App. 70, 86,78. The camper and motor home were removed from Stants' property, and complete pictures of their interiors were not taken by investigating officers. This lost evidence would have refuted Stants' testimony that Mr. Steiner possessed the shotgun and ammunition and was staying in the camper where the gun was found. Proof that Stants' owned the shotgun would buttress the defense that Stants manufactured *both* crime scenes, planting the shotgun in the camper and its matching components in the residence while also sprinkling the "downstairs area" with shotgun ammunition and ancient ammunition owned and possessed by Greta Steiner.

Mr. Steiner request that this Court accept this case for *en banc* review to reconsider the standard for assessing pre-indictment delay.

75

Alternatively, he raises this issue to preserve it for Supreme Court review.

## CONCLUSION

The judgment must be vacated and the case remanded for a new trial.

Respectfully submitted,

*/s/ Renee Pietropaolo*
Renee Pietropaolo
Assistant Federal Public Defender
Counsel for Appellant
Thomas David Steiner

## CERTIFICATE OF MEMBERSHIP IN BAR

I, Renee Pietropaolo, certify that I am a member of this Court's Bar.

*/s/ Renee Pietropaolo*
Assistant Federal Public Defender

## CERTIFICATE OF COMPLIANCE

I, Renee Pietropaolo, hereby certify that the principal brief of appellant complies with the type-volume limitations prescribed in Fed.R.App.P. Rule 32(a)(7)(B)(i-iii), because it contains 13,847 words.

*/s/ Renee Pietropaolo*
Assistant Federal Public Defender

## CERTIFICATE OF IDENTICAL TEXT

I, Renee Pietropaolo, hereby certify that the text of the E-Brief and Hard Copies of the Brief for Appellant filed on behalf of Thomas David Steiner filed at No. 14-4628 are identical.

*/s/ Renee Pietropaolo*
Assistant Federal Public Defender

## CERTIFICATE OF VIRUS CHECK

I, Renee Pietropaolo, hereby certify that a virus check was performed on the Brief for Appellant filed on behalf of Thomas David Steiner filed at No. 14-4628 using Symantec Endpoint Protection v12.1.5337.5000 software.

*/s/ Renee Pietropaolo*
Assistant Federal Public Defender

# CERTIFICATE OF SERVICE

I hereby certify that the following is a filing user and will be served electronically through the Court's electronic docketing system (cm/ecf) and by hand-delivery:

Rebecca Ross Haywood
Assistant United States Attorney
4000 United States Courthouse
700 Grant Street
Pittsburgh, Pennsylvania 15219
Rebecca.Haywood@usdoj.gov

*/s/ Renee Pietropaolo*
Renee Pietropaolo
Assistant Federal Public Defender

June 5, 2015