No. 14-4628

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT
_____

UNITED STATES OF AMERICA

v.

**THOMAS DAVID STEINER,**

**Appellant**
_____

**Appeal from Judgment of Conviction and Sentence
Entered by the United States District Court
for the Western District of Pennsylvania at
Crim. No. 11-089 (Conti, Ch. J.).**

_____

### BRIEF FOR APPELLEE

_____

**DAVID J. HICKTON**
**United States Attorney**

**Jane Dattilo**
**Assistant U.S. Attorney**
**Attorney for Appellee**

**700 Grant Street, Suite 4000**
**Pittsburgh, Pennsylvania 15219**
**Tel:   (412) 644-3500**
**Fax:   (412) 644-6995**
**Email: jane.dattilo@usdoj.gov**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................... iii

JURISDICTION.................................................................................1

ISSUES PRESENTED AND STANDARDS OF REVIEW ...................................2

STATEMENT OF RELATED CASES AND PROCEEDINGS .............................5

STATEMENT OF THE FACTS AND OF THE CASE ..........................................6

SUMMARY OF ARGUMENT ...........................................................13

ARGUMENT ...............................................................................15

I.    The District Court Properly Exercised Its Discretion in Admitting Evidence That Steiner Was Arrested On An Outstanding Warrant Under Rule 404(b). ..............................................................................15

    A.    The District Court Admitted the Warrant Evidence Under Rule 404(b), Not As Intrinsic Evidence. ....................................................15

    B.    The District Court Properly Admitted the Warrant Evidence Under Rule 404(b).........................................................................17

        1.    "Completing the Story" Is a Proper Purpose Under Rule 404(b). ....................................................................19

        2.    The District Court Performed a Rule 403 Analysis Which Was Not Arbitrary, Fanciful, or Clearly Unreasonable............21

    C.    Any Error in Admitting the Evidence Is Harmless and Any Procedural Error in the District Court's Rule 403 Analysis Is Not Plain..............................................................................22

II.   The District Court Correctly Instructed The Jury That It Need Not Unanimously Agree As to the Type of Ammunition Possessed. ..................27

    A.    Count Two Correctly Charged a Single Instance of Possession of Ammunition.......................................................................28

B.    The Particular Ammunition Possessed Is a Means, Not an Element, of § 922(g), and Thus Does Not Require Juror Unanimity.................35

C.    Steiner Cannot Show Plain Error With Respect to His Duplicity Argument, and Any *Richardson* Error Was Harmless......................433

III.    This Court Has Correctly Held That Dismissal For Pre-Indictment Delay Based on the Due Process Clause Requires A Showing of Bad Faith On the Part of the Government....................................................................................45

A.    A Defendant Must Show That The Government Acted In Bad Faith To Prevail On A Due Process Pre-Indictment Delay Claim Because the Constitution Does Not Provide More Protection Than Statutes Of Limitation In the Ordinary Case. ..................................................45

B.    Steiner Cannot Show Actual Prejudice. ............................................50

CONCLUSION .......................................................................................................53

# TABLE OF AUTHORITIES

**CASES**                                                               **PAGE(S)**

Albrecht v. Horn, 485 F.3d 103 (3d Cir. 2007) ............................................17

Ball v. United States, 349 U.S. 81 (1955)......................................28, 29, 30

Davidson v. Cannon, 474 U.S. 344 (1986)...............................................49

Huddleston v. United States, 485 U.S. 681 (1988)........................17, 18, 19

Neder v. United States, 527 U.S. 1 (1999) ..............................................43

Puckett v. United States, 556 U.S. 129 (2009) .............................2, 24, 25, 43

Richardson v. United States, 526 U.S. 813 (1999)..................................passim

Sanabria v. United States, 437 U.S. 54 (1978) .........................................28

Schad v. Arizona, 501 U.S. 624 (1991) ....................................................36

Snyder v. Klem, 438 F. App'x 139 (3d Cir. 2011) ....................................48

Teva Pharm. USA, Inc. v. Sandoz, Inc., 135 S. Ct. 831 (2015) ....................4

United States v. Asher, 854 F.2d 1483 (3d Cir. 1988) ..............................23

United States v. Bansal, 663 F.3d 634 (3d Cir. 2011).................................43

United States v. Beckett, 208 F.3d 140 (3d Cir. 2000)...............................46

United States v. Berry, 977 F.2d 915 (5th Cir. 1992)...........................30, 35

United States v. Brown, 959 F.2d 63 (6th Cir. 1992)..................................48

United States v. Caldwell, 760 F.3d 267 (3d Cir. 2014) ...................18, 21, 22

United States v. Cannistraro, 800 F. Supp. 30 (D.N.J. 1992).......................47

United States v. Crooks, 766 F.2d 7 (1st Cir. 1985)...................................48

United States v. Crouch, 84 F.3d 1497 (5th Cir. 1996).........................48, 49

United States v. Cunningham, 145 F.3d 1385 (D.C. Cir. 1998).....................35

United States v. Davis, 726 F.3d 434 (3d Cir. 2013).....................................18

United States v. DeJohn, 368 F.3d 533 (6th Cir. 2004)..............................42

United States v. Drayton, 51 F. App'x 95 (4th Cir. 2002) .................... 42-43

United States v. Dunford, 148 F.3d 385 (4th Cir. 1998) .........................30, 32

United States v. Echeverri, 854 F.2d 638 (3d Cir. 1988) ...................... 19-20

United States v. Emanuele, 51 F.3d 1123 (3d Cir. 1995)..............................23

United States v. Engstrom, 965 F.2d 836 (10th Cir. 1992) .........................49

United States v. Flores-Mejia, 759 F.3d 253 (3d Cir. 2014) ............................2, 24, 25

United States v. Frankenberry, 696 F.2d 239 (3d Cir. 1982) .....................29, 39

United States v. Fulford, 825 F.2d 3 (3d Cir. 1987).....................................45

United States v. Gouveia, 467 U.S. 180 (1984)..........................................47

United States v. Green, 617 F.3d 233 (3d Cir. 2010) ......................................2

United States v. Hall, 77 F.3d 398 (11th Cir. 1996)................................30, 35

United States v. Hayes, 40 F.3d 362 (11th Cir. 1994)...............................49

United States v. Hoo, 825 F.2d 667 (2d Cir. 1987) .....................................48

United States v. Ismaili, 828 F.2d 153 (3d Cir. 1987).........................4, 46, 51

United States v. Johnson, 302 F.3d 139 (3d Cir. 2002)...............................26

United States v. Joseph, 730 F.3d 336 (3d Cir. 2013) ....................................3

United States v. Keen, 104 F.3d 1111 (1996)...............................................30

United States v. Kennedy, 682 F.3d 244 (3d Cir. 2012) ...................31, 32, 33

United States v. Ladson, 238 F. App'x 874 (3d Cir. 2007)........................48

United States v. Lee, 317 F.3d 26 (1st Cir. 2003) .....................................40

United States v. Lovasco, 431 U.S. 783 (1977)........................45, 46, 49, 50

United States v. Marcus, 560 U.S. 258 (2010) .................................................................2

United States v. Marino, 682 F.2d 449 (3d Cir. 1982) ....................................29, 30, 39

United States v. Marion, 404 U.S. 307 (1971) ................................................46, 47, 50

United States v. Newmark, No. 06-CR-447, 2007 WL 839077
    (E.D. Pa. Mar. 14, 2007) ..............................................................................................48

United States v. Olano, 507 U.S. 725 (1993) ........................................................25, 44

United States v. Pollock, 757 F.3d 582 (7th Cir. 2014).............................................42

United States v. Root, 585 F.3d 145 (3d Cir. 2009) ....................................................28

United States v. Sampson, 980 F.2d 883 (3d Cir. 1992) .................................18, 21, 24

United States v. Sebetich, 776 F.2d 412 (3d Cir. 1985) ...........................46, 47, 50, 51

United States v. Shavers, 693 F.3d 363 (3d Cir. 2012) ..............................................23

United States v. Sowa, 34 F.3d 447 (7th Cir. 1994).....................................................49

United States v. Stewart, 179 F. App'x 814 (3d Cir. 2006) .......................................46

United States v. Stewart, No. CR.A. 02-62-1, 2003 WL 22134841
    (D. Del. Sept. 5, 2003) ..................................................................................................50

United States v. Talbert, 501 F.3d 449 (5th Cir. 2007) .....................................3, 35, 42

United States v. Tann, 577 F.3d 533 (3d Cir. 2009) ......................................29, 30, 31

United States v. Torres, 251 F. App'x 763 (3d Cir. 2007) .........................................26

United States v. Verrecchia, 196 F.3d 294 (1st Cir. 1999)..................................passim

United States v. Wise, 515 F.3d 207 (3d Cir. 2008)....................................................42

United States v. Yeaman, 194 F.3d 442 (3d Cir. 1999)........................................36, 41

## **FEDERAL STATUTES**

15 U.S.C. § 77q(a) ................................................................................41

18 U.S.C. §  921(a) ...............................................................................37

18 U.S.C. § 922(g) ...........................................................................passim

18 U.S.C. § 922(h) ...........................................................................29, 39

18 U.S.C. § 924(c) ................................................................................42

18 U.S.C. § 924(e) ................................................................................38

18 U.S.C. § 1202 ..............................................................................29, 39

18 U.S.C. § 3231 ....................................................................................1

18 U.S.C. § 3742(a)(1) ...........................................................................1

28 U.S.C. § 1291 ....................................................................................1

## **FEDERAL RULES**

Fed. R. Crim. P. 52 ..........................................................................2, 24, 43

Fed. R. Evid. 404(b) .......................................................................passim

## **JURISDICTION**

This is a direct appeal stemming from the criminal conviction and sentence of Thomas Steiner.   The district court had jurisdiction over the action by virtue of 18 U.S.C. § 3231.

