IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 14-4628

---

UNITED STATES OF AMERICA,
Appellee

v.

THOMAS DAVID STEINER,
Appellant

---

Appeal from a judgment entered
in the United States District Court for the Western
District of Pennsylvania at No. 2-11-cr-00089-001

---

REPLY BRIEF FOR APPELLANT

---

1500 Liberty Center                    LISA B. FREELAND
1001 Liberty Avenue                    Federal Public Defender
Pittsburgh, PA 15222
(412) 644-6565                         Renee Pietropaolo
                                       Assistant Federal Public Defender
                                       Counsel of Record

                                       Attorneys for Appellant
                                       Thomas David Steiner

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..........................................................................ii

ARGUMENT ............................................................................................ 1

I.    The district court erred by admitting evidence Thomas
      Steiner was "on the run" and arrested on a warrant issued
      for failing to appear at a preliminary hearing on unrelated
      criminal charges as either intrinsic evidence or under Rule
      404(b) when this evidence (A) did not directly prove the
      charged crime of being a felon-in-possession of a shotgun
      that had already been seized or of ammunition seized two
      days later, and (B) did not "complete the story." ............................ 1

II.   Where Mr. Steiner was charged in a single count with
      separate violations of the felon-in-possession statute, the
      court committed reversible error by refusing to instruct
      jurors they must unanimously agree as to which ammunition
      he possessed and by instead affirmatively instructing jurors
      they need not agree, thereby depriving Mr. Steiner of his
      Sixth Amendment and due process rights to a unanimous
      verdict. ........................................................................................  14

CONCLUSION ...................................................................................... 23

CERTIFICATE OF COMPLIANCE .......................................................... 24

CERTIFICATE OF IDENTICAL TEXT .................................................... 24

CERTIFICATE OF VIRUS CHECK.......................................................... 24

CERTIFICATE OF SERVICE.................................................................. 25

# TABLE OF AUTHORITIES

**CASES**:

*Gov't of Virgin Islands v. Davis*, 561 F.3d 159 (3d Cir.2009) ................. 11

*Gov't of Virgin Islands v. Toto*, 529 F.2d 278 (3d Cir.1976) ............. 10,11

*Kotteakos v. United States*, 328 U.S. 750 (1946) .................................... 10

*United States v. Brown*, 765 F.3d 278 (3d Cir.2014) ........................ 6,9,13

*United States v. Caldwell*, 760 F.3d 267 (3d Cir.2014) ................... 3,7,8,9

*United States v. Cunningham*, 694 F.3d 372 (3d Cir.2012) ................... 10

*United States v. Green*, 617 F.3d 233 (3d Cir.2010) ................................. 7

*United States v. Jones*, 484 F.3d 783 (5th Cir.2007) ............................... 8

*United States v. Joseph*, 730 F.3d 336 (3d Cir.2013) ............................. 18

*United States v. Lee*, 612 F.3d 170, 186 (3d Cir.2010) ............................ 7

*United States v. Linares*, 367 F.3d 941 (D.C. Cir.2004) .......................... 8

*United States v. Pietrantonio*, 637 F.3d 865 (8th Cir.2011).................. 15

*United States v. Pinney*, 967 F.2d 912 (3d Cir. 1992) ........................... 10

*United States v. Russell*, 134 F.3d 171 (3d Cir.1998)........................ 19,20

*United States v. Sampson*, 980 F.2d 883 (3d Cir.1992)............... 3,9,10,11

*United States v. Smith*, 725 F.3d 340 (3d Cir. 2013)............................ 7,9

**STATUTE**:

18 U.S.C. § 922(g) ........................................................ 15,16,17,18

**OTHER AUTHORITIES**:

U.S. Const. amend VI ..................................................... 14,20,22

Fed.R.Crim.P. 12 ................................................................ 18,19

Fed.R.Crim.P. 12(b)(3)(C) ....................................................... 19

Fed.R.Evid. 403 .............................................................. 7,8,9,10

Fed.R.Evid. 404(b) ........................................................... passim

# ARGUMENT

I.  **The district court erred by admitting evidence Thomas Steiner was "on the run" and arrested on a warrant issued for failing to appear at a preliminary hearing on unrelated criminal charges as either intrinsic evidence or under Rule 404(b) when this evidence (A) did not directly prove the charged crime of being a felon-in-possession of a shotgun that had already been seized or of ammunition seized two days later, and (B) did not "complete the story."**

The reason police targeted Thomas Steiner for this investigation and for arrest was that long-time police informant, Timmy Stants, accused him of possessing a sawed-off shotgun.

