IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 14-4628

---

UNITED STATES OF AMERICA,
Appellee

v.

THOMAS STEINER,
Appellant

---

**PETITION FOR REHEARING OR REHEARING *EN BANC***

---

| | |
|---|---|
| 1500 Liberty Center<br>1001 Liberty Avenue<br>Pittsburgh, PA 15222<br>(412) 644-6565 | LISA B. FREELAND<br>Federal Public Defender<br><br>RENEE PIETROPAOLO<br>Assistant Federal Public Defender<br>Counsel of Record<br>Attorneys for Appellant,<br>Thomas Steiner |

**Petition for Rehearing and Rehearing *En Banc* under Fed.R.App.P., Rules 35(b) and 40(a).**

The panel holds that the prosecuting attorney's "troubling" misrepresentations to the district court caused that court to improperly admit evidence Thomas Steiner had an outstanding arrest warrant for failing to appear at a preliminary hearing on other criminal charges, which evidence the government repeatedly characterized as evidence Steiner was "on the run from law enforcement" and would "not go easy," and was "hiding out" and evading law enforcement. App.115-18, 157, 232, 252, 490, 496, 505.[1]

The panel concludes that the government's "only purpose" in presenting this irrelevant evidence "was to improperly suggest that Steiner was predisposed to commit criminal acts." Appendix A at 17. Notably, the district court did not give any limiting instruction so the jury could only have considered the evidence to infer that because Mr. Steiner committed other crimes he is more likely to have committed this one. *See United States v. Sampson*, 980 F.2d 883, 889 (3d Cir. 1992)*; United States v. Davis*, 726 F.3d 434 (3d Cir. 2013) (no instruction could eliminate infirmity where bad acts evidence was inadmissible for any purpose).

---

[1] As the government well knew, Mr. Steiner was **not** on the run but had been released on recognizance bond. Further, Steiner testified Stants was driving him to his preliminary hearing when police stopped him. *See* Reply Brief 4-5. Stants claimed he could not remember. App. 421. *See also* App. 496 (AUSA vouching for Stants by assuring jurors if Stants lied to law enforcement about Steiner "he was going to be in a world of trouble, and he wasn't going to take that chance.")

1

The panel does **not** find (nor did the government argue, *see* Appellee Brief at 23) evidence of guilt was overwhelming, and it acknowledges the government's evidence was contested. *See* Appendix A at 6-7. Yet the panel deems the erroneous admission of evidence painting Mr. Steiner as a dangerous criminal on the run from *additional* criminal charges harmless because there was "ample" evidence from which the jury could have found Mr. Steiner guilty of count 2[2] and jurors had reason to question Mr. Steiner's *credibility*. Appendix A at 19.

The panel's harmlessness inquiry is fundamentally flawed and contrary to Supreme Court and Third Circuit decisions in at least two ways. First, the panel incorrectly focuses on whether the evidence was **sufficient** to convict notwithstanding the error, an inquiry that views the evidence **in the light most favorable to the government.** But review for harmlessness asks whether the court can have a "sure conviction" the error did not influence the jury, an inquiry that requires the reviewing court to examine the record as a whole, **not** in the light most favorable to the government, and that does not allow the reviewing court to assume the jury credited contested government evidence or resolved credibility choices against the defendant.

---

[2] "Ample" evidence is not overwhelming and uncontroverted evidence: "The threshold of overwhelming evidence is far higher than mere sufficiency to uphold conviction." *United States v. Lane*, 474 U.S. 438, 450 n.13 (1986).

The panel's opinion stands in stark conflict with decisions of the United States Supreme Court, the Court of Appeals for the Third Circuit, and other Courts of Appeals all declaring that "harmless-error inquiry is entirely distinct from a sufficiency-of-the-evidence inquiry." *United States v. Lane*, 474 U.S. 438, 450 n.13 (1986): *Kotteakos v. United States*, 328 U.S. 750 (1946); *Sullivan v. Louisiana*, 508 U.S. 275 (1993). *See, e.g., Virgin Islands v. Toto*, 529 F.2d 278, 283 (3d Cir.1976) (the question is not whether evidence is sufficient, but "what effect the error had or reasonably may be taken to have had upon the jury's decision"); *Virgin Islands v. Davis*, 561 F.3d 159, 166 (3d Cir.2009); *United States v. Korey*, 472 F.3d 89, 96 (3d Cir. 2007).