The judgment of sentence was entered on the docket on November 17, 2014. A34, Docket.[1]

This Court has jurisdiction to decide the appeal pursuant to 28 U.S.C. § 1291, because it is an appeal from a final judgment of conviction and sentence.   The appellant has a right to appeal from the judgment of sentence by virtue of 18 U.S.C. § 3742(a)(1).

---

[1]Record citations to "A__" refer to the appendix filed by the appellant.   Unless otherwise indicated, the document cited is the transcript of trial.   Citations to "PSR" refer to the Presentence Investigation Report filed in this case.

## ISSUES PRESENTED AND STANDARDS OF REVIEW

I.    Did the district court abuse its discretion in admitting evidence that Steiner was arrested pursuant to a warrant for failing to appear at a preliminary hearing under Rule 404(b)?

(a)    Steiner objected to the admission of the evidence, but did not object to the adequacy of the district court's Rule 403 analysis.    A117-18.

(b)    Ordinarily, a district court's admission of evidence and its analysis under Rules 404(b) and 403 are reviewed for an abuse of discretion.    United States v. Green, 617 F.3d 233, 239 (3d Cir. 2010).    "An abuse of discretion occurs only where the district court's decision is arbitrary, fanciful, or clearly unreasonable—in short, where no reasonable person would adopt the district court's view."    Id. (internal quotations omitted).

If a defendant failed to object to the adequacy of a district court's Rule 403 explanation at trial, then that issue should be reviewed for plain error.    Although this Court has not yet so held, such a rule is in line with its general jurisprudence regarding plain error review, not to mention Fed. R. Crim. P. 52 and Supreme Court cases interpreting it.    See generally United States v. Marcus, 560 U.S. 258 (2010); Puckett v. United States, 556 U.S. 129 (2009); cf. United States v. Flores-Mejia, 759 F.3d 253, 256-57 (3d Cir. 2014) (defendant must object to alleged inadequacy of district court's explanation of sentence to preserve issue for appeal).

II.    Did the district court err by instructing the jury that it need not unanimously agree as to the particular ammunition possessed in rendering a verdict at Count Two?

(a)    Steiner requested a unanimity instruction from the district court, but never advanced a duplicity challenge, the basis for his unanimity argument on appeal.    A96-97, Response to Government's Supplemental Proposed Jury Instruction (arguing that a unanimity instruction was required because this Court has not addressed the question decided in United States v. Talbert, 501 F.3d 449, 451 (5th Cir. 2007)); A125, Pretrial Conference Transcript; A335-36 (same), 343 (lodging continuing objections).

(b)    To the extent that Steiner now argues that a juror unanimity instruction was required to cure a duplicitous indictment, the district court's decision should be reviewed for plain error.    See United States v. Joseph, 730 F.3d 336, 343 (3d Cir. 2013) (party must make a specific argument relying on the same legal rule or standard before the district court in order to preserve it for appeal; raising a broad issue will not suffice).

III.    Should this Court accept this case for en banc review of its standard for assessing motions to dismiss based on pre-indictment delay?

(a)    This issue was preserved.    A49-57, Motion to Dismiss for Pre-Indictment Delay.

3

(b)    The district court's findings with respect to actual prejudice and intentional delay are reviewed for clear error.    <u>United States v. Ismaili</u>, 828 F.2d 153, 169 (3d Cir. 1987).    Determinations of law are reviewed de novo.    <u>Teva Pharm. USA, Inc. v. Sandoz, Inc.</u>, 135 S. Ct. 831, 841 (2015).

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously.   Counsel is not aware of any related cases or proceedings—completed, pending, or anticipated—before this Court or any other court or agency, state or federal.

## STATEMENT OF THE FACTS AND OF THE CASE

**I. Police Found a Sawed-Off Shotgun Alleged to Belong to Steiner in a Camper and Ammunition in the Basement of Steiner's Home.**

On August 20, 2007, a confidential informant named Timothy Stants[2] told PSP Trooper Matthew Baumgard that Steiner possessed a sawed-off shotgun and had expressed a willingness to use it against law enforcement. A203, 224, 28. According to Stants, Steiner had told him that he could not go back to his house because of a pending criminal charge. Stants allowed Steiner to stay in a pull-behind camper on Stants's property. A206-07, 210, 399, 418. Steiner showed Stants the sawed-off shotgun, which he called the "cop killer." A420. He told Stants that he had no intention of showing up to court for his preliminary hearing scheduled for August 27, 2007, and instead planned to buy a motor home on Stants's property and flee to Texas. A207, 259, 421.

---

[2] Stants began an extensive and proactive course of cooperation with law enforcement after he was charged with nineteen burglaries and related crimes, including state RICO charges. A402, 407, 410. By August of 2007, Stants had been providing reliable information to Trooper Baumgard for almost two years. A206, 227-28, 407. Having assisted in many investigations, especially narcotics cases, Stants was sentenced to probation in 2010. A408. He did not receive any direct sentencing benefit for providing information regarding Steiner, but likely hoped that his assistance might generally be taken into account. A224, 423. By the time Steiner called Stants as a witness, Stants had violated his probation by committing another burglary and was serving a twenty-one to forty-two month sentence of imprisonment. A408.

Having received this information from Stants, Trooper Baumgard confirmed that Steiner was prohibited from possessing a gun.   A204.   He drove by Stants's property and saw Steiner walking between a garage and the camper where Stants had reported seeing the gun.   A206.   He obtained a search warrant for the camper. A207.   He did not want to immediately execute the warrant, however, because he believed that Steiner was willing to use the gun on police to avoid being arrested. A255.

### A.    Police Arrested Steiner On An Outstanding Warrant and Found the Sawed-Off Shotgun in the Camper.

On the morning of August 27, 2007, Steiner failed to appear for a preliminary hearing on charges that he had sexually assaulted a minor girl.   A208, 255; 64-65, Bond Hearing Tr.   Police arranged for Stants to drive Steiner to a gas station that afternoon where they arrested him on a warrant for his failure to appear.   A208-09, 255.

Meanwhile, knowing that Steiner had left the property with Stants, Trooper Baumgard searched the camper.   A210, 236, 239.   He found the sawed-off shotgun laying on a bench covered with biker-style handkerchiefs, and cleared six live Federal 12-gauge shotgun shells from the firearm.   A210, 216.   Also in the trailer were a spent shotgun shell, Camel cigarettes, coffee, a cell phone, and a wallet. A210-12, 218-20.   Inside the wallet were a social security card, four National City

Bank personal checks, a GED diploma card, a car insurance card, and a pink slip for the June 2007 purchase of a Harley Davidson, all in Steiner's name.   A219-21.

Trooper Motte interviewed Steiner at the police barracks after his arrest. A273.   Steiner denied possessing the firearm.   A274.   He said that he was not staying at the camper, but had been there four or five times to change clothes while riding quads.   A274.   Steiner told Trooper Motte that he smoked Camel cigarettes. A274.

### B.    Police Found Ammunition in Steiner's House.

Stants told Trooper Baumgard that he had seen part of the shotgun at Steiner's house.   A226.   Upon his arrest, denying that he stayed in the camper, Steiner told police that he was living at 901 Meadow Avenue in Charleroi, Pennsylvania.[3] A225-26.   Two days after Steiner's August 27 arrest, police searched 901 Meadow Avenue pursuant to a search warrant.   A225.   They found the sawed-off rear stock of a Sears 12-gauge pump shotgun near a bar in the basement.   A226, 280, 287. The cut-off end of the gun's barrel was in the ceiling above the bar where panels were missing.   A287.   A forensic expert matched the stock and barrel found in the basement to the sawed-off shotgun found in the camper.   A363.   A hacksaw and

---

[3]Steiner also testified that his address was 901 Meadow Avenue at a bond hearing in Charleroi, Pennsylvania.   A277.

two pipe wrenches that could have been used to saw off the stock and barrel were found near the bar area in the basement.   A288-90.

Several varieties of ammunition were found in the basement.   An empty box of Federal high-powered 12-gauge shotgun shells was on a pool table, and one round of that ammunition was in a cup of the pool table.   A282-84.   Trooper Motte also found four Winchester 12-gauge shotgun shells, a box of .32 caliber Winchester Special Silver Tips, and other handgun ammunition in the basement.   A284-85. The Winchester shotgun shells were in a bowl with an opened letter addressed to Steiner.   A285.   Other mail addressed to Steiner and loose National City Bank checks were also in the basement.   A281-82, 290.

## II.    Steiner Was Charged With Two Counts of Being a Felon-in-Possession of a Firearm and Ammunition.

In an indictment filed on April 14, 2011, a grand jury sitting in the Western District of Pennsylvania charged Steiner with one count of being a felon-in-possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g) based on the shotgun and Federal ammunition found in the trailer.   A39-40.   Then, on November 29, 2011, a superseding indictment was filed that added a second count charging Steiner with a violation of § 922(g) based on the ammunition found in his house.   A43-46.   Specifically, Count Two of the superseding indictment alleged that Steiner possessed "12 gauge Winchester ammunition, .32 caliber Winchester ammunition, .38 Special caliber Winchester ammunition, and 12 gauge

9

Federal ammunition." A45-46. The superseding indictment enumerated four of Steiner's prior convictions, including two terroristic threats convictions, one burglary conviction, and one conviction for lewd/lascivious assault on a child. A45.