Before trial, the government contended evidence Thomas Steiner had a warrant out for his arrest for failing to appear for an August 27, 2007 preliminary hearing on unrelated criminal charges and testimony "he was on the run from law enforcement at the time, hiding out in this trailer"[1] intending to "evade th[at] warrant and not appear" at the

---

[1] The only evidence Mr. Steiner was "on the run" and hiding out in Stants' camper-trailer came in the form of Timmy Stants' testimony. Mr. Steiner was not "on the run" but had in fact been released from those outstanding criminal charges on recognizance bond. Case 2:11-cr-00089, Document 168, pages 29-30. The government presented testimony that he was not "hiding inside the trailer" during this period, but was working on the campers outside in plain view of passerbys, spent a weekend socializing at a camp ground, and traveled at least to the Meadow Avenue residence and to meet a notary in connection with his sale of that property. App.204,206,250,256,312,318,445.

1

preliminary hearing was admissible as background because "[t]hat's what led officers to him. That's what led officers to his trailer in the first place." App.115. "So in that sense it does complete the story. It is background of what led law enforcement to Mr. Steiner to begin with in this case." App.116. The district court accepted the government's representation and ruled the foregoing evidence was admissible as background, apparently under Rule 404(b), because it "does explain why the police are there and why they were arresting...him." App.118.[2]

The government's assertion that the outstanding arrest warrant for failing to appear at a preliminary hearing on unrelated additional criminal charges is what led "law enforcement to Mr. Steiner to begin with" and "what led officers to his trailer in the first place," is a *misstatement of fact. Assuming arguendo* background could be proper purpose under Rule 404(b) in a simple felon-in-possession prosecution, the proffered evidence was not relevant to that purpose because it did *not* complete the story of the charged felon-in-possession offense.

---

[2] The government now agrees this evidence was *inadmissible* as intrinsic evidence Appellee Brief (AB) 16-17.

Because it did not complete the story, it was inadmissible, and the district court's failure to exclude this evidence constitutes reversible error. *United States v. Caldwell*, 760 F.3d 267, 277 (3d Cir.2014); *United States v. Sampson*, 980 F.2d 883, 888 (3d Cir.1992).

Tellingly, the government offers no defense of the trial AUSA's misstatement of fact and makes no attempt to satisfy its burden of demonstrating the court's erroneous admission of this evidence was harmless. Instead, it spends pages advocating for plain error review of a preserved claim.

**The proffered evidence did not "complete the story."**

The government reiterates that the court admitted the evidence as background and offers a single-sentence assertion that without evidence Mr. Steiner had a warrant out for his arrest for failing to appear at a preliminary hearing on unrelated criminal charges, "the government could not have explained how and why it arranged for Stants to drive Steiner to the gas station, giving Trooper Baumgard an opportunity search the camper, or why officers arrested Steiner on August 27, 2007." AB20.

3

Police became aware Thomas Steiner was purportedly in unlawful possession of a firearm on or about August 20th.

Mr. Steiner was scheduled to appear at a preliminary hearing on unrelated criminal charges some time on August 27th.

On August 26th, before the preliminary hearing and before any arrest warrant issued, Trooper Baumgard met with another officer to orchestrate Mr. Steiner's August 27th arrest.

On the morning of August 27th, before the preliminary hearing was scheduled, Baumgard instructed Stants to drive Mr. Steiner to a gas station miles away, where a team of officers would be waiting to arrest him. App.233-34.