The panel opinion is also contrary to decisions from this Court and other Courts of Appeals all holding that a reviewing court conducting harmless error analysis

- does not review the evidence in the light most favorable to the government,
- may not assume that the jury credited contested government evidence, and
- must resolve contested credibility choices in favor of the defendant.

*See, e.g., Smith v. Cain*, 132 S. Ct. 627, 630 (2012) (in determining (in a different context) whether it is reasonably likely the jury's verdict might have been different, court could not assess the evidence in the light most favorable to the

government). *See, e.g., United States v. Prigmore*, 243 F.3d 1, 4 (1st Cir.2001) (in reviewing for harmlessness, "we look at the evidence as a whole and not in the light most favorable to the government"); *United States v. Barnhart*, 979 F.2d 647, 653 n.1 (8th Cir.1992) (finding it clearly inappropriate to view evidence in government's favor in review for harmlessness); *Vaccaro v. United States*, 461 F.2d 626, 638 (5th Cir.1972) (when reviewing for harmlessness, credibility choices are to be resolved in favor of the accused and evidence is not viewed in the light most favorable to the government); *United States v. Cappas*, 29 F.3d 1187, 1194 n.4 (7th Cir.1994) (harmless error is "almost the polar opposite of sufficiency-of-the-evidence review" and court may not assume jury credited contested government evidence); *United States v. Liera*, 585 F.3d 1237, 1244 (9th Cir.2009); *United States v. Hands*, 184 F.3d 1322, 1330-31 (11th Cir.1999) (review for harmlessness unlike review for sufficiency "does not require us to view witnesses' credibility in the light most favorable to the government"); *Taylor v. United States*, 414 F.2d 1142, 1144 (D.C. Cir.1969) (evidence in harmlessness inquiry cannot be viewed in the light most favorable to the government). "The role of the appellate court is not to become in effect a second jury to determine whether the defendant is guilty." *Neder v. United States*, 527 U.S. 1, 19 (1999).

Second, the panel's finding of harmlessness is contrary to this Court's cases because it is predicated on the assumption jurors did not follow proper instructions

that they not use evidence Mr. Steiner had 22-year-old convictions for *crimen falsi* as evidence he was guilty of the charged offenses. See, e.g., *United States v. Hernandez,* 176 F.3d 719, 733 (3d Cir. 1999).

Consideration by the full court is necessary to secure and maintain uniformity of decisions in this Court.

**Factual Background**

The police targeted Thomas Steiner for investigation based entirely on information received from Timmy Stants, a long-time informant who was working with police to reduce his own sentencing exposure, that he observed Thomas Steiner holding a sawed-off shotgun, he saw that shotgun in his own camper, where he claimed Steiner was then living, and he saw the sawed off pieces of that shotgun in Steiner's home, along with ammunition. Police found the sawed-off shotgun in the camper (Count 1) and portions of that shotgun and pieces of ammunition, including matching shotgun shells, in the basement area of the Meadow Avenue residence (Count 2).

Uncontroverted evidence established Stants had access to the Meadow Avenue residence and entered that house (which was not secure) with others in Mr. Steiner's absence. App.307,321,382,416-18,422. Further, evidence established Mr. Steiner sold or abandoned the house, which was in a state of disarray, in advance

5

of the police search. App.417-18, 312,422. *See* Appellant's Opening Brief 11-12 (home was unkempt and "deplorable;" mailbox was overflowing).

The defense theory was that Timmy Stants (a) planted the shotgun in the camper and (b) planted the sawed off portions of that shotgun, matching shotgun ammunition, and old .32 and .38 caliber ammunition (left behind by Greta Steiner[3]) in the basement area of the Meadow Avenue residence. Evidence established Stants had opportunity to have staged both crime scenes (he owned the camper where the shotgun was found and had access to and entered the residence in Steiner's absence) and motive (he faced a potential maximum of life in prison for his role in a sophisticated crime organization and was cooperating extensively with police to reduce his sentencing exposure. *See* Opening Brief 6-7, 52-53.