Two years after his indictment, after filing thirteen motions for extensions of time to file pretrial motions and two motions to continue his pretrial motion hearing, Steiner filed a motion to dismiss for pre-indictment delay, A49-57, which the district court denied. A92-93, Hearing Tr.

### III. A Jury Convicted on Count Two (Possession of the Ammunition Found in His House), But Acquitted On Count One (Possession of the Firearm And Ammunition Found in the Camper).

At trial, Steiner stipulated to having a prior felony conviction, A169, and a government expert testified that the firearm and ammunition at issue were manufactured outside of Pennsylvania. A187-94. Mark Williams, Stants's friend, testified as part of the government's case. A306-29. He and Stants toured Steiner's home at 901 Meadow Avenue in August 2007 because Williams was considering purchasing the house as an investment property. A307. Steiner was present at that time. A308. Williams noticed the shotgun barrel and hacksaw laying on a homemade bar, and pointed it out to Stants. A309-10. Later that month, Steiner joined a camping trip with Williams and his family. A311-12. Williams saw Steiner pull a bag out of his truck that contained a sawed-off shotgun,

and Williams saw Steiner shoot a junk car with the gun.   A313-14.   Steiner asked

Williams if he wanted to look at the gun, but Williams declined.   A313.   On that

camping trip, Steiner told Williams that he "wouldn't go easy" if police officers tried

to arrest him.   A314.

Steiner testified.   A441-60.   He denied possessing the shotgun and

ammunition.   A441, 452.   He testified that he stayed in a Ford motor home on

Stants's property, but not in the camper where the firearm and ammunition were

found.   A442.   He said that Mark Williams's son had shot a gun while they were

camping, but denied shooting or possessing a gun himself.   A451-52.   Finally, he

admitted that he owned the house at 901 Meadow Avenue at the time that the

ammunition was found in it.   A442.

Steiner's ex-wife, Greta Steiner, who had been convicted of hindering his

apprehension and prosecution in 1999, also testified on his behalf.   A439-40.   She

claimed that although she had been living in Gettysburg, Pennsylvania, in 2007, she

stopped at 901 Meadow Avenue every other month or so to retrieve belongings and

never saw any firearms or ammunition there.   A379-80.   She testified that she

stored boxes of ammunition that had belonged to her previous husband in the garage,

but that the ammunition was never brought into the house.   A380-81.   She said that

she stayed at 901 Meadow Avenue for a week and a half in mid-August of 2007, at

which point she opened Steiner's notice of impending warrant of arrest that was

found in a bowl with the Winchester shotgun shells.   A383-84.   She was not present in the house on August 29, 2007, when the search took place.   A383.

Finally, Steiner called Stants, who told the jury that he had seen Steiner with the gun in the camper and corroborated Williams's testimony that they saw part of the shotgun in Steiner's house.   A417-23.

## IV.   The District Court Sentenced Steiner to 87 Months' Imprisonment on Count Two.

The Probation Office prepared a Presentence Investigation Report in this case.   The PSR originally identified Steiner as an armed career criminal, but the district court found that his prior convictions for burglary, terroristic threats, and lewd and lascivious assault on a child did not qualify as predicates under ACCA. PSR ¶ 21; Addendum to PSR; A9, Tentative Findings.   Steiner's base offense level was 24 and his criminal history category was VI, resulting in an advisory guidelines range of 70 to 87 months' imprisonment.   PSR ¶¶ 15, 40; A9, Tentative Findings. The district court sentenced him to 87 months in prison.   A11-16, Judgment.

## **SUMMARY OF ARGUMENT**

The district court properly admitted as background evidence under Rule 404(b) that Steiner was arrested on an outstanding warrant for failing to appear for a preliminary hearing.   As this Court held in <u>Green</u>, evidence that fills in gaps in the government's story, or gives context to the investigation or the crime serves a proper purpose under Rule 404(b).   617 F.3d at 247.   The district court found that the evidence explained why the police arrested Steiner, and noted that the risk of prejudice was minimized so long as the facts underlying the warrant were kept from the jury.   This ruling was not arbitrary or irrational, and thus constituted an appropriate exercise of the district court's discretion under Rule 404(b).

For the first time on appeal, Steiner argues that his indictment was duplicitous, because the different types of ammunition found in his basement were not "simultaneously possessed" and thus should have been charged in separate counts.   He asserts that the district court erred by not instructing the jury to unanimously agree on the type of ammunition possessed at Count Two to remedy this previously unidentified defect.   This argument is meritless; no evidence suggested that Steiner possessed or acquired the ammunition—all found in his basement—at different times or for different purposes.   Furthermore, a unanimity instruction was not required based on the elements vs. means theory advanced by Steiner at trial.

Finally, this Court should reject Steiner's request that it accept this case for en banc review of its standard for assessing due process claims of pre-indictment delay. To prevail on a motion to dismiss for pre-indictment delay, a defendant must show both that the government acted in bad faith, deliberating delaying indictment to gain a tactical advantage or harass him, and that the delay actually prejudiced him in a concrete way.   Steiner admits that he cannot show bad faith, and requests that this Court reexamine that standard because it is so difficult to meet.   But the Supreme Court has acknowledged that successful due process challenges based on pre-indictment delay will be few and far between; the primary protection for defendants against delayed charges is the statute of limitations.   Moreover, Steiner's failure to adequately allege actual prejudice is equally fatal to his claim.

## **ARGUMENT**

I. **The District Court Properly Exercised Its Discretion in Admitting Evidence That Steiner Was Arrested On An Outstanding Warrant Under Rule 404(b).**

The record shows that evidence of the outstanding warrant for Steiner's arrest was properly admitted under Federal Rule of Evidence 404(b), not as "intrinsic" evidence exempt from the requirements of that rule. The government identified a proper purpose for the evidence: it was necessary to complete the story of Steiner's arrest, interrogation, and the police investigation of the crimes charged. The district court admitted the evidence only after acknowledging its relevancy and reasoning that any risk of prejudice was minimized by the limited nature of the evidence. This ruling was not arbitrary or irrational, and therefore was not an abuse of discretion.

### A. **The District Court Admitted the Warrant Evidence Under Rule 404(b), Not As Intrinsic Evidence.**

Steiner argues that the district court's basis for admitting the warrant evidence was unclear, because the government argued that it was admissible both as intrinsic evidence and under Rule 404(b). On the contrary, the record shows that the district court admitted the evidence under Rule 404(b). At the pretrial conference, the district court performed a Rule 404(b) analysis by considering the purposes proffered by the government. A118-19. It accepted background as a proper purpose but found that the warrant evidence was not probative of motive. Id.

Next, the district court weighed the risk of unfair prejudice against the legitimate probative value of the evidence, holding that prejudice would be "minimized" so long as the government did not introduce evidence of the underlying charges. A119.  In its minute entry summarizing the pretrial conference, the district court explicitly cited Rule 404(b): "[w]ith respect to the government's motion in limine on 404(b) evidence [Doc. No. 99], the government may, as background, refer to the fact that defendant was arrested on an outstanding warrant, but may not address the specifics of the warrant or underlying charge."   A28, Docket.

The government's characterization of the warrant evidence as "intrinsic" once each in its Rule 404(b) notice, A101, accompanying brief, A103, and oral argument at the pretrial hearing, A116, does not indicate otherwise.   The lion's share of the government's written and oral arguments were devoted to explaining why the evidence was admissible as background and motive and intent evidence under Rule 404(b).  <u>See</u> A104-08, Government's Motion in Limine and Brief Regarding Rules 404(b) and 609 Evidence; A116-18, pretrial hearing Tr.   Steiner's only substantive argument against admission was to attempt to distinguish the motive purpose proffered by the government from the motive evidence in <u>Green</u>, which was admitted under Rule 404(b), not as intrinsic evidence.   A117; <u>Green</u>, 617 F.3d at 249.  On appeal, the government agrees with Steiner that the evidence was not

"intrinsic" as that concept is defined by this Court in <u>Green</u>, 617 F.3d 233, and does not advance that as an alternative ground for affirmance.[4]

Finally, the absence of a limiting instruction does not suggest that the district court admitted the warrant evidence as intrinsic evidence exempt from the requirements of Rule 404(b).   A Rule 404(b) limiting instruction is required only "where requested."   <u>Green</u>, 617 F.3d at 249; <u>accord</u> <u>Huddleston v. United States</u>, 485 U.S. 681, 691-92 (1988) (protection available "from Federal Rule of Evidence 105, which provides that the trial court shall, **upon request**, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.") (emphasis added); <u>see also</u> <u>Albrecht v. Horn</u>, 485 F.3d 103, 127 (3d Cir. 2007) (recognizing that a defendant might not want a limiting instruction in certain cases where "such an instruction might inadvertently call attention to the evidence of prior bad acts.").   No limiting instruction was requested in this case.

### B.    The District Court Properly Admitted the Warrant Evidence Under Rule 404(b).

Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."   Fed. R.