Mr. Steiner, who had been released on those unrelated charges on recognizance bond, believed Timothy Stants was driving him to the preliminary hearing. App.445-46. But Trooper Baumgard denied that the plan was for Stants to pretend to be driving Mr. Steiner to his preliminary hearing:

> [AUSA]    Did you have any information that Mr. Stants was driving Mr. Steiner to his preliminary hearing on the morning of August 27, 2007?

4

[Mr. Baumgard] He was not driving him to the preliminary hearing.

App.255,234. Mr. Stants, too, denied that the "plan" on August 27th was for him "to be driving Mr. Steiner to his preliminary hearing." App.423.

After Stants drove Mr. Steiner away, Baumgard searched the camper and recovered the shotgun. After seizing the shotgun, Baumgard instructed the waiting team to arrest Mr. Steiner - - ostensibly on the warrant for failing to appear at the preliminary hearing.

Baumgard testified that another officer had verified that Mr. Steiner failed to appear at the preliminary hearing and that a warrant had been issued at some point for that failure to appear. App.208,255.

Steiner was arrested without incident and cooperated; he was not in possession of any firearms or ammunition. He was questioned, not about missing the preliminary hearing, but about the shotgun.

Evidence Mr. Steiner was arrested for failing to appear (at most hours earlier) at the preliminary hearing and evidence he was "on the run" from those unrelated criminal charges was not necessary

5

background and does nothing to clarify the jury's understanding of the circumstances of the investigation into his possession of the shotgun that had already seized. And it is plainly irrelevant as background or to complete the story of Mr. Steiner's constructive possession of ammunition that was found two days later during a search of the downstairs area of a house Mr. Steiner owned, which ammunition may have been brought into the house as long ago as 1999. *See United States v. Brown,* 765 F.3d 278, 292-93 (3d Cir.2014) (it is not enough to identify a valid non-propensity purpose; reversing where proffered evidence was not relevant to that purpose).

**The court's error is subject to plenary review.**

Perhaps recognizing the futility of defending the admission of evidence that was inadmissible under Rule 404(b), the government addresses the error under incorrect standards of review. AB2 (advocating abuse of discretion and plain error review).

The question presented is whether this evidence falls within the scope of Rule 404(b). This Court repeatedly affirms that it exercises *plenary* review over "whether evidence falls within the scope of Rule

404(b)." *See, e.g., United States v. Caldwell*, 760 F.3d 267 (3d Cir.2014); *United States v. Smith*, 725 F.3d 340, 344-45 (3d Cir. 2013); *United States v. Green*, 617 F.3d 233, 239 (3d Cir.2010) (explaining, "we normally review evidentiary rulings for abuse of discretion, but we exercise plenary review over 'whether evidence falls within the scope of Rule 404(b).'"); *United States v. Lee*, 612 F.3d 170, 186 (3d Cir.2010).

The government concedes Mr. Steiner preserved this objection. AB2. Nevertheless, it requests, without citing authority, that plain error review be applied when defense counsel does not lodge an additional, independent, objection to what it characterizes as the district court's procedural error in failing to conduct any Rule 403 balancing. AB22. The government's suggestion should be rejected not just because it cannot be reconciled with this Court's authority, but because it is simply irrelevant to any resolution of the issue raised.

When, as here, evidence is not admissible because either the proffered Rule 404(b) purpose was not at issue or the evidence was not probative of the identified purpose, this Court need not undertake *any*

7

balancing as no degree of balancing could make evidence that must be excluded under Rule 404(b) admissible. *Caldwell*, 760 F.3d at 283; *United States v. Linares,* 367 F.3d 941, 952 (D.C. Cir.2004) (after determining prior bad acts evidence was not relevant to a proper Rule 404(b) purpose, court determined there was no need to address the Rule 403 balancing); *United States v. Jones,* 484 F.3d 783, 790 (5th Cir.2007) (same). Thus, the government's focus on the balancing is irrelevant.