The jury accepted at least in part the theory that Tim Stants framed Thomas Steiner: **By acquitting Mr. Steiner of possessing the shotgun found in the camper, jurors necessarily rejected testimony from Stants** and his life-long friend Mark Williams, App. 495, that they observed Thomas Steiner holding the shotgun and Stants' testimony that Steiner was living in the camper and so possessed the shotgun found there.

---

[3] Greta Steiner's unchallenged testimony was that when she moved into the house in 1999, she brought boxes containing old ammunition, which were stored in the garage, and that Steiner was unaware of its presence. App. 379-81.

The critical question was whether Thomas Steiner constructively possessed pieces of ammunition found in the basement area of the Meadow Avenue residence because he owned that house, or whether Timmy Stants planted evidence there to set up Steiner as part of his campaign of cooperation with law enforcement.

No physical evidence connected Thomas Steiner to the ammunition.

Thomas Steiner denied possessing both the shotgun and ammunition and denied staying in the camper (he stayed in a motor home on Stants' property). App. 441-44. Timmy Stants denied that the shotgun was his, that he cut the shotgun down, and that he planted the shotgun in the camper before calling state police to implicate Mr. Steiner. App. 399-01. In sum, the government's evidence was not overwhelming[4] and was vigorously contested, and the conviction depended on credibility determinations.

**This Court recognizes that the erroneous admission of bad character evidence "will normally not be harmless" because it burdens the presumption of innocence.**

Preliminarily, this court has repeatedly observed "**when other crimes evidence is erroneously admitted the error will normally not be harmless**." *See Virgin Islands v. Toto*, 529 F.2d 278, 283 (3d Cir.1976); *United States v.*

---

[4] *See United States v. Morena*, 547 F.3d 191 (3d Cir. 2008) (explaining case for conviction "may properly be characterized as weak" where it depends upon the testimony of a witness with a long criminal record who is cooperating with police to mitigate the consequences of his own criminal charges).

*Echeverri*, 854 F.2d 638, 646 (3d Cir.1988). This standard reflects an understanding of the burden other acts evidence places on the presumption of innocence and an affirmance of "this court's tradition of protecting the presumption of innocence that accompanies a defendant throughout the trial. The accused is not only presumed to be innocent of the crime with which he is charged, but our legal tradition protects him from the possibility of guilt by reputation" *Toto*, 529 F.2d at 283. Thus, the "continued integrity of proceedings is nearly impossible after" improper propensity evidence reaches the jury because "it is most difficult, if not impossible, to assume continued integrity of the presumption of innocence. **A drop of ink cannot be removed from a glass of milk**." *Id.*; *Morena*, 547 F.3d at 196.

Evidence of prior bad acts, when offered only to show the defendant's propensity to commit the charged crime, "is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Michelson v. United States*, 335 U.S. 469, 475-76 (1948). *See United States v. Davis*, 726 F.3d 434 (3d Cir. 2013) ("tradition of excluding evidence of a person's prior bad acts" reflects a fear that the jury will place too much weight on prior misdeeds). When guilt hinges on a credibility determination "improper suggestions and insinuations 'are apt to carry

8

much weight against the accused when they should properly carry none.'" *United States v. Morena*, 547 F.3d 191 (3d Cir. 2008).

**The Supreme Court and this Court repeatedly have declared harmlessness review is distinct from sufficiency-of-the-evidence review.**

In a harmless error analysis, the question is **not** whether taking away the erroneously admitted evidence there was sufficient to establish guilt. The question is "even so" did the error have "substantial influence (on the minds of the jury.) If so, or if one is left in *grave doubt*, the conviction cannot stand.'" *Toto*, 529 F.2d at 283, *quoting Kotteakos v. United States*, 328 U.S. 750, 765 (1946).

The Court must determine whether the government has proved it is "highly probable" that the evidence of the defendant's propensity to commit crime did not "substantially sway[]" the jury. *Davis*, 561 F.3d 159; *Kotteakos*, 328 U.S. at 765. "[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result… It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." *Kotteakos*, 328 U.S. at 764-65. Justice Scalia consistently elaborating on harmless-error review explained, the inquiry is "whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Sullivan*, 508 U.S. 275.