---

[4]In this Circuit, "intrinsic" evidence is narrowly defined as that which directly proves or facilitated the charged crime.   <u>Green</u>, 617 F.3d at 248.   All other bad-act evidence is subject to a Rule 404(b) analysis.   <u>Id.</u> at 249.

Evid. 404(b)(1).   It does allow for admission of such evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."   Fed. R. Evid. 404(b)(2).

A four-part test governs the admissibility of other-acts evidence under Rule 404(b).   Such evidence must: (1) have a proper purpose; (2) be relevant; (3) satisfy the requirement under Rule 403 that its probative value outweigh the risk of unfair prejudice; and (4) be accompanied by a limiting instruction where requested. Green, 617 F.3d at 249.   "All this really means is that such evidence must have a nonpropensity purpose and satisfy the same relevancy requirements as any other evidence."   United States v. Davis, 726 F.3d 434, 441 (3d Cir. 2013).

This Court recently described Rule 404(b) as "a rule of general exclusion," explaining that this means that other-act evidence is not **presumptively** admissible; it must serve a proper purpose.   United States v. Caldwell, 760 F.3d 267, 276 (3d Cir. 2014).   This pronouncement does not change this Court's position that the government's burden in establishing a proper purpose is "not onerous," United States v. Sampson, 980 F.2d 883, 888 (3d Cir. 1992), nor is it contrary to the Supreme Court's reflection that "Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence."   Huddleston, 485 U.S. at 689.

### 1.    "Completing the Story" Is a Proper Purpose Under Rule 404(b).

"A proper purpose is one that is 'probative of a material issue other than character.'"    <u>Green</u>, 617 F.3d at 250 (quoting <u>Huddleston</u>, 485 U.S. at 686). "[A]llowing the jury to understand the circumstances surrounding the charged crime—completing the story—is a proper, non-propensity purpose under Rule 404(b)."    <u>Green</u>, 617 F.3d at 247.

In <u>Green</u>, this Court addressed the admissibility of evidence of a defendant's bad act that is not part of the crime charged but nevertheless "pertains to the chain of events explaining the context of the crime; or is linked in time and circumstances with the charged crime; or forms an integral and natural part of an account of the crime, or completes the story of the crime for the jury."    <u>Green</u>, 617 F.3d at 245 (internal quotations, alterations omitted).    Diverging from some other circuits, it held that this "background" or "completing the story" evidence is not automatically admissible intrinsic evidence but constitutes ordinary other act evidence subject to Rule 404(b).    <u>Id.</u> at 248-49.    <u>Green</u> predicted that "most, if not all, other crimes evidence [then] currently outside the framework of Rule 404(b) as 'background' evidence will remain admissible under" Rule 404(b).    <u>Id.</u> at 249.

<u>Echeverri</u>'s much earlier criticism of the "background" label was expressly aimed at situations in which such a denomination was "uninformative" and served as an "unacceptable substitute for the analysis required by Rule 404(b)."    <u>United</u>

States v. Echeverri, 854 F.2d 638, 644 (3d Cir. 1988).   But here, the "background" description was elaborated upon by the district court when it rendered its decision. Evidence of the warrant filled in gaps in the story of the investigation and arrest of Steiner for the charged crime: "it does explain why the police are there and . . . why they were arresting him."   A118.   And it was not used as a "substitute" for Rule 404(b) analysis; rather, it was integrated into the first step of that analysis.

The district court found that the warrant explained why the officers arrested Steiner.   A118.   This is a sufficient background purpose, without which the government could not have explained how and why it arranged for Stants to drive Steiner to the gas station, giving Trooper Baumgard an opportunity to search the camper, or why officers arrested Steiner on August 27, 2007.   Indeed, Steiner's counsel agreed that without the warrant, "there wouldn't be a reason for them to arrest Mr. Steiner . . . ."   A117.   Furthermore, Trooper Motte told the jury about Steiner's statements about where he was staying, what type of cigarettes he smoked, and other details made during the course of an interrogation in police barracks, and could not have explained the circumstances of this interrogation without reference to the arrest and warrant.

The government filed a Rule 404(b) notice of its intent to introduce evidence that Steiner was arrested on an outstanding warrant issued in a separate matter. A101-02, Rule 404(b) Notice; A103-18, Brief Regarding Rule 404(b).   In briefing

and at the pretrial conference, the government argued that evidence of the outstanding warrant completed the story of Steiner's arrest, "a proper, non-propensity purpose under 404(b)." A116, 197-08. It also argued that the warrant, and Steiner's alleged plan to elude law enforcement, supplied a motive and explained his intent for having the shotgun, which are additional Rule 404(b) purposes. A107-08, 116-17. Although the district court did not accept the proffered purpose of motive, it did correctly identify background as a proper purpose under Rule 404(b). A118.

### 2. The District Court Performed a Rule 403 Analysis Which Was Not Arbitrary, Fanciful, or Clearly Unreasonable.

As with all evidence, district courts must evaluate other-act evidence in light of Rule 403, weighing its probative value against the risk of unfair prejudice. Caldwell, 760 F.3d at 277. The district court exercises "broad discretion" in determining whether the probative value of evidence outweighs the risk of prejudice in admitting it, Sampson, 980 F.2d at 889, and its decision must be upheld unless it was arbitrary or irrational. Green, 617 F.3d at 239, 251-52.

The district court considered the probative value and the risk of unfair prejudice as required under Rule 403. It decided that "[a]t this time, as long as we don't go into what the outstanding warrant is for, I think it does explain why the police are there and . . . why they were arresting him." A118. Then, considering the risk of unfair prejudice, the district court reasoned that "as long as we don't talk

about the underlying offense, the prejudice is minimized." A119. That the court did not invoke the magic words, "Rule 403 balancing test" does not mean that it did not discharge its duty under Rule 404(b).

The district court's Rule 403 analysis did not constitute an abuse of discretion. As the government pointed out in its brief, "the jury will already know that the defendant is a felon pursuant to a stipulation of counsel." A108. Furthermore, the government did not seek to introduce evidence of the nature of the charges (child molestation) or Steiner's serious criminal history, factors that increased the potential for a substantial sentence and thus Steiner's motive to evade arrest, one of the government's Rule 404(b) theories. A108; PSR ¶ 40 (describing the circumstances of Steiner's 2008 conviction for corruption of minors, indecent assault without consent, and indecent assault of a person less than 16 years old).

**C.    Any Error in Admitting the Evidence Is Harmless and Any Procedural Error in the District Court's Rule 403 Analysis Is Not Plain.**

The admission of evidence under Rule 404(b) is reviewed for harmless error, which the government bears the burden to establish. Non-constitutional error is harmless when "it is highly probable that the error did not affect the result," and the court is left with a "sure conviction" that the error did not contribute to the judgment. Caldwell, 760 F.3d at 285 (internal quotation omitted). The government need not

"disprov[e] every reasonable possibility of prejudice" in order to establish harmlessness. United States v. Asher, 854 F.2d 1483, 1500 (3d Cir. 1988).

Steiner's contention that an evidentiary error cannot be harmless when the proof depends on "witness credibility" is not an accurate characterization of this Court's precedent. Witness credibility is always a determining factor when a conviction is based on witness testimony, and this Court has repeatedly held error harmless based on witness testimony. See Asher, 854 F.2d at 1500; United States v. Emanuele, 51 F.3d 1123, 1132 (3d Cir. 1995); United States v. Shavers, 693 F.3d 363, 389 (3d Cir. 2012), cert. granted, judgment vacated on other grounds, 133 S. Ct. 2877 (2013). Here, two police officers testified that they found ammunition in Steiner's home, among Steiner's personal affects. A281-90. Neither Stants nor Williams testified about the ammunition, and Greta Steiner admitted that she was not present in the home on the day of the search. A383. Steiner admitted that 901 Meadow Avenue was his home, although he denied that he knew that the ammunition was there. A442.

Furthermore, to the extent that this Court finds error at step one of the Rule 404(b) analysis—the proper purpose—any error is harmless because evidence of the warrant was also admissible to establish Steiner's motive to possess the firearm. As became clear at trial, there was a basis for concluding that the reason Steiner had an anti-personnel weapon was to use it against law enforcement if they tried to arrest

him; Stants and Williams testified that Steiner called the gun a "cop killer" and said that he "wouldn't go easy," and planned to flee to Texas after missing his hearing. The fact that the jury ultimately did not credit the witness's testimony that Steiner had the gun does not eliminate motive as a proper purpose, as Rule 404(b) analyses naturally must be performed before a verdict is rendered.

Finally, any alleged inadequacy in the district court's articulation of the Rule 403 balancing test should be reviewed for plain error. This Court has held that failure to conduct the Rule 403 balancing test on the record is error under Rule 404(b). See Sampson, 980 F.2d at 889. Although the government believes that the district court did adequately articulate its weighing of the probative value against the risk of prejudice, to the extent that this Court finds that it did not, Steiner should have objected at trial to preserve the issue for appeal. See Fed. R. Crim. P. 52; Puckett, 556 U.S. at 135.