Regardless, the government's analysis is also wrong. Bad acts evidence "is *inadmissible unless* the evidence is (1) offered for a proper non-propensity purpose that is at issue in the case; (2) relevant to that identified purpose; (3) sufficiently probative under Rule 403 such that its probative value is not outweighed by any inherent danger of unfair prejudice, and (4) accompanied by a limiting instruction, if requested." *Caldwell*, 760 F.3d at 277-78 (announcing Rule 404(b) is a rule of *exclusion*, and carries with it "no presumption of admissibility"). And it was the government, as the proponent of the evidence, who bore the burden of demonstrating it satisfied Rule 404(b). *See Caldwell*, 760 F.3d at 276, 284 (noting that *it was government counsel* who reminded the

district court of its obligation to provide a Rule 403 balancing); *Brown*, 765 F.3d at 291.

The government did not satisfy its burden, and the district court's error was in failing to exclude evidence under Rule 404(b) that was not offered for a proper non-propensity purpose that was at issue in the case, not relevant to that identified purpose, and whose non-existent probative value was necessarily outweighed by its prejudicial nature.

This Court holds that a district court's failure to engage in a Rule 403 balancing and to articulate on the record a rational explanation "provides an independent ground for reversal." *Caldwell*, 760 F.3d at 284. Thus, when evidence is relevant for a proper non-propensity purpose but the district court's balancing is not apparent from the record, this court reverses. *Caldwell*, 760 F.3d at 283; *Sampson*, 980 F.2d at 889 (reversing because Rule 403 balancing was not apparent from the record); *Smith*, 725 F.3d at 348-49 (same; after calling the evidence "significantly prejudicial," the court merely concluded it was not unfairly prejudicial without addressing diminished probative value of the prior bad

acts evidence); *Sampson*, 980 F.2d at 889 (reversing where court failed to perform balancing); *United States v. Pinney*, 967 F.2d 912, 918 (3d Cir. 1992).

The district court here provided even less of an explanation than that provided, and rejected as inadequate, in *Caldwell*. A "rational explanation" of its Rule 403 balancing cannot be inferred from the district court's bare assertion that "the prejudice is minimized," app.119.

**The introduction of improper 404(b) evidence was not harmless particularly because any finding of guilt was entirely dependent on witness credibility.**

Harmless error analysis focuses on whether the error in question had a substantial effect on the verdict, and not on the distinct question of whether there was sufficient evidence, notwithstanding the error, to support the verdict. This Court is to focus on whether it is "highly probable" that the evidence of the prior conviction[s] contributed to the conviction. *Gov't of Virgin Islands v. Toto*, 529 F.2d 278, 283 (3d Cir.1976). This high probability standard is met only when the court possess a "sure conviction that the error did not prejudice the defendant." *United States v. Cunningham*, 694 F.3d 372, 392 (3d Cir.2012). *Accord Kotteakos v. United States*, 328 U.S. 750, 765 (1946).

Given the nature of the erroneously admitted evidence, the burden it placed on Mr. Steiner's presumption of innocence in the minds of jurors, and the fact that the other evidence of guilt was not overwhelming (the jury found Mr. Steiner *not guilty* of the more serious count of possessing the shotgun), this Court cannot have a sure conviction that the error did not influence the jury. *See Toto*, 529 F.2d at 283 (other crimes evidence undermines presumption of innocence); *Gov't of Virgin Islands v. Davis*, 561 F.3d 159 (3d Cir.2009) (explaining that evidence is not overwhelming where government's case depends on credibility of eyewitnesses).

The government acknowledges that it bears the burden of proving the error was harmless, but makes no attempt to meet that heavy burden. AB22. It simply observes that ammunition was found in the Meadow Avenue residence. AB23.[3]

---

[3] The government also claims the evidence would have been admissible for a different purpose, motive. First, as set forth, this is not the test for assessing harm. Further, the district court explicitly *rejected* motive as a proper purpose, did not conduct any balancing, and did not instruct the jury as to that limited purpose. *See* Opening Brief 22 n.2. This Court may not substitute its own theory as to why the prior convictions may have been admitted under Rule 404(b). *See United States v. Sampson*, 980 F.2d 883, 888 (3d Cir. 1992) ("The district court, if it admits the evidence, must in the first instance, *rather than the appellate court*

The government does not contend, nor could it contend, that the evidence of guilt was otherwise overwhelming.[4] The jury did not credit the testimony of the government's witnesses, including Timmy Stants, the government informant who instigated the entire investigation by claiming to have seen Thomas Steiner holding the shotgun. It found Mr. Steiner *not guilty* of possessing the shotgun that was found in Stants' camper.