9

**When the government's evidence is not overwhelming and is vigorously disputed, a court reviewing for harmlessness may not assume the jury credited the contested government evidence. By doing so, the appellate court weighs evidence and judges credibility in violation of the defendant's Sixth Amendment right to a jury trial.**

A finding of harmlessness based on the presence of *sufficient* evidence of guilt, as opposed to *overwhelming and uncontroverted* evidence of guilt, does violence to the defendant's Sixth Amendment rights as it allows the appellate court to weigh disputed evidence and to make credibility determinations. *See Neder,* 527 U.S. at 18-19 ("A reviewing court making this harmless-error inquiry does not… 'become… a second jury to determine whether the defendant is guilty'…. Rather a court, in typical appellate-court fashion, asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element. **If the answer to that question is 'no,' holding the error harmless does not 'reflec[t] a denigration of the constitutional rights involved.**'"). Thus, for error to be harmless, evidence of guilt must be overwhelming and uncontroverted to prevent appellate courts from invading the jury's province by weighing evidence and making credibility determinations. *Neder,* 527 U.S. at 18 (because there was overwhelming and undisputed evidence regarding the omitted element, deficient jury instruction was harmless error). *See generally United States v. Bencivengo*, 749 F.3d 205, 217 (3d Cir. 2014) (for error to be harmless evidence must be overwhelming and uncontroverted).

The Supreme Court makes clear "it is not to be supposed that Congress [in enacting the harmless error statute] intended to substitute the belief of appellate judges in the guilt of an accused, however, justifiably engendered by the dead record, for ascertainment of guilt by a jury…." *Bollenbach v. United States*, 326 U.S. 607, 615 (1946). *See also Sullivan*, 508 U.S. at 279 (in explaining the reason harmless error looks to the effect of the error on the jury's verdict, the Court provided, "to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee.").

The Court of Appeals for the Third Circuit has also acknowledged that a determination of harm in the context of improperly admitted propensity evidence cannot be predicated on the appellate court's own weighing of disputed evidence:

> Though the prosecution's case may have been strong, it does not provide us with a "sure conviction" that the evidence of Caldwell's prior convictions did not contribute to the judgment…. Caldwell vigorously maintained his innocence… testifying on his own behalf and introducing witness testimony corroborating his claim[s]…. Caldwell's theory that Tigney possessed the firearm was bolstered by evidence that Tigney provided the officers with a false name at the time of the stop. He also managed to poke holes in the Government's investigation, pointing out that it failed to obtain available security surveillance tapes.… **Our task [in reviewing for harmlessness] is not to weigh the evidence anew, but simply to determine whether "it is highly probable that the error did not contribute to the judgment."** … Based on the record before us, we cannot say the erroneously admitted evidence was inconsequential to the verdict. Accordingly, we are unable to find it harmless.

11

*United States v. Caldwell*, 760 F.3d 267, 285 (3d Cir. 2014). In fact, this Court has repeatedly rejected the notion that an appellate court conducting harmlessness review can either resolve contested credibility choices against the defendant or assume jurors credited contested government evidence. *See, e.g., United States v. Brown*, 765 F.3d 278, 298 (3d Cir. 2014) (court could not have a "sure conviction" the erroneous admission of propensity evidence did not influence jury where evidence of guilt depended on a contested credibility determination: officers claimed to have seen defendant reach toward area where a gun was recovered while a defense witness claimed to have put the gun there without the defendant's knowledge); *Caldwell,* 760 F.3d 267 (admission of propensity evidence was not harmless because the defendant "poke[]d holes in the Government's investigation," "vigorously maintained his innocence," and introduced supporting witness testimony); *United States v. Penn*, 616 F. App'x 524 (3d Cir.2015) (erroneous admission of propensity evidence not harmless where government's "substantial evidence" was not overwhelming and was contested, in particular, one of the firearms contained someone else's DNA, a key witness had a government bias, and the defendant was not consistently living at the location where the guns were found); *United States v. Smith*, 725 F.3d 340 (3d Cir.2013) (refusing to draw government's requested inferences to find erroneous admission of propensity evidence harmless where totality of circumstances were "fairly innocent"). *See*