An analogous situation is found in the sentencing context. In Flores-Mejia, this Court held that a defendant must object to the adequacy of the form of a district court's review of his arguments after sentence is pronounced to preserve the issue for appeal. Flores-Mejia, 759 F.3d at 256. Three factors which also apply here were especially important to that decision. First, the error at issue is procedural in nature; it has to do with the form of the court's explanation. Id. at 256-57. Second, in both situations, the preservation requirement preserves juidical efficiency;

"[o]bjecting [contemporaneously] permits the quick resolution of such errors." Id. at 257. Even among the highly skilled federal judiciary, "'errors are a constant in the trial process,' and when a defendant contemporaneously objects, the district court 'can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome.'" Id. (quoting Puckett, 556 U.S. at 134). The third, related consideration set forth in Flores-Mejia is that "requiring that the procedural objection be made at the time of sentencing prevents 'sandbagging' of the court by a defendant who remains silent about his objection to the explanation of the sentence, only to belatedly raise the error on appeal if the case does not conclude in his favor." Id. For purposes of issue preservation, the requirement that a district court perform a Rule 403 balancing test is analogous to the obligation to consider a defendant's sentencing arguments on the record. Allegations of error should be reviewed under Rule 52 unless the defendant properly objected to the adequacy of the district court's explanation.

A defendant bears the burden to establish plain error. United States v. Olano, 507 U.S. 725, 734-35 (1993). Relief is available only if: (1) there was an error, (2) the error was "clear or obvious," and (3) the error "affected the appellant's substantial rights." Puckett, 556 U.S. at 135. If each of those three prongs is satisfied, this Court has "the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity, or public

reputation of judicial proceedings." Id. (alteration in original) (quotation marks omitted).

Here, any risk of prejudice was greatly diminished in light of the fact that the jury already knew that Steiner had been convicted of a felony, and that Steiner had been convicted of theft involving writing checks on somebody else's account.[5] A455. Cf. United States v. Johnson, 302 F.3d 139, 152 (3d Cir. 2002) ("At the same time, the risk of unfair prejudice was relatively slim, as the jury already knew that there was an outstanding warrant for Johnson's arrest when he was taken into custody."); United States v. Torres, 251 F. App'x 763, 765 (3d Cir. 2007) ("[T]he crimes did not differ so greatly in nature that one was more likely to arouse hostility than another."). Furthermore, there was no indication that the Steiner committed a dangerous or serious crime (which he in fact had), or that he was convicted (which he in fact was). See PSR ¶ 40.

---

[5]The government asked about this conviction after Steiner testified that he had never written a check in his life. A451-55.

**II.    The District Court Correctly Instructed The Jury That It Need Not Unanimously Agree As to the Type of Ammunition Possessed.**

On appeal, Steiner argues for the first time that Count Two of his indictment was duplicitous, and that the different types of ammunition found in his basement should have been charged in separate counts.   He argues that the district court erred by not correcting this defect by means of a unanimity instruction.[6]   This argument

---

[6] The district court instructed the jury regarding unanimity as follows:

> Although all jurors must agree with respect to Count 1 that the Defendant possessed a firearm or ammunition and with respect to Count 2 that the Defendant possessed different ammunition, you need not all agree on the exact item possessed.   For example, if a Defendant was charged with possessing one piece of ammunition found in the bedroom, one piece of ammunition found in the living room, and one piece of ammunition found in the basement, you must all unanimously agree that the Defendant possessed at least one piece of ammunition in order to convict.   You do not have to agree on which one or if he possessed more than one.

> Therefore, it would be sufficient if ten jurors determined that he possessed one piece of ammunition in the bedroom, one juror determined that he possessed one piece of ammunition found in the basement, and one juror determined that he possessed them all.   In other words, if the Defendant is alleged to have been in possession of ammunition of different varieties or from different locations, you must all find that as to the ammunition charged in each count he possessed at least some ammunition as charged in that count in order to convict, but not all—but need not all agree with respect to a count

fails because the ammunition was possessed simultaneously and thus correctly charged in a single count. In a related analysis, the argument for a juror unanimity instruction that Steiner advanced before the district court is likewise meritless; under Richardson v. United States, 526 U.S. 813 (1999), individual firearms or ammunition are means, not elements, of a violation of 18 U.S.C. § 922(g).

### A. Count Two Correctly Charged a Single Instance of Possession of Ammunition.

An indictment is duplicitous when it charges several offenses in a single count of an indictment. United States v. Root, 585 F.3d 145, 150 (3d Cir. 2009). In assessing a duplicity argument, courts must ask what the appropriate unit of prosecution is for a certain statute. A "unit of prosecution" is "a distinguishable discrete act that is a separate violation of the statute." Sanabria v. United States, 437 U.S. 54, 70 n.24 (1978).

In Ball v. United States, 349 U.S. 81 (1955), the Supreme Court considered the unit of prosecution for the Mann Act, which used similar wording ("any woman or girl") as § 922(g) ("any firearm or ammunition."). Under the Mann Act, the unit of prosecution was the instance of exploitation, not the individual women who were

---

on exactly which ammunition was actually possessed as charged in that count.

A487-88.

exploited.  Ball, 349 U.S. at 82.  Thus, the unlawful transportation of several women at the same time would constitute one offense.  This conclusion was based on the principle that "if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses . . . ."  Id. at 84.

Applying this reasoning to the felon-in-possession statute, this Court has consistently held that the unit of prosecution is the instance of possession, regardless of the number or type of firearms or ammunition possessed.  First, in Marino and Frankenberry, this Court held that the simultaneous possession or receipt of several firearms by a convicted felon constituted a single offense under the predecessor statutes to § 922(g).[7]  United States v. Marino, 682 F.2d 449, 454 (3d Cir. 1982) (analyzing 18 U.S.C. § 1202(a)); United States v. Frankenberry, 696 F.2d 239 (3d Cir. 1982) (analyzing 18 U.S.C. § 922(h)).  In joining all other Circuits that had considered this question, this Court focused on the statute's use of the phrase "'any

---

[7]The felon-in-possession statute as we know it was codified at 18 U.S.C. § 922(g) in 1986, and is an amalgam of former statutes 18 U.S.C. § 1202(a)(1), which set forth penalties for a convicted felon who "receives, possesses, or transports in commerce or affecting commerce . . . any firearm," 18 U.S.C. § 1202 (1977), and § 922(h), which made it illegal for felons to ship or transport firearms in interstate or foreign commerce, or to receive a firearm that had been shipped or transported in interstate or foreign commerce.  18 U.S.C. § 922(h) (1982); see also United States v. Tann, 577 F.3d 533, 536-37 (3d Cir. 2009); United States v. Verrecchia, 196 F.3d 294, 300 (1st Cir. 1999) (citing Pub. L. No. 90-351, 82 Stat. 197 (1968); Pub. L. No. 90-618, 82 Stat. 1213 (1968); Pub. L. 99-308, § 104(b), 100 Stat. 449, 459 (1986)).

firearm,' rather than . . . 'a firearm,'" which it analogized to "any girl or woman," in Ball.  Marino, 682 F.2d at 454.

The current version of the felon-in-possession statute, 18 U.S.C. § 922(g), yields the same result.  "[T]he allowable unit of prosecution under § 922(g) is the incident of possession, regardless of whether a defendant possessed more than one firearm, or possessed a firearm and ammunition."  Tann, 577 F.3d at 537.  In Tann, the indictment charged two separate violations based on possession of a gun found in the bathroom where the defendant was arrested and the ammunition[8] in the defendant's pocket.  Id. at 535.  Because the firearm and ammunition were simultaneously possessed, however, his two separate convictions were multiplicitous.  Id. at 538.  In so holding, this Court "join[ed] all of our sister courts of appeals that have addressed this issue and are in agreement . . . ."  Id. at 537.

---

[8]As Tann demonstrates, ammunition and firearms are treated identically under the § 922(g) statute, which criminalizes possession, receipt, or transportation of "any firearm or ammunition."  See also United States v. Hall, 77 F.3d 398, 402 (11th Cir. 1996) ("Substantial precedent from other circuits supports the view that the simultaneous possession of a firearm and ammunition should be punished as one offense."); United States v. Dunford, 148 F.3d 385, 390 (4th Cir. 1998) ("Dunford's possession of the six firearms and ammunition, seized at the same time from his house, supports only one conviction of 18 U.S.C. § 922(g)."); United States v. Keen, 104 F.3d 1111 (1996) (simultaneous possession of firearm and ammunition must be charged as a single violation of § 922(g)); United States v. Berry, 977 F.2d 915, 919 (5th Cir. 1992) ("[W]e cannot conclude that Congress intended the simultaneous possession of ammunition to stand as a distinct unit of prosecution.").

Tann was followed up by Kennedy, a procedurally unusual case in which this Court held that two § 922(g) charges for different firearms were not multiplicitous. United States v. Kennedy, 682 F.3d 244 (3d Cir. 2012).    In Kennedy, the district court, which displayed such a bias in favor of the defendant that this Court eventually reassigned the case and all related matters, had vacated some of the defendant's convictions on drugs and firearms charges following his jury trial.    682 F.3d at 260, 246.    This Court reversed, remanding for sentencing only.    Id. at 246. On remand, the district court raised the issue of multiplicity sua sponte, and merged the two felon-in possession charges as well as the two separate drug trafficking charges, reasoning that the defendant committed only one firearm and one drug offense because he stored his two sets of guns and drugs in different cars which were usually parked at the same property.    Id. at 246, 255.    It justified merging the gun charges on the basis that the two handguns "'were within eyeshot of one another'" and seized by the same group of police.    Id. at 255.