From its opening statement, the government assured the jury it would hear evidence that Steiner "was on the run from law enforcement," and that he had a sawed-off shotgun and intended to use

---

*in retrospect,* articulate reasons why the evidence also goes to show something other than character...").

[4] As set forth in the opening brief, five shotgun shells were found sprinkled in the basement; other non-matching ammunition was found in the "basement area." Greta Steiner testified she stored boxes containing old ammunition in the garage back in 1999 and that Mr. Steiner would not have been aware of this ammunition. No evidence was introduced that Thomas Steiner possessed a weapon that could have used the old non-matching ammunition. Nor was any fingerprint or DNA evidence presented connecting him to the shotgun or ammunition.

The defense was that Timmy Stants set up Mr. Steiner and staged both crime scenes, planting the shotgun in the camper and scattering ammunition in the basement area. Mr. Steiner was found not guilty of possessing the shotgun. Evidence was also presented that Mr. Steiner sold or abandoned the Meadow Avenue residence before that ammunition was seized, undermining any constructive possession theory of guilt. App.417-18,312,422.

it when police came to arrest him on an outstanding warrant for failing to appear in court for a preliminary hearing. App.157.

This evidence paints Mr. Steiner as a dangerous criminal who is on the run from *additional* and unidentified criminal charges. That Mr. Steiner would purportedly rather shoot it out with police than answer those charges tells the jury he is a dangerous criminal facing criminal charges so serious that risking death in a shoot-out with police or living out the remainder of his life on the run is preferable. "This necessarily impugns his character and tends to impermissibly sway the balance in the Government's favor." *Brown*, 765 F.3d at 295.

Because this Court cannot have a "sure conviction" this improper 404(b) evidence did not influence the jury - - indeed, the government never attempts to demonstrate it did not influence the jury - -, this Court should vacate the judgment and remand for a new trial.

13

II.   **Where Mr. Steiner was charged in a single count with separate violations of the felon-in-possession statute, the court committed reversible error by refusing to instruct jurors they must unanimously agree as to *which* ammunition he possessed and by instead affirmatively instructing jurors they need *not* agree, thereby depriving Mr. Steiner of his Sixth Amendment and due process rights to a unanimous verdict.**

Mr. Steiner was charged at count two with possessing pieces of ammunition useable in different weapons and found in the "downstairs area" of the Meadow Avenue house, specifically, 12 gauge Winchester ammunition, .32 caliber Winchester ammunition, .38 Special caliber Winchester ammunition, and 12 gauge Federal ammunition. App.45-46. Police testified that one Federal 12-gauge shotgun shell was in a pocket of the pool table, along with potato chip crumbs, and four Winchester 12-gauge shotgun shells were in the "downstairs area," in a bowl. App.193,283-87,572-73. The government does not dispute that the testimony disclosed only that a box of 20 rounds of Winchester .32 caliber ammunition and 17 rounds of .38 Special ammunition were found in the "downstairs area." App.193,285. Nor does it dispute that the only explanation for the presence in the house of this old, non-matching ammunition (ammunition not useable in the shotgun) came

14

from Greta Steiner: When Greta Steiner moved into the residence in 1999 she brought boxes belonging to her deceased former husband, an avid collector. App.379-80,438. Those boxes, some of which contained ammunition, were stored in the garage, and Thomas Steiner was unaware of the ammunition. App.380-81.