*also Davis*, 561 F.3d at 166 (erroneous admission propensity evidence not harmless where government's case depended on eyewitness whose credibility was called into question; this Court contrasted cases finding overwhelming evidence where witness's testimony was corroborated by taped conversations, where eyewitnesses' identification was corroborated by surveillance pictures, and where the defendant's confession was admitted); *Morena*, 547 F.3d at 196 (where finding of guilt hinged on credibility determination of witness with significant credibility issues, erroneous admission of irrelevant propensity evidence was not harmless).

The panel's decision finding the erroneous admission of propensity evidence harmless though evidence of guilt was not overwhelming (in fact the jury acquitted on the more serious of the two counts) and was vigorously contested is contrary to all the foregoing precedent prohibiting courts reviewing for harmlessness from sitting as a second jury and construing credibly contested evidence and witness credibility in the light most favorable to the government.

The panel also finds that the error was harmless because Mr. Steiner stipulated to having a felony conviction and admitted 22-year-old *crimen falsi* convictions for burglary (entering his parents' home in their absence), petty theft and forgery involving a bad check. App. 454, 460. Appendix A at 19.

But the district court instructed jurors that an element of the offense was that the defendant had a felony conviction, that a felony is simply a crime punishable

13

by more than one year, and that it could **not** consider that prior conviction in deciding whether Mr. Steiner was in knowing possession of the charged firearm or ammunition. App. 477-80. It further instructed that the jury could consider that (all of the civilian) witnesses had prior convictions in assessing their credibility. App. 477-78. According to those instructions, "the fact that the Defendant was found guilty of another crime on another occasion does not mean that he committed this crime…, and you must not use his guilt of the other crime as proof of the crime charged in this case except for [] one element of this crime" - - that Mr. Steiner had been convicted of a crime punishable for a term exceeding one year. App. 480.

Credibility is distinct from propensity. It may be proper to advise jurors a testifying defendant's prior convictions are relevant to their assessment of his credibility, but it is improper to ask jurors to draw an inference that because a defendant had prior convictions he must be guilty. *See United States v. Richards,* 719 F.3d 746, 765 (7th Cir. 2013). That Mr. Steiner has 22-year old *crimen falsi* convictions implicating his credibility cannot be equated with evidence he was then "on the run" from outstanding criminal charges and trying to evade law enforcement -- all of which goes to his propensity to commit the charged crime.

"The [law] presumes that jurors… follow the instructions given them." *United States v. Hernandez,* 176 F.3d 719, 733 (3d Cir. 1999). The panel's assumption that jurors ignored the judge's proper instructions not to use evidence

14

of Mr. Steiner's prior convictions as evidence of his guilt conflicts with this precedent.

Given that evidence of Mr. Steiner's predisposition to commit the charged offense was admitted as a direct result of the explicit false representation by the prosecuting attorney to the district court, that the improperly admitted evidence burdened his presumption of innocence, that evidence of guilt was not overwhelming and was in fact vigorously contested including by the defendant's own testimony (a point the panel acknowledges), this appeal involves a question of exceptional importance and provides an excellent vehicle for this Court to explicitly hold what has long been implicit - - that a court reviewing for harmlessness cannot assume jurors credited contested government evidence and cannot view witness credibility in the light most favorable to the government.

                                      Respectfully submitted,

                                      ***/s/ Renee Pietropaolo***
                                      Renee Pietropaolo
                                      Assistant Federal Public Defender
                                      Counsel for Appellant
                                      Thomas Steiner

**CERTIFICATE OF SERVICE**

I hereby certify that the following is a filing user and will be served electronically through the Court's electronic docketing system (cm/ecf):

Jane Dattilo<br>
Assistant United States Attorney<br>
4000 United States Courthouse<br>
700 Grant Street<br>
Pittsburgh, Pennsylvania 15219<br>
jane.dattilo@usdoj.gov

*/s/ Renee Pietropaolo*
Renee Pietropaolo
Assistant Federal Public Defender

April 18, 2016