This Court reversed, holding that mere physical proximity did not show simultaneous possession.    Id. at 256.    The two guns were stored in separate vehicles, "in secret compartments that contained heroin branded with different stamps, suggesting different distributors."    Id.    Indeed, "the stash of heroin in the Lincoln and the stash of heroin in the Cadillac had different compositions and purities and bore different brand stamps.    The quantities and means of packaging,

too, were also distinct . . . ." <u>Id.</u> at 257.  Furthermore, while under police surveillance, Kennedy had driven one gun "some distance" away from the other. <u>Id.</u> at 256.   This evidence suggested that Kennedy possessed the two different guns at different times and in connection with different crimes, and was insufficient to support the district court's extra-jurisdictional finding of multiplicity.   <u>Id.</u> at 256.

Absent the type of material facts that distinguished instances of possession in <u>Kennedy</u>, possession is simultaneous where firearms and ammunition are in the same house, even where they were not stored in the exact same spot.   <u>See, e.g.,</u> <u>Dunford</u>, 148 F.3d at 387-90 (Dunford simultaneously possessed guns scattered throughout his house: five were between the mattress and box spring in his son's bedroom, another rifle was between the mattress and box spring of a bed used by Dunford's daughter, and finally, five rounds of ammunition were in a bowl on the dresser in Dunford's own bedroom).

In this case, Count Two charged Steiner with possession of four types of ammunition:  "12 gauge Winchester ammunition, .32 caliber Winchester ammunition, .38 Special caliber Winchester ammunition, and 12 gauge Federal ammunition."   A45-46.   Although Trooper Motte sometimes called the basement "the downstairs," it is clear from his testimony that all four types of ammunition were found in the basement of Steiner's house.   <u>See</u> A283-84 (Federal high-powered 12-gauge shotgun shell found in a cup of the pool table "in the

downstairs basement"); A282, 285 (Winchester shotgun shells were found "in the downstairs, in the basement area"); 284-85 (handgun ammunition found in the basement); <u>see also</u> A293 (on cross-examination, distinguishing between the downstairs/basement floor and the upper floor).

Greta Steiner's testimony does not create a factual basis for finding duplicity. She testified that she had stored boxes of her previous husband's belongings, including "old boxes of ammunition," in the garage of 901 Meadow Avenue. A380. But she also testified that that ammunition had never been brought into the house. A381. Even accepting her boxes as the source of the ammunition in Steiner's house, an inference that the record does not support, Steiner himself would have acquired the ammunition from a single source or transaction and at the same time; there is simply no basis in the record for concluding that Steiner possessed the ammunition found in the basement of 901 Meadow Avenue at different times or for different purposes.

The cases relied upon by Steiner in support of his duplicity argument are distinguishable. Unlike in <u>Kennedy</u>, here there was no evidence that Steiner stored separate ammunition in secret compartments of different vehicles, under circumstances suggesting that it was used in different drug transactions. In <u>Verrecchia</u>, as in <u>Kennedy</u>, the guns charged in separate count of the indictment were used in a different transactions. <u>Verrecchia</u>, 196 F.3d 294. After agreeing to

sell two guns to an undercover agent, Verrecchia drove to a barn, retrieved the two guns, and displayed them to the agent in a box in the vehicle.  Id. at 296.  Once arrested, he admitted to keeping a crate with twenty-one additional firearms in the barn.  Id.  The government charged him with two counts of being a felon in possession of a firearm: one count based on the two guns "that he had transported in his truck and attempted to sell to the undercover agent"; and the second based on those in the barn.  Id.  On appeal, Verrecchia argued that the indictment should have charged each firearm in a separate count, and that it was duplicitous for grouping the guns into two counts.[9]

In this case, the ammunition was in one house, all on the basement level.  The record does not indicate that the ammunition was stored in separate containers; shotgun ammunition was messily left in a bowl and pocket of the pool table. A572-73, Photographs.  There were no facts presented by either side to indicate that the ammunition was acquired at different times or for different purposes, transported to separate locations at various times, or other facts that would otherwise tend to disprove simultaneous possession.  In fact, had the government charged the

---

[9]Notably, because Verrecchia challenged the indictment on duplicity grounds rather than multiplicity grounds, arguing that each firearm should have been charged separately, the First Circuit did not have reason to decide whether two separate charges, as opposed to one charge, were appropriate, nor did it state the distance between the truck and the barn.

ammunition separately, the indictment would have been multiplicitous.    Berry, 977

F.2d at 919-20 (separate § 922(g) charges for simultaneous possession of two

firearms were multiplicitous); Hall, 77 F.3d at 402; United States v. Cunningham,

145 F.3d 1385, 1398 (D.C. Cir. 1998) ("When a felon possesses multiple weapons,

only one offense is committed, unless the weapons are stored or acquired at different

times or places.").

> ### B.    The Particular Ammunition Possessed Is a Means, Not an Element, of § 922(g), and Thus Does Not Require Juror Unanimity.

Steiner does not appear to argue on appeal that unanimity was required

because the particular ammunition is an element of § 922(g).    However, this was

the basis for his objections in district court.    A96-97, Response to Government's

Supplemental Proposed Jury Instruction (arguing that a unanimity instruction was

required because this Court has not addressed the question of whether the jury must

be unanimous as to the particular ammunition possessed, as decided in United States

v. Talbert, 501 F.3d at 449; A125, Pretrial Conference Transcript (citing Richardson

and a Third Circuit case dealing with the question of elements posed by Richardson

in support of unanimity instruction).    Given the close connection between the

"elements vs. means" distinction relied upon by Steiner in the district court and the

duplicity analysis, the fact that this Court has not yet decided whether a particular

firearm or ammunition is an element of § 922(g), and Steiner's general argument

that a unanimity instruction was required, the government addresses the issue here out of an abundance of caution.

The Sixth Amendment guarantees the right to a unanimous verdict, but jurors need not agree on the "underlying brute facts mak[ing] up a particular element . . . ." Richardson, 526 U.S. at 817. It is "well-settled" that the right to a unanimous verdict "does not mean that one has a right to insist on an instruction requiring unanimous agreement on the means by which each element is satisfied." United States v. Yeaman, 194 F.3d 442 (3d Cir. 1999) (emphasis in original). In Richardson, the Supreme Court distinguished these "underlying brute facts," or means of committing a crime, from particular facts on which the jury must agree, or elements. Richardson described a hypothetical robbery statute by way of example: use of force is the element, but how the defendant used force is merely a means, so some jurors may find that the defendant used a knife, and others a gun, so long as they unanimously agree that force was used. Id. at 817.

Discerning elements from means is a question of legislative intent, bounded by the requirements of due process that a statute give notice and be fair. Schad v. Arizona, 501 U.S. 624, 632, 636 (1991) (plurality opinion). In assessing legislative intent, a court's analysis should focus on three considerations: "language, tradition, and potential unfairness." Richardson, 526 U.S. at 820. In the case of § 922(g), all three factors militate in favor of holding that a jury must unanimously find that the

element "any ammunition" is met, but need not agree on the particular ammunition possessed.

With respect to the first consideration, statutory language, the felon-in-possession statute plainly criminalizes the possession of "any firearm or ammunition."   18 U.S.C. § 922(g).   This indicates that the "element," as that term is used in <u>Richardson</u>, is the possession of some firearm or ammunition, and that the particular item possessed is merely an "underlying brute fact[]."   <u>Richardson</u>, 526 U.S. at 817.   Accordingly, "jurors who agreed that a defendant possessed a firearm, but disagreed about which particular one, would be unanimous on the element-that he possessed 'any firearm.'"   <u>Verrecchia</u>, 196 F.3d at 299.

Context confirms this reading.   The definition of firearm is broad and general, and includes "(A) any weapon (including a starter gun) which will . . . expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." § 921(a)(3).   In contrast, the lengthy descriptions of prohibited persons set forth in §§ 922(g)(2)-(9) and 921(a)(20) are "specific" and "technical."   <u>Verrecchia</u>, 196 F.3d at 299.   A reading of the statute as a whole shows "that Congress's focus was on the felon and not on the nature or number of firearms possessed," <u>id.</u>:

> It shall be unlawful for any person - (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; (2) who is a fugitive from justice; (3) who is an unlawful user of or

addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)); (4) who has been adjudicated as a mental defective or who has been committed to a mental institution; (5) who, being an alien - (A) is illegally or unlawfully in the United States; or (B) except as provided in subsection (y)(2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(26))); (6) who has been discharged from the Armed Forces under dishonorable conditions; (7) who, having been a citizen of the United States, has renounced his citizenship; (8) who is subject to a court order that - (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate; (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; or (9) who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g).

Similarly, the punishment provisions focus on the characteristics of the defendant, rather than the type or number of firearms possessed. Verrecchia, 196 F.3d at 299-300. For example, 18 U.S.C. § 924(e) prescribes a fifteen-year

mandatory minimum if a defendant had sustained three convictions for violent felonies or serious drug offenses prior to violating § 922(g).

The second Richardson factor, tradition, also supports the conclusion that the element is "any firearm." A review of the legislative history confirms that Congress was "focuse[d] on the person, not the firearm." Verrecchia, 196 F.3d at 300. Indeed, Congress used the same formulation in § 922(g)—"any firearm"—as in prior versions at 18 U.S.C. §§ 1202(a) and 922(h). As discussed above, those statutes were uniformly interpreted to define the unit of prosecution as the instance or transaction of possession, rather than a particular firearm. Marino, 682 F.2d at 454; Frankenberry, 696 F.2d 239.