Based on these facts and the theories developed at trial,[5] the indictment charges in a single count distinct violations of §922(g), one for possession of 12 gauge shells that fit the shotgun recovered from the camper and were found in the basement near the shotgun's barrel and stock, and a second for possession of .32 and .38-caliber ammunition that was unconnected to the shotgun transaction, found in the "downstairs area," and stored in the garage by Greta Steiner in 1999. To cure this duplicity, the district court should have instructed jurors,

---

[5] It was not until the evidence came in at trial that it was clear the indictment charged separate transactions in a single count. Thus, the indictment was rendered duplicitous by the evidence presented at trial. *United States v. Pietrantonio*, 637 F.3d 865, 871 (8th Cir.2011).

as requested by Mr. Steiner, that to convict, they had to unanimously agree as to which piece of ammunition he possessed.

The parties agree that this Court, construing the §922(g) statute, holds that simultaneous possession of multiple firearms or ammunition is a single offense, *unless* (as here) the weapons were separately stored or acquired. AB30.

The government acknowledges Greta Steiner's uncontested testimony that (1) when she moved into the house in 1999, she brought boxes belonging to her deceased husband, which boxes contained old ammunition, and (2) those boxes were stored in the garage. App.33. Yet it argues that the ammunition was simultaneously possessed because all of the ammunition was contained within one house, in the downstairs basement area, which includes the basement and garage. AB28,33. This claim ignores uncontested testimony that the ammunition, even if it had been knowingly possessed, was acquired at different times and for different purposes and must be rejected as inconsistent with the trial evidence and the government's theories.

16

**Mr. Steiner preserved his objection to the court's instruction and affirmatively requested a unanimity instruction.**

The prosecutor requested jurors be instructed that although the defendant was charged with possessing ammunition in different varieties and from different locations, it need not unanimously agree on which ammunition he possessed to convict. App.94-95. Mr. Steiner objected and requested that the jury be instructed it *must* be unanimous as to which ammunition Mr. Steiner possessed. App.96-97. It was the government who argued in response that the particular ammunition is a *means* of committing the §922(g) offense and not an element such that the jury was not required to agree on the particular ammunition possessed. App.98-99. The defense responded that the government's authority regarding elements and means did not conclusively answer the question presented; it continued to press its request for a unanimity instruction. App.125.

In a pre-charge conference, defense counsel reiterated, "I would like to preserve my objection" to the court's instruction that unanimity is not required. App.336,339. Counsel continued to assert that the cases cited by the government and district court suggesting that unanimity

17

was not required because the particular firearm possessed was a means of committing the § 922(g) offense, were inapposite and reiterated, "I still think the jury has to be unanimous on which ammunition and which weapon…. So my unanimity request is maintained." App.342-43. *See* Opening Brief 62-69 (continuing to argue that the government's and district court's cases are inapposite).

Despite the foregoing expressed objections, the government contends that Mr. Steiner's objection to the instruction given that unanimity was *not* required with respect to the ammunition and his challenge to the court's refusal to instruct that unanimity was required, should be reviewed for plain error. Citing *United States v. Joseph*, 730 F.3d 336 (3d Cir.2013), the government seems to contend that an appellate claim must be viewed as a new claim unless it parrots trial counsel's exact words. App.3. This contention must be rejected.

*Joseph* stands for the proposition that under Federal Rule of Criminal Procedure 12, the failure to assert a particular ground for *suppression* operates as a waiver of the right to challenge the admissibility of the evidence on that ground on appeal, absent good

cause. That holding is predicated on the plain language of Rule 12, which mandates that a motion to suppress evidence "must be raised before trial" and specifies that the failure to timely raise such suppression motion effects a waiver, absent good cause. Fed.R.Crim.P. 12(b)(3)(C).

Objections to jury instructions are governed not by Rule 12, but by Rule 30 of the Federal Rules of Criminal Procedure. And, as required by that rule, Mr. Steiner objected to the government's requested instruction and also requested a unanimity instruction "before the jury retire[d] to deliberate." Fed.R.Crim.P., Rule 30. As set forth, the precise objection raised in this appeal (that the instruction given was erroneous and that a specific unanimity instruction was required) was raised and reiterated in the district court and is, therefore, preserved.