Finally, the third Richardson factor, potential unfairness, is not implicated by the government's reading of § 922(g). In Richardson, the Supreme Court held that a unanimity instruction was required under the continuing criminal enterprise statute because each underlying violation forming "a continuing series of violations" was a separate element of the crime. 526 U.S. at 824. The Supreme Court emphasized the that the CCE statute's breadth—"cover[ing] many different kinds of behavior of varying degrees of seriousness"—contributed to a risk of unfairness if unanimity was not required. 526 U.S. at 819. The wide variety of drug crimes that can constitute "violations" increases the risk that a verdict might "cover up wide disagreement among the jurors about just what the defendant did, or did not, do."

Id. at 819.   Moreover, the fact that a typical CCE prosecution will involve evidence of many bad acts on the part of the defendant "aggravates the risk . . . that jurors . . . will . . . simply conclude[] from testimony, say, of bad reputation, that where there is smoke there must be fire."   Id. at 819.

While these concerns are "present at least to a small degree whenever multiple means are at issue," id. at 819, any risk of unfairness from treating particular firearms or ammunition as underlying facts rather than elements is negligible. Unlike the separate violations of the criminal law at issue in Richardson, the possession of multiple firearms or pieces of ammunition is a narrower factual finding.   In interpreting a similar statute, the First Circuit held that a jury need not be unanimous as to the particular credit card(s) possessed in finding the defendant guilty of possession of fifteen or more unauthorized access devices.   United States v. Lee, 317 F.3d 26, 40 (1st Cir. 2003). "[N]arrow and specific," the unauthorized access devices possession statute "channels jury deliberation toward a particular set of circumstances."   Lee, 317 F.3d at 38.   Thus, as with the felon-in-possession statute, the jury "is unlikely to convict out of a belief that the defendant was doing some non-specific (but obviously bad) act."   Id. at 38.

Furthermore, unlike violations under the CCE statute, truly distinct instances of possession can and should be divided into separate counts; a § 922(g) defendant has recourse to a duplicity objection that was unavailable in Richardson.   In this

case, for example, Steiner was charged in one count for the gun found in the trailer, and in a separate count for the ammunition in his house. This charging scheme appropriately accounted for separate instances of possession and actually allowed the jury to arrive at different verdicts for each. In the case of a CCE prosecution, on the other hand, the series of violations are properly charged in one count, regardless of whether they can also be charged as separate crimes.

This Court's analysis of the jury unanimity question in examining other statutes further supports the conclusion that the particular firearm or ammunition is not an element of a § 922(g) charge. <u>Yeaman</u>, decided immediately after <u>Richardson</u>, involved a securities fraud conviction under 15 U.S.C. § 77q(a). 194 F.3d at 452-55. This Court held that a jury need not agree about the type of fraud committed by defendant; it need only be unanimous as to the fact that the defendant did any of the following in the course of offering or selling securities: (1) employed any device, scheme, or artifice to defraud; (2) misstated or omitted a material fact; or (3) engaged in fraudulent business practices to defraud the purchaser. <u>Yeaman</u>, 194 F.3d at 452 (quoting § 77q(a)). The Court distinguished this narrow list of means from the "broad range of specified criminal statutes" set forth in the CCE statute. <u>Yeaman</u>, 194 F.3d at 453 ("While each category has its own parameters, they are largely overlapping categories and all fall within the traditional understanding of the concept of fraud.") (internal citation omitted). Similarly, "any firearm and

41

ammunition," in § 922(g) circumscribes the potential facts which might underlie a guilty verdict.

This Court has likewise declined to apply <u>Richardson</u>'s reasoning to jury findings under 18 U.S.C. § 924(c), which sets forth mandatory minimum sentences for various uses of a firearm in connection with drug trafficking offenses.    In <u>Wise</u>, this Court held that a jury need not be unanimous with respect to the particular firearm brandished during a drug trafficking offense under 18 U.S.C. § 924(c)(1)(A).    <u>United States v. Wise</u>, 515 F.3d 207, 214-15 (3d Cir. 2008). Eyewitnesses had testified that each of the two defendants brandished a gun while selling drugs, after which both defendants were arrested in a house with the two guns.    <u>Wise</u>, 515 F.3d at 211-15.    Citing <u>Richardson</u>, this Court held that "[f]urther specificity about the weapons [was] . . . not necessary to sustain a conviction under the statute."    <u>Id.</u> at 214-15.

Starting with the First Circuit in <u>Verrecchia</u>, each court of appeals to have considered the question has held "that Congress did not intend the possession of a particular firearm to be an element of a § 922(g)(1) violation."    <u>Verrecchia</u>, 196 F.3d at 301.    <u>See also</u> <u>United States v. Pollock</u>, 757 F.3d 582, 587 (7th Cir. 2014), <u>cert. denied</u>, 135 S. Ct. 989 (2015) (expressly adopting the reasoning in <u>Verrecchia</u>); <u>United States v. Talbert</u>, 501 F.3d 449, 452 (5th Cir. 2007) (same) ; (<u>United States v. DeJohn</u>, 368 F.3d 533, 540-42 (6th Cir. 2004) (same); <u>see also</u> <u>United States v.</u>

Drayton, 51 F. App'x 95, 98 (4th Cir. 2002) (citing Verrecchia).    This Court should

join its sister circuits.

> ### C.    Steiner Cannot Show Plain Error With Respect to His Duplicity Argument, and Any Richardson Error Was Harmless.

Because Steiner raised duplicity as a ground for error for the first time on

appeal, that argument must be reviewed for plain error pursuant to Fed. R. Crim. P.

52.    That means that he must establish that: (1) there was an error, (2) the error was

"clear or obvious," and (3) the error "affected the appellant's substantial rights."

Puckett, 556 U.S. at 135; accord Olano, 507 U.S. at 734-35.    Even if he satisfies

each of these three prongs, this Court may remedy the error "only if the error

seriously affect[s] the fairness, integrity, or public reputation of judicial

proceedings."    Puckett, 556 U.S. at 135 (alteration in original) (quotation marks

omitted).    To the extent that this Court finds error under Richardson, that error is

reviewed for harmlessness.    See United States v. Bansal, 663 F.3d 634, 648-49 (3d

Cir. 2011).    The government bears the burden in establishing that Constitutional

error was harmless beyond a reasonable doubt.    See Neder v. United States, 527

U.S. 1, 7 (1999).

Steiner has not met his burden to show that duplicitousness resulted in his

conviction at Count Two.    No facts distinguish the different types of ammunition to

suggest that a jury might have acquitted had it been charged in separate counts.    For

this same reason, the government submits that the conviction on Count Two shows

that a jury would have convicted had the ammunition found in Steiner's basement been charged in separate counts.

**III.  This Court Has Correctly Held That Dismissal For Pre-Indictment Delay Based on the Due Process Clause Requires A Showing of Bad Faith On the Part of the Government.**

In order to establish that an indictment filed within the statute of limitations was so delayed that it violated defendant's due process rights, a defendant must establish both that the delay actually prejudiced his case and that the government acted in bad faith by delaying the indictment to gain a tactical advantage or harass the defendant.   Steiner asks this Court to accept this case for en banc review to reconsider the "bad faith" prong.   His argument should be rejected, because the bad faith standard makes sense in light of the realities of the criminal justice system and the protections granted by statutes of limitation.   Regardless, because Steiner failed to adequately allege actual prejudice, his claim would fail no matter what standard was applied in assessing the government's action.

**A.  A Defendant Must Show That The Government Acted In Bad Faith To Prevail On A Due Process Pre-Indictment Delay Claim Because the Constitution Does Not Provide More Protection Than Statutes Of Limitation In the Ordinary Case.**

"The statute of limitations is a defendant's primary guarantee against the prosecution of stale criminal charges."   United States v. Fulford, 825 F.2d 3, 9 (3d Cir. 1987); accord United States v. Lovasco, 431 U.S. 783, 789 (1977) (noting that the "primary guarantee" against excessive pre-indictment delay is afforded by "predictable, legislatively enacted" statues of limitations).   Statutes of limitation are "designed to protect individuals from having to defend themselves against

charges when the basic facts may have become obscured by the passage of time . . . ."  United States v. Marion, 404 U.S. 307, 323 (1971) (internal quotation omitted).

Nevertheless, the Due Process Clause plays a "limited role . . . in protecting against oppressive delay" in the filing of an indictment.  Lovasco, 431 U.S. at 783. Where indicted within the statute of limitations, a defendant alleging a due process claim on charging delay grounds must "show both (1) that the delay between the crime and the federal indictment actually prejudiced his defense; and (2) that the government deliberately delayed bringing the indictment in order to obtain an improper tactical advantage or to harass him."  United States v. Beckett, 208 F.3d 140, 150-51 (3d Cir. 2000); see also United States v. Sebetich, 776 F.2d 412, 430 (3d Cir. 1985).  A defendant advancing a pre-indictment delay claim bears the burden of proving both prongs.  United States v. Ismaili, 828 F.2d 153, 168-69 (3d Cir. 1987); Sebetich, 776 F.2d at 430; United States v. Stewart, 179 F. App'x 814, 816-17 (3d Cir. 2006) (argument that government had not explained more than two-year delay "ignores the requirement that the defendant bears the initial burden of demonstrating intentional delay.").