This Court has deemed a colloquy, even *without* a specific objection, sufficient to preserve a jury instructions error. *United States v. Russell*, 134 F.3d 171 (3d Cir.1998). In *Russell*, the trial court did not instruct the jury as to the need for unanimity on predicate offenses in a continuing criminal enterprise as required by *United States v.*

19

*Edmond*s, 80 F.3d 810 (3d Cir.1996). In an ensuing conference, counsel engaged in an extended debate over the applicability of *Edmonds*. Although defense counsel there, unlike counsel in this case, did not explicitly object to the instructions, he informed the court that he did not think that *Edmonds* was applicable, and proposed an alternate jury instruction. *Russell*, 134 F.3d at 178-80. This Court held the colloquy was "tantamount to an objection and therefore sufficient to preserve this issue" for review. *Id.*

Here, counsel did more, repeatedly objecting to the government's proposed instruction, requesting a specific unanimity instruction, and identifying the legal issue in question. Defense counsel also informed the court that the cited authority was inapposite. Here, as in *Russell*, the record reflects that the court understood and had sufficient notice of the claimed error such that the challenge was preserved. *Id.*, 178-79.

As with the 404(b) issue, the government makes no attempt to satisfy its burden of proving the erroneous jury instruction depriving Mr. Steiner of his Sixth Amendment right to a unanimous jury verdict was harmless.

Mr. Steiner relies on the opening brief and simply reiterates that the court's instruction authorized a non-unanimous verdict:

- Four jurors could have believed that informant Timmy Stants planted the shotgun and shotgun shells in the residence but not the old non-matching ammunition and that Steiner constructively possessed that other ammunition because he owned the house where that ammunition was found.

- Four jurors could have believed Stants' testimony and found Steiner possessed the shotgun and shotgun shells, but that he did not possess the other ammunition found in the downstairs area.  Specifically, those four could have found Steiner did not have intent to exercise dominion and control based on testimony that Steiner abandoned or sold the house, or testimony that Steiner did not know about that other ammunition.

- Four jurors could have believed Stants testimony and found Steiner possessed the shotgun and *all* the ammunition.

The instruction given allowed the jury to convict at count two without a unanimous jury finding that Mr. Steiner committed any

21

violation of the statute in violation of his Sixth Amendment and due process rights. Reversal is required.

CONCLUSION

For the reasons set forth here and in the opening brief, the

judgment must be vacated and the case remanded for a new trial.

Respectfully submitted,

*/s/ Renee Pietropaolo*
Renee Pietropaolo
Assistant Federal Public Defender
Counsel for Appellant
Thomas David Steiner

## CERTIFICATE OF COMPLIANCE

I, Renee Pietropaolo, hereby certify that the Reply Brief for Appellant complies with the type-volume limitations prescribed in Fed.R.App.P. Rule 32(a)(7)(B)(ii), because it contains 4,082 words.

*/s/ Renee Pietropaolo*
Assistant Federal Public Defender

## CERTIFICATE OF IDENTICAL TEXT

I, Renee Pietropaolo, hereby certify that the text of the E-Brief and Hard Copies of the Reply Brief for Appellant filed on behalf of Thomas David Steiner filed at No. 14-4628 are identical.

*/s/ Renee Pietropaolo*
Assistant Federal Public Defender

## CERTIFICATE OF VIRUS CHECK

I, Renee Pietropaolo, hereby certify that a virus check was performed on the Reply Brief for Appellant filed on behalf of Thomas David Steiner filed at No. 14-4628 using Symantec Endpoint Protection v12.1.6318.6100 software.

*/s/ Renee Pietropaolo*
Assistant Federal Public Defender

## CERTIFICATE OF SERVICE

I hereby certify that the following is a filing user and will be served electronically through the Court's electronic docketing system (cm/ecf) and by hand-delivery:

Jane Dattilo
Assistant United States Attorney
4000 United States Courthouse
700 Grant Street
Pittsburgh, Pennsylvania 15219
jane.dattilo@usdoj.gov

*/s/ Renee Pietropaolo*
Renee Pietropaolo
Assistant Federal Public Defender

September 14, 2015