Prosecutors are not required to indict as soon as they have probable cause or even once they are able to establish a suspect's guilt beyond a reasonable doubt. Lovasco, 431 U.S. at 791.  The Supreme Court has recognized that such a rule "would have a deleterious effect both upon the rights of the accused and upon the

ability of society to protect itself." Id. (internal quotation omitted). Further investigation or deliberation over whether to indict should not be discouraged by penalizing resultant delay. Id. at 792-95. Based on these policy considerations and the contours of due process, deliberate, tactical delay must be affirmatively proven; it cannot be inferred from the mere fact of delay. Id. at 795. Indeed, "the Government face[s] the same risk that its witnesses would die or the memories of its witnesses would fade as a result of the decision [to delay indictment]." United States v. Cannistraro, 800 F. Supp. 30, 57 (D.N.J. 1992); see also Marion, 404 U.S. at 322 ("[D]elay . . . may also weaken the Government's case."). The government's risk is arguably greater, as it bears the burden of proof beyond a reasonable doubt in a criminal case.

The Supreme Court has described the bad faith standard in dicta. United States v. Gouveia, 467 U.S. 180, 192 (1984) ("[T]he Fifth Amendment requires the dismissal of an indictment, even if it is brought within the statute of limitations, if the defendant can prove that the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense."). And this Court has held that prosecutorial inattention or even negligence does not satisfy the bad faith prong for indictment delay claims. Sebetich, 776 F.2d at 429 (bad faith prong not met where "due to confusion as to whether the state or federal government would prosecute the case, . .

47

. it 'just sort of fell between the chairs.'"); <u>Snyder v. Klem</u>, 438 F. App'x 139, 140 (3d Cir. 2011) (no claim where ten-year delay in reopening investigation was "unrelated to the purpose of gaining a tactical advantage and was motivated by prosecutorial balancing of competing interests and limited resources"); <u>United States v. Ladson</u>, 238 F. App'x 874, 876 (3d Cir. 2007) (bad faith prong not met with respect to over three year post-investigation delay where prosecutor "advised the court that he had been first assigned to the case a week before it was indicted, that he had no first-hand knowledge of the history of the case or the reason for the delay, that his understanding was that the people previously assigned to the case did not indict because of other pressing responsibilities, and that the case was reassigned to him in order to secure an indictment before the statute of limitations expired."); <u>United States v. Newmark</u>, No. 06-CR-447, 2007 WL 839077, at *8 (E.D. Pa. Mar. 14, 2007) (while defendant's characterization of government allowing the case to ""'slip through the cracks" for no good reason' may not seem unwarranted, [he] has not established that the Government's delay was intentional or reckless.").

As Steiner acknowledges, most other circuits agree that a defendant seeking dismissal of charges on the basis of a Constitutional claim of pre-indictment delay must establish bad faith.   <u>United States v. Crooks</u>, 766 F.2d 7, 11 (1st Cir. 1985); <u>United States v. Hoo</u>, 825 F.2d 667, 671 (2d Cir. 1987); <u>United States v. Crouch</u>, 84 F.3d 1497, 1511 (5th Cir. 1996); <u>United States v. Brown</u>, 959 F.2d 63, 66 (6th Cir.

1992); United States v. Sowa, 34 F.3d 447, 450 (7th Cir. 1994); United States v. Engstrom, 965 F.2d 836, 839 (10th Cir. 1992); United States v. Hayes, 40 F.3d 362, 365 (11th Cir. 1994).

In reaffirming its bad faith standard, the Fifth Circuit identified two compelling Constitutional concerns.  First, the due process clause has historically applied to deliberate government actions, and is thus "'not implicated by the lack of due care of an official causing unintended injury to life, liberty or property.'" Crouch, 84 F.3d at 1513 (quoting Davidson v. Cannon, 474 U.S. 344, 347 (1986)). Second, holding that the allocation of resources and setting of priorities by a prosecutor's office violates the due process clause implicates separation of powers concerns.  Crouch, 84 F.3d at 1513.

The reason Steiner gives for seeking a change in this Court's standard is that it "imposes a nearly unattainable burden on defendants."  Steiner Br. at 73.  But this is a natural consequence of the extremely "limited role" of the due process clause in regulating pre-indictment delay, and not a reason to expand its reach.  Lovasco, 431 U.S. at 789.  Indeed, the Supreme Court has described the difficulty of establishing a due process violation based on pre-indictment delay without suggesting that the standard be broadened: "so few defendants have established that they were prejudiced by delay that neither this Court nor any lower court has had a sustained

opportunity to consider the constitutional significance of various reasons for delay."

Lovasco, 431 U.S. at 796-97.

### B.    Steiner Cannot Show Actual Prejudice.

In addition to bad faith, a defendant indicted within the statute of limitations period must show actual prejudice with a high degree of specificity.    Mere speculation that the passage of time has caused memories to fade, witnesses to become inaccessible, or evidence to be lost is insufficient to show actual prejudice. Sebetich, 776 F.2d at 430 ("Certainly the contentions that the memories of witnesses faded as a result of the delay falls short of the requisite showing of actual prejudice . . . .").    The statute of limitations, rather than the due process clause, is understood to set forth a charging deadline that strikes the appropriate balance between these general risks and other competing concerns.    Marion, 404 U.S. at 326; Sebetich, 776 F.2d at 430 ("In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment.").

With respect to a deceased witness, even allegations of his or her knowledge of relevant events are insufficient; a defendant must proffer "with the requisite amount of specificity . . . what the unavailable witnesses would have testified to and how their testimony would have been beneficial to his case."    United States v. Stewart, No. CR.A. 02-62-1, 2003 WL 22134841, at *3 (D. Del. Sept. 5, 2003).

50

Allegations that an unavailable witness could have provided an alibi, for example, must be "targeted quite specifically to the time and location of the alleged offense." Sebetich, 776 F.2d at 430. An unavailable witness must have possessed unique knowledge, as the absence of cumulative evidence cannot constitute actual prejudice. Ismaili, 828 F.2d at 168-69 (Because others could testify to similar information, two deceased witnesses "would therefore only be 'additional names on the list of people' defendant would ask to testify.").

Steiner has not established that the delay actually prejudiced his defense. Although the district court did not make a definitive finding that Steiner failed to allege actual prejudice, that issue was heavily briefed and debated at oral argument on the motion. A55-57, Motion to Dismiss; A70, Exhibit to Motion to Dismiss; 86-92, Hearing on Pretrial Motions Tr. The district court expressed "grave reservations with respect to actual prejudice . . ., as already set forth on the record." A92. Steiner's assertions that evidence had become unavailable, for example that the camper was removed from Stants's property and that "investigative leads" were lost, are the type of generalized allegations of prejudice that this Court has deemed insufficient. He has not identified what the unavailable evidence would have shown nor has he alleged that the evidence disappeared in the three-year period of pre-indictment delay, as opposed to the two years during which he filed thirteen

motions for extensions of time to file pretrial motions and two motions to continue his pretrial motion hearing.

Steiner's references to deceased witnesses are also vague and insufficient to establish prejudice.  He asserts that his cousin, Dawn Breckenridge, would have testified that she sold the gun to Stants and that John Butcher would have testified that he witnessed this transaction.  A70.  Steiner did not allege that Breckenridge and Butcher were the only people who could testify to this information.  The fact that Steiner was acquitted on the count alleging possession of a firearm further undermines this argument on appeal; he did not allege that Breckenridge or Butcher had any information about the ammunition for which he was convicted.

This Court should not rewrite the standard for assessing the government's conduct in delaying indictment within the statute of limitations period.  And because Steiner could not show prejudice even if this Court evaluated the government's conduct in delaying indictment by less than a bad faith standard, it need not even reach that question.

## **CONCLUSION**

For all of these reasons, the Court should affirm the judgment of the district court.

Respectfully submitted,

DAVID J. HICKTON
United States Attorney

By:    /s/ Jane Dattilo
Jane Dattilo
Assistant U.S. Attorney

Date:   July 29, 2015

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that I am an Assistant United States Attorney for the Western District of Pennsylvania, that I am filing the attached Brief for Appellee, and:

(1) this brief complies with the length limitations of Fed. R. App. P. 32(a)(7) because this brief contains *11,213* words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and thus does not exceed the 14,000-word limit;

(2) this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because it has been prepared using a Microsoft WORD 2010 word-processing system and it is in a proportionally-spaced typeface, namely Times New Roman, that is at least 14 points; or

(3) the text of the electronic PDF brief is identical to the text of the paper copies of the brief and appendix; and

(4) the electronic PDF brief has been prepared on a computer that is automatically protected by a virus detection program, namely a continuously-updated version of Trend Micro OfficeScan, and no virus was detected.

/s/Jane Dattilo
Jane Dattilo
Assistant U.S. Attorney

Dated:   July 29, 2015

## <u>CERTIFICATION OF FILING AND SERVICE</u>

I hereby certify that on July 29, 2015, I caused the Brief for Appellee to be filed with the Clerk of this Court by (a) electronic filing in the PDF form using the Circuit's electronic filing system, and (b) paper filing of an original and six paper copies using postage-prepaid first-class mail.

I also certify that on July 29, 2015, I caused the Brief to be served:

[X] by the Notice of Docketing Activity generated by the Third Circuit's electronic filing system.

[X] by service of one paper copy by postage-prepaid first-class mail, on:

Renee Pietropaolo, Esquire
Assistant Federal Public Defender
1500 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222

<u>/s/Jane Dattilo</u>
Jane Dattilo
Assistant U.S. Attorney

Dated:   July 29, 